## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HUMAN SERVICES COUNCIL OF NEW YORK, | |
| Plaintiff, | Case No. 1:21-cv-11149-PGG |
| v. | Judge Paul G. Gardephe |
| THE CITY OF NEW YORK, | **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE** |
| Defendant. | |

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ......................................................................................................... 1

BACKGROUND ........................................................................................................... 2

I. The challenged ordinance. ....................................................................................... 2

II. Proposed intervenor.............................................................................................. 5

III. HSC's lawsuit. ..................................................................................................... 7

ARGUMENT ................................................................................................................ 7

   I.  This motion is timely, such that permitting DC 37 to intervene will neither delay
      the action nor prejudice the adjudication of any party's rights.......................... 9

   II. DC 37 has a strong interest in defending the validity of an ordinance that directly
      affects its representation and organization of the professionals who work on human
      services contracts, a defense that turns on common questions of law and fact
      shared with the main action. ............................................................................ 12

      A. DC 37 has a strong interest in the validity of Local Law 87. ..................... 12

      B. DC 37's defense of Local Law 87 shares common questions with the City's
        defense. ...................................................................................................... 14

   III. DC 37's intervention will promote development of the factual record and fair
      adjudication of the underlying legal issues..................................................... 15

   IV. Although DC 37 shares the City's objective in defending the validity of the law,
      that parallel objective should not preclude permissive intervention, particularly
      in light of DC 37's distinct interest in Local Law 87. ..................................... 17

CONCLUSION............................................................................................................. 19

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*335-7 LLC v. City of New York*,
No. 20 Civ. 1053 (ER), 2020 WL 3100085 (S.D.N.Y. June 11, 2020) ..................................15

*Allco Fin. Ltd. v. Etsy*,
300 F.R.D. 83 (D. Conn. 2014)..............................................................................................10

*Ass'n of Conn. Lobbyists LLC v. Garfield*,
241 F.R.D. 100 (D. Conn. 2007)...................................................................................... *passim*

*Bldg. & Constr. Trades Council of Metro. Dist. v. Assoc. Builders & Contractors*
*of Mass./R.I., Inc.*,
507 U.S. 218 (1993)................................................................................................................16

*Bldg. & Realty Inst. of Westchester & Putnam Cntys., Inc. v. State of N.Y.*,
No. 19-CV-11285 (KMK), No. 20-CV-634 (KMK), 2020 WL 5658703
(S.D.N.Y. Sept. 23, 2020) ................................................................................................ *passim*

*Brennan v. N.Y.C. Bd. of Educ.*,
260 F.3d 123 (2d Cir. 2001)...................................................................................................19

*Commack Self-Service Kosher Meats, Inc. v. Rubin*,
170 F.R.D. 93 (E.D.N.Y. 1996) ...........................................................................14, 15, 16, 18

*Connecticut Fine Wine & Spirits, LLC v. Harris*,
No. 16-cv-1434 (JCH), 2016 WL 9967919 (D. Conn. Nov. 8, 2016) ....................................13

*Delaware Tr. Co. v Wilmington Tr., N.A.*,
534 B.R. 500 (S.D.N.Y. 2015)..................................................................................................9

*Floyd v. City of New York*,
770 F.3d 1051 (2d Cir. 2014)...............................................................................................8, 9

*Friends of E. Hampton Airport, Inc. v. FAA*,
No. 15-CV-0441 (JS) (ARL), 2016 WL 792411 (E.D.N.Y. Feb. 29, 2016) ..........................11

*Herdman v. Town of Angelica*,
163 F.R.D. 180 (W.D.N.Y. 1995)...........................................................................................14

*Miller v. Silbermann*,
832 F. Supp. 663 (S.D.N.Y. 1993) ...................................................................................14, 15

*New York Pub. Interest Grp., Inv. v. Regents of the Univ. of N.Y.*,
516 F.2d 350 (2d Cir. 1975).............................................................................................13, 19

*New York v. HHS*,
  Nos. 19 Civ. 4676 (PAE), 19 Civ. 5433 (PAE), 19 Civ. 5435 (PAE), 2019 WL
  3531960 (S.D.N.Y. Aug. 2, 2019) ................................................................................. *passim*

*New York v. Scalia*,
  No. 1:20-cv-1689-GHW, 2020 WL 3498755 (S.D.N.Y. June 29, 2020) .........................13, 18

*New York v. U.S. Immigration & Customs Enforcement*,
  No. 19-cv-8876 (JSR), 2019 WL 7816835 (S.D.N.Y. Dec. 17, 2019) ....................................8

*Pike Co. v. Universal Concrete Prods., Inc.*,
  284 F. Supp. 3d 376 (W.D.N.Y. 2018) ..........................................................................17, 19

*In re Reyes*,
  No. 19 Civ. 7219, 2019 WL 6170901 (S.D.N.Y. Nov. 20, 2019) .........................................18

*United States v. Hooker Chems. & Plastics Corp.*,
  749 F.2d 968 (2d Cir. 1984).................................................................................................8

*United States v. N.Y.C. Hous. Auth.*,
  326 F.R.D. 411 (S.D.N.Y. 2018) ........................................................................................18

*United States v. State of N.Y.*,
  820 F.2d 554 (2d Cir. 1987)...............................................................................................19

*Up State Tower Co. v. Town of Cheektowaga*,
  No. 1:19-cv-280, 2019 WL 4452413 (W.D.N.Y. Sept. 17, 2019)........................................14

*USPS v. Brennan*,
  579 F.2d 188 (2d Cir. 1978)...............................................................................8, 9, 15, 17

*Yang v. Kellner*,
  No. 20 Civ. 3325 (AT), 2020 WL 2115412 (S.D.N.Y. May 3, 2020)....................................11

**Statutes**

Federal Rule of Civil Procedure 24 ......................................................................... *passim*

N.Y.C. Admin. Code § 6-108 ..............................................................................................2

N.Y.C. Admin. Code § 6-108.1 ...........................................................................................2

N.Y.C. Admin. Code § 6-132 ..............................................................................................2

N.Y.C. Admin. Code § 6-145 .............................................................................2, 3, 4, 5, 12, 13

N.Y.C. Admin. Code § 12-311 ............................................................................................3

N.Y.C. Admin. Code § 12-312 ............................................................................................3

iii

7C Wright & Miller, *Fed. Prac. & Proc.* (3d ed. 2021) ...................................................................8

## INTRODUCTION

Proposed Intervenor District Council 37, American Federation of State, County and Municipal Employees, AFL-CIO ("DC 37") files this brief in support of its motion to intervene permissively under Federal Rule of Civil Procedure 24(b)(1)(B) to defend the validity of Local Law 87.

In enacting Local Law 87, the City of New York (the "City") sought to ensure that, when it contracts with private entities to obtain human services—day care, foster care, home care, health services, housing and shelter assistance, youth services, senior center operations, employment training, and legal services, to name only a few examples—on behalf of its constituents, those essential services are delivered without interruption. To that end, Local Law 87 conditions the award of a City human services contract on executing—or negotiating toward—an agreement committing to the uninterrupted delivery of services under that contract on behalf of *both* the contractor and any labor union that represents or seeks to represent the contractor's employees delivering services pursuant to the contract. The Human Services Council of New York ("HSC") mounts a facial attack on that ordinance, asking this Court to strike it and alleging, hyperbolically and inaccurately, that it "cedes control over the City of New York's social services to union leaders," is preempted by federal labor law, and violates various constitutional restrictions. Compl. ¶¶ 1, 48-67 (ECF No. 1).

DC 37 seeks to intervene permissively in this action to defend Local Law 87 from HSC's scattershot attack. As a labor union that represents and organizes many of the professionals who deliver human services under City contracts, Local Law 87 directly affects DC 37's core activities. Those human services professionals wish to pursue union activity without fear of workplace disruptions, such as lockouts, that might interrupt the delivery of the essential services

they provide to City residents. DC 37 thus has a powerful interest in upholding Local Law 87.

And DC 37 is well situated to assist in the fair adjudication of this case not only via briefing, but

also by developing facts pertinent to HSC's claims of labor-law preemption. Indeed, the City

does not oppose DC 37's motion for permissive intervention. HSC, however, does oppose DC

37's intervention. For those reasons and others, explained in greater detail below, this Court

should grant DC 37's motion for permissive intervention under Rule 24(b)(1)(B).

## **BACKGROUND**

**I. The challenged ordinance.** When the City enters the market for goods and services, it

requires its trading partners to abide by strict rules of conduct. To name only a few of those rules,

the City insists on certain of its contracts containing language that expressly prohibits

discrimination in employment "on account of . . . race, color or creed" on pain of fine or even

imprisonment. N.Y.C. Admin. Code § 6-108(a), (c)-(d). It demands agreements permitting City

contractors to subcontract only if "not less than ten percent of the total dollar amount of the

contract shall be awarded to locally based enterprises or graduate locally based enterprises," both

of which are carefully defined statutory terms. N.Y.C. Admin. Code § 6-108.1(c). And it insists

that all contracts of greater than $100,000 contain a provision requiring the contractor to post a

notice, in its workplace, detailing how employees may report fraud and describing the rights and

remedies of such whistleblowers. N.Y.C. Admin. Code § 6-132(c).

Local Law 87 merely codifies one more set of requirements for City contractors.[1] That

ordinance applies to certain contracts between city agencies and private third parties to provide

"human services," defined to mean "social services contracted for [or] by an agency on behalf of

---

[1] That ordinance was enacted on August 18, 2021, went into effect 90 days later, and is now
codified at New York City Administrative Code § 6-145.

third party clients including but not limited to day care, foster care, home care, health or medical services, housing and shelter assistance, preventative services, youth services, the operation of senior centers, employment training and assistance, vocational and educational programs, legal services and recreation programs." N.Y.C. Admin. Code § 6-145(a) (defining "city service contract" and "human services"). The purpose of the ordinance is to encourage "labor peace agreements," which it defines to

> mean[] an agreement between a covered employer and a labor organization that seeks to represent employees who perform one or more classes of work to be performed pursuant to the city service contract, where such agreement . . . requires that the covered employer and the labor organization and its members agree to the uninterrupted delivery of services to be rendered pursuant to the city service contract and to refrain from actions intended to or having the effect of interrupting such services.

N.Y.C. Admin. Code § 6-145(a). The City already pursues that same objective for the services it provides directly: Under the New York City Collective Bargaining Law, any contract between a union representing municipal employees and a public employer must include a provision prohibiting, during the term of the agreement, "any strikes, slowdowns, work stoppages, or mass absenteeism" on the part of the union and "induc[ing] any mass resignations" on the part of the public employer. N.Y.C. Admin. Code § 12-312(e); *see also* N.Y.C. Admin. Code § 12-311(d).

To encourage agreements that will promote the uninterrupted delivery of human services, Local Law 87 provides that, 90 days after the City awards or renews such a human services contract, the contractor must

> (a) submit an attestation to the applicable contracting agency, signed by one or more labor organizations, as applicable, stating that the covered employer has entered into one or more labor peace agreements with such labor organizations, and identify: (i) the classes of covered employees covered by the labor peace agreements, (ii) the classes of covered employees not currently represented by a labor organization and that no labor organization has sought to represent, and (iii) the classes of covered employees for which labor peace agreement negotiations have not yet concluded; or

(b) submit an attestation to the applicable contracting agency stating that the covered employer's covered employees are not currently represented by a labor organization and that no labor organization has sought to represent such covered employees.

N.Y.C. Admin. Code § 6-145(b)(1).[2] If a labor organization subsequently notifies both the contractor and contracting agency of its interest in representing the contractor's employees who render human services under the City contract, then the contractor must "submit an attestation signed by the labor organization to the applicable contracting agency no later than 90 days after the date of notice stating that it has entered into a labor peace agreement with such labor organization or that labor peace agreement negotiations have not yet concluded." N.Y.C. Admin. Code § 6-145(b)(2).

Local Law 87 requires contracting agencies to include in City services contracts language providing that failure to comply with the attestation requirement "may constitute a material breach" at the discretion of the contracting agency. N.Y.C. Admin. Code § 6-145(e)(2)(C)(i)-(ii). And it obligates the City Comptroller to investigate potential violations of the ordinance based on reasonable belief in noncompliance or "upon a verified complaint in writing from an interested party." N.Y.C. Admin. Code § 6-145(f)(1). It also provides that "[t]he mayor or the mayor's designee shall promulgate implementing rules and regulations, as appropriate and consistent with this section, and may delegate such authority to the comptroller." N.Y.C. Admin. Code § 6-145(d)(2). No such implementing rules and regulations have yet been promulgated. The City has, however, issued guidance describing its interpretation of the effective date of Local

---

[2] The statute defines the term "covered employee" to "mean[] an employee of a covered employer who directly renders human services in performance of a city service contract, except that the term 'covered employee' shall not include any building service employee." N.Y.C. Admin. Code § 6-145(a).

4

Law 87 and has committed to issuing additional guidance concerning its interpretation of the contract terms implementing that ordinance. C. Kekacs Decl. Ex. A (DC 37 Proposed Answer to Compl. ("Proposed Answer") § 1, ¶ 8).

**II. Proposed intervenor.** DC 37 is one of the largest labor unions in New York City. Proposed Answer § 1, ¶ 1.[3] It represents roughly 150,000 employees across 62 local unions affiliated with DC 37. *Id.*[4] DC 37, in turn, is affiliated with the American Federation of State, County and Municipal Employees ("AFSCME").

Since unifying with a previously separate AFSCME affiliate, District Council 1707, in 2019, DC 37 has represented roughly 25,000 employees who work in the private sector, including many employees who work for employers that contract with New York City to provide human services to City residents. *Id.* at § 1, ¶ 2. Those professionals work as early childhood education teachers, Head Start teachers, social workers, and home health aides, to name only some of the professions pursued by DC 37's members. *Id.* DC 37 and its local unions actively seek out opportunities to organize additional human services professionals into the union. *Id.* at § 1, ¶ 3. In October 2021, for example, DC 37 organized a bargaining unit of over 250 employees who work for an organization that delivers services to the City's homeless population. *Id.*

In DC 37's capacity as the collective-bargaining representative for those human services professionals, it has entered into collective bargaining agreements with the non-profit organizations whose employees it represents, providing for commitments similar to those

---

[3] A proposed intervenor's allegations are accepted as true for the purposes of evaluating a motion to intervene. *See, e.g.*, *Bldg. & Realty Inst. of Westchester & Putnam Cntys., Inc. v. State of N.Y.*, No. 19-CV-11285 (KMK), No. 20-CV-634 (KMK), 2020 WL 5658703, at *2 (S.D.N.Y. Sept. 23, 2020).

[4] DC 37 is the direct collective bargaining representative for the overwhelming number of bargaining units represented by it, and jointly represents the remainder of those bargaining units with its affiliated local unions. *Id.*

required by Local law 87. Approximately every current collective-bargaining agreement between DC 37 and a non-profit organization contains provisions prohibiting certain strikes and lockouts and calling for the resolution of most disputes, culminating, if necessary, in binding arbitration. *Id.* at § 1, ¶ 4. DC 37 also seeks to enter into agreements with non-profit human services employers that similarly prohibit strikes, lockouts, and other behavior that might disrupt the delivery of human services during the period in which DC 37 is seeking to organize the employers' employees into a union. *Id.* at § 1, ¶ 5. Indeed, DC 37 executed such an agreement as recently as October 2021 and February 2022. *Id.* And DC 37 is also aware of, and is prepared to provide examples of, other such labor peace agreements between private employers and unions seeking to represent their employees. *Id.* Finally, DC 37 has first-hand knowledge of the potential in the human-services sector for disruptive labor disputes that labor peace agreements seek to prevent. *Id.* at § 1, ¶ 6.

DC 37 pursues labor-peace agreements because those agreements largely serve the interests of the professionals it represents or seeks to represent in undertaking union activity without fear of disruptions, like lockouts, that might interrupt their delivery of essential services, negatively affect their careers, and adversely impact the often-vulnerable clients that those professionals have devoted their careers to serving. *Id.* That commitment to service—and the bonds between service provider and client that it fosters—leads many individuals to work in the human services sector, so it should come as no surprise that their union activity often reflects that basic commitment. For those reasons, DC 37 advocated for the passage of Local Law 87. Compl. ¶ 24; Proposed Answer § 1, ¶ 7. And it plans to devote resources to negotiating the sort of labor peace agreements that Local Law 87 requires human services contractors to attempt to negotiate

with labor unions, like DC 37, that represent or seek to represent the employees who provide humans services under a City contract. *Id.*

**III. HSC's lawsuit.** HSC is a business association that includes members providing human services under contracts with New York City. Compl. ¶¶ 11-12. Its Complaint asserts that Local Law 87 "has nothing to do with neutrality or peace," *Id.* at ¶ 1, notwithstanding the ordinance's encouragement of labor peace agreements so that labor disputes do not interrupt the provision of essential human services. Instead, HSC alleges that "Local Law 87 cedes control over the City of New York's social services to union leaders, period." *Id.* HSC claims that the ordinance is preempted by the National Labor Relations Act ("NLRA"), which governs labor relations in the private sector. *Id.* at ¶ 54. It goes on to assert a host of constitutional violations, including violations of the First Amendment, the Due Process Clause, the Equal Protection Clause, the Contracts Clause, and the Takings Clause. *Id.* at ¶¶ 48-50, 58, 63. And for good measure, it claims that Local Law 87 violates unspecified provisions of state law. *Id.* at ¶ 67.

On the basis of those claims, HSC has named the City as a defendant, asking this Court to declare Local Law 87 unlawful and to enjoin its enforcement, among other relief. *Id.* at 21.

<u>**ARGUMENT**</u>

Federal Rule of Civil Procedure 24 permits a party to intervene either as of right or permissively. DC 37 seeks only permissive intervention here and meets the standards for such intervention. Such permissive intervention is governed by Rule 24(b)(1)(B), which provides that, "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." "To be granted intervention as of right or by permission, 'an applicant must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the

action, and (4) show that the interest is not protected adequately by the parties to the action.'" *Floyd v. City of New York*, 770 F.3d 1051, 1057 (2d Cir. 2014) (per curiam) (quoting *"R" Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 240 (2d Cir. 2006)). Even where, unlike here, a party seeks to intervene *as of right*, all the "components" of the standard must "be read not discretely, but together," such that a strong showing on one of the factors may compensate for a weak showing on another. *United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968, 983 (2d Cir. 1984) (Friendly, J.).

That flexibility is particularly appropriate where, as here, a party seeks to intervene *permissively* under Rule 24(b), which "is wholly discretionary with the trial court." *USPS v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978). "Even where a party does not meet" each of the requirements for intervention as of right, "a court may, in its discretion, grant permissive intervention," *New York v. U.S. Immigration & Customs Enforcement*, No. 19-cv-8876 (JSR), 2019 WL 7816835, at *1 (S.D.N.Y. Dec. 17, 2019), so long as the proposed intervenor timely seeks to participate and "has a claim or defense that shares with the main action a common question of law or fact," Fed. R. Civ. P. 24(b)(1)(B); *see also, e.g.*, 7C Wright & Miller, *Fed. Prac. & Proc.* § 1902 (3d ed. 2021) ("A would-be intervenor who does not meet the test of subdivision (a) may be permitted to intervene under subdivision (b)(2) if the applicant has a claim or defense that shares a common question of law or fact with the main action."); *infra* p. 18 n.10 (collecting additional cases denying intervention as of right, but granting permissive intervention). Any other reading of Rule 24(b) would render its express recognition of permissive intervention a nullity, entirely redundant of the separate provision authorizing intervention as of right.

In exercising this Court's broad discretion over permissive intervention, "[t]he principle consideration . . . is 'whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties,'" as Rule 24(b)(3) expressly explains. *Brennan*, 579 F.2d at 191 (quoting Fed. R. Civ. P. 24(b)(3)). An additional "relevant factor[]" is "'whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.'" *Id.* at 191-92 (quoting *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977)). As a general matter, the Rule governing permissive intervention "is 'to be liberally construed' in favor of intervention." *Delaware Tr. Co. v Wilmington Tr., N.A.*, 534 B.R. 500, 509 (S.D.N.Y. 2015) (quoting *Degrafinreid v. Ricks*, 417 F. Supp. 2d 403, 407 (S.D.N.Y. 2006)).

As we show below, the circumstances of this case counsel decisively in favor of intervention. DC 37 is deeply interested in the operation of Local Law 87, which directly affects its efforts to represent and organize human services professionals working on City contracts, many of whom seek to engage in union activity without the threat of workplace interruption and its negative effects on them and the clients they have devoted themselves to serving. Proposed Answer § 1, ¶ 6. In light of DC 37's experience in the industry and its and AFSCME's knowledge of the operation of labor peace agreements, DC 37 is well situated to illustrate the effect of the law and to augment the factual record with evidence pertinent to Plaintiff's claim that federal labor law preempts Local Law 87.

## I.  This motion is timely, such that permitting DC 37 to intervene will neither delay the action nor prejudice the adjudication of any party's rights.

Timeliness is evaluated "flexibl[y]" and "the decision is one entrusted to the district judge's sound discretion." *Floyd*, 770 F.3d at 1058 (quoting *United States v. Yonkers Bd. of Educ.*, 801 F.2d 593, 594-95 (2d Cir. 1986)). Although many factors might bear on that flexible

standard, *see, e.g.*, *id.*, "[i]t is firmly established that the most significant criterion in determining timeliness is whether the delay in moving for intervention has prejudiced any of the existing parties.'" *Allco Fin. Ltd. v. Etsy*, 300 F.R.D. 83, 86 (D. Conn. 2014) (quoting *Hartford Fire Ins. Co. v. Mitlof*, 193 F.R.D. 154, 160 (S.D.N.Y. 2000)).

Here, there has been no delay and permitting intervention will prejudice no party. DC 37 filed this motion less than three months after the complaint was served on the City, shortly after the City filed its answer, before the Court had convened a case management conference, before entry of any scheduling order, and before the onset of discovery. The only substantive motion served to date has been HSC's motion for a preliminary injunction, but the briefing on that motion is not complete.[5] Indeed, DC 37 alerted both parties to its plan to seek permissive intervention, and its grounds for doing so, before that motion was served, and it has committed to participating in that briefing on the same schedule as the City.[6] Permitting it to intervene will thus not delay or otherwise prejudice the adjudication of that motion, which is not yet ripe.

---

[5] That motion for a preliminary injunction has not yet been filed on the public docket, pursuant to the bundling rule set out in Rule IV(C) of the Individual Rules of Practice of Judge Paul G. Gardephe. We have filed this motion for permissive intervention on the public docket because timeliness is a factor in intervention motions and an intervention motion that is deemed untimely can result in forfeiture in much the same way as can the non-exclusive list of motions that are exempt from the bundling rule. *See id.* Although for the reasons stated in text and in note 6 *infra*, we believe any timeliness objection here would be wholly unfounded, Plaintiff, in its communication to DC37 stating that it would oppose intervention, specifically reserved the right to object on timeliness grounds. L. Dayan Decl. Ex. B.

[6] DC 37 left a voicemail for HSC's lead counsel on the morning of Monday, February 14, 2022, and followed up with an email later that afternoon, seeking HSC's position on DC 37's anticipated motion to intervene. L. Dayan Decl. ¶¶ 3-4 & Ex. A. HSC did not respond to that inquiry until the afternoon of Wednesday, February 16, asking to speak with DC 37's counsel two days later, on Friday, February 18. *Id.* at Ex. A. After repeated follow-up emails from DC 37's counsel, HSC ultimately committed to confer with DC 37 on the afternoon of Friday, February 18. *Id.* Even then, HSC—without alerting DC 37 to the fact that it would soon be serving its preliminary injunction motion—asked to see DC 37's moving papers to evaluate whether it would oppose or support intervention. *Id.* at ¶ 5. On February 23, HSC stated that it

Where, as here, a party seeks "to intervene 'at a very early stage in th[e] litigation,' and 'prior to any significant substantive motions,'" courts in this Circuit routinely deem the motion timely, even if there were far longer lapses of time between the filing of the complaint and the motion to intervene. *Bldg. & Realty*, 2020 WL 5658703, at *7 (alteration in original) (quoting *Schaghticoke Tribal Nation v. Norton*, No. 06-CV-81, 2006 WL 1752384, at *8 (D. Conn. June 14, 2006) (permitting intervention where motion was filed three months after filing of the complaint and collecting cases where delay was longer). In *Association of Connecticut Lobbyists LLC v. Garfield*, for example, the District of Connecticut held a motion to intervene timely, even when it was filed months after the complaint and after the filing of a motion for a preliminary injunction. 241 F.R.D. 100, 102-03 (D. Conn. 2007). DC 37's posture in this case is materially identical.

Because "this action is in its infancy," DC 37's participation "will not result in delay or prejudice" to any party. *Friends of E. Hampton Airport, Inc. v. FAA*, No. 15-CV-0441 (JS) (ARL), 2016 WL 792411, at *9 (E.D.N.Y. Feb. 29, 2016); *see also Yang v. Kellner*, No. 20 Civ. 3325 (AT), 2020 WL 2115412, at *1 (S.D.N.Y. May 3, 2020) ("[I]ntervention would not delay or prejudice the adjudication of the parties' rights, considering that it was sought at the earliest stage of the litigation" and there was no need "to extend any preexisting deadlines or reschedule any proceedings to accommodate" the intervenor.).

---

would oppose DC 37's intervention, still without alerting DC 37 to the fact that it had served its preliminary injunction motion on the evening of Friday, February 18. *Id.* at Ex. B.

II.   **DC 37 has a strong interest in defending the validity of an ordinance that directly affects its representation and organization of the professionals who work on human services contracts, a defense that turns on common questions of law and fact shared with the main action.**

As noted, permissive intervention under Rule 24(b)(1)(B) requires the proposed intervenor to identify "a claim or defense that shares with the main action a common question of law or fact." "It is well-established by district courts in the Second Circuit that the words 'claim or defense' are not read in a technical sense, but only require some interest on the part of the applicant" and "common issues of law or fact." *Bldg. & Realty Inst.*, 2020 WL 5658703, at *9 (cleaned up) (collecting cases). Here, DC 37 has both an interest in Plaintiff's challenge to Local Law 87 and it shares with the City a defense of that ordinance that turns on common questions of law and fact.

**A. DC 37 has a strong interest in the validity of Local Law 87.** As noted, one of DC 37's primary functions—representing and organizing the professionals who perform work under City human services contracts—is directly affected by Local Law 87. Whenever it seeks to represent or organize those professionals, the ordinance obligates DC 37 to negotiate toward a labor peace agreement with their employer. That is a direct burden, but not an unwelcome one: Many of the professionals represented by DC 37, much like those that DC 37 seeks to represent, seek to advance their wellbeing via union activity without risking interruption to the essential services they provide to the vulnerable people who rely on them. Proposed Answer § 1, ¶ 6. Local Law 87 advances that interest by requiring human services contractors to commit—in binding agreements with labor organizations, like DC 37, who either represent or seek to represent the employees discharging human services contracts—to refrain from conduct that might interrupt those essential services or at least to negotiate toward such agreements. N.Y.C. Admin. Code § 6-145(a)-(b). Such agreements serve the professionals that DC 37 represents or

seeks to represent by ensuring that they may continue to render essential services without fear

that their union activity might lead to the interruption of those services. By requiring human

services contractors to enter into such agreements or to negotiate toward such agreements, Local

Law 87 thus aids DC 37 in better serving the interest of the professionals it represents or seeks to

represent. Indeed, DC 37 has shifted its scarce resources toward negotiating precisely the sorts of

labor peace agreements required by Local Law 87.

DC 37's interest in negotiating labor peace agreements is protected by the statutory

scheme established by Local Law 87. Indeed, that scheme expressly contemplates that unions,

like DC 37, will participate in the negotiation and execution of such labor peace agreements.

And it expressly permits interested parties, like DC 37, to submit verified complaints of

violations of the law to the Comptroller for the Comptroller to investigate. N.Y.C. Admin. Code

§ 6-145(f)(1). If Local Law 87 were struck as unconstitutional or preempted, as Plaintiff

demands, then DC 37 would be less able to serve the interests of the professionals it represents

and seeks to represent in pursuing union activity without fear that their valuable work will be

interrupted. Courts in this Circuit have long held that a party, like DC 37, that is directly affected

by a law has an interest in its validity.[7] And DC 37's efforts to secure passage of Local Law 87

_____

[7] *See, e.g.*, *New York Pub. Interest Grp., Inv. v. Regents of the Univ. of N.Y.*, 516 F.2d 350, 351 (2d Cir. 1975) (per curiam) (pharmacists had interest in case challenging regulation prohibiting advertising the price of prescription drugs); *Bldg. & Realty Inst.*, 2020 WL 5658703, at *11 (groups representing tenants had interest in case challenging validity of rent-control laws); *New York v. Scalia*, No. 1:20-cv-1689-GHW, 2020 WL 3498755, at *2 (S.D.N.Y. June 29, 2020) (employer groups had interest in case challenging regulation governing FLSA claims); *New York v. HHS*, Nos. 19 Civ. 4676 (PAE), 19 Civ. 5433 (PAE), 19 Civ. 5435 (PAE), 2019 WL 3531960, at *4 (S.D.N.Y. Aug. 2, 2019) (religious healthcare workers had interest in lawsuit challenging federal regulation permitting healthcare providers to refrain from procedures that violate religious beliefs); *Connecticut Fine Wine & Spirits, LLC v. Harris*, No. 16-cv-1434 (JCH), 2016 WL 9967919, at *5 (D. Conn. Nov. 8, 2016) (trade associations of alcohol purveyors and wholesalers had interest in lawsuit challenging as preempted state liquor sales statutes); *Ass'n of Conn. Lobbyists LLC v. Garfield*, 241 F.R.D. 100, 103 (D. Conn. 2007) (unsuccessful political

underscores its interest in the validity of that statute.[8]

**B. DC 37's defense of Local Law 87 shares common questions with the City's defense.** A "single common question of law or fact" is enough to support permissive intervention, even where, unlike here, there are also "factual differences between the parties" that might distinguish the intervenor's case from the named party's claims or defenses. *Miller v. Silbermann*, 832 F. Supp. 663, 673 (S.D.N.Y. 1993) (quoting *McNeil v. NYC Hous. Auth.*, 719 F. Supp. 233, 250 (S.D.N.Y. 1989)). Here, DC 37's defense of Local Law 87 shares fundamental legal questions with the City's presumed defense—namely, whether Local Law is constitutionally sound and whether it is preempted by federal labor law. District Courts in the Second Circuit routinely grant parties permissive intervention in that circumstance.[9]

---

candidates who planned to run again and non-profit lobbying organizations that do not make political contributions "have substantial interests in the outcome of the case" challenging constitutionality of state campaign finance laws); *Commack Self-Service Kosher Meats, Inc. v. Rubin*, 170 F.R.D. 93, 101-02 (E.D.N.Y. 1996) (purveyors and consumers of kosher products, as well as a rabbi who fields questions concerning kosher products, had interest in case challenging constitutionality of the New York Kosher Laws).

[8] *See, e.g.*, *Bldg. & Realty Inst.*, 2020 WL 5658703, at *11 (granting permissive intervention where tenant advocacy groups had an interest in rent-control law that they "played an active role" in "form[ing] and "pass[ing]"); *Ass'n of Conn. Lobbyists*, 241 F.R.D. at 103 (groups that advocated for campaign finance laws had interest in its validity, partially on account of that advocacy and because "the very purposes for which the organizations were originally created, namely, election reform, are at stake"); *Herdman v. Town of Angelica*, 163 F.R.D. 180, 187 (W.D.N.Y. 1995) (organization had interest in case challenging constitutionality of town ordinance for which it had lobbied); *Commack Self-Serv. Kosher*, 170 F.R.D. at 102 ("Organizations may have sufficient interest to support intervention as a matter of right in actions involving legislation or regulations previously supported by the organization.").

[9] *See, e.g.*, *Bldg. & Realty Inst.*, 2020 WL 5658703, at *9 (common question of law where proposed intervenor sought to defend constitutionality of rent-control statute alongside the government); *HHS*, 2019 WL 3531960, at *7 ("common questions of law and fact with those to be litigated by the parties" where religious healthcare providers sought to defend the validity of a federal agency rulemaking permitting them to opt out of certain procedures); *Up State Tower Co. v. Town of Cheektowaga*, No. 1:19-cv-280, 2019 WL 4452413, at *3 (W.D.N.Y. Sept. 17, 2019) (common questions of law or fact where proposed intervenor sought to defend town action on the basis of the restrictive covenant on which the town's defense also relied); *Ass'n of Conn. Lobbyists*, 241 F.R.D. at 103 (common questions of law and fact where intervenors and

**III.    DC 37's intervention will promote development of the factual record and fair adjudication of the underlying legal issues**

As noted, one factor pertinent to permissive intervention is "whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Brennan*, 579 F.2d at 191-92 (quoting *Spangler*, 552 F.2d at 1329). Applying that consideration, courts in this Circuit have concluded that an intervenor's deep experience dealing with the subject matter of challenged legislation will often assist the parties in developing the factual record and enhance the quality of briefing before the Court.

In lawsuits challenging the constitutionality of certain tenant-protective laws, for example, this Court has permitted tenants-rights group to intervene permissively in light of their "vast experience in the trenches in housing court," on the theory that they "can bring to bear on the briefing their detailed knowledge" of the legislation, its effects, and the potential effects of striking it. *Bldg. & Realty Inst.*, 2020 WL 5658703, at *11 (internal quotation marks omitted) (lawsuit challenging rent-control statute); *see also 335-7 LLC v. City of New York*, No. 20 Civ. 1053 (ER), 2020 WL 3100085, at *3 (S.D.N.Y. June 11, 2020) (same); *Miller*, 832 F. Supp. at 674 (lawsuit challenging constitutionality of Housing Court practice). Likewise, where a group of politicians and fair-election groups sought to intervene to defend a state campaign finance law from constitutional attack, a court in this Circuit recognized that the intervenors "offer a unique, personal and highly relevant factual perspective to the law, its development, and its impact," as

---

defendant sought to defend validity of same statute); *Miller*, 832 F. Supp. at 673-74 (granting permissive intervention to tenants whose "defense raises the same legal questions as the defense of the named defendants—all claims concern the constitutionality of the Housing Court's policies and procedures"); *Commack Self-Serv. Kosher*, 170 F.R.D. at 106 (granting permissive intervention in light of common "questions of law and fact" where intervenors sought to defend the constitutionality of challenged law).

well as "specialized expertise and substantial familiarity with the legal issues that are presented for review. The court will only benefit from their participation." *Ass'n of Conn. Lobbyists*, 241 F.R.D. at 103. And in a case challenging the constitutionality of a statute regulating kosher foods, this Court permitted the intervention of rabbis, kosher consumers, and Jewish organizations, emphasizing that their participation "will bring a different perspective to the case and will contribute relevant factual variations that may assist the court in addressing the constitutional issue raised." *Commack Self-Service Kosher*, 170 F.R.D. at 106.

Much like the intervenors in those cases, DC 37's experience as one of the largest unions in New York City will bear directly on the briefing it can offer this Court, including expertise on matters pertaining to labor law and the operation of Local Law 87. Likewise, DC 37 is well situated to augment the record with facts pertaining to the uses and effects of no strike/no lockout clauses and labor peace agreements within the human services industry and more broadly, as well as the potential for disruptive labor disputes within the human services industry. Proposed Answer § 1, ¶¶ 5-6.

Those facts bear directly on DC 37's proposed defense to Plaintiff's claim that federal labor law preempts Local Law 87. That defense turns on the market-participant exception to federal labor law preemption. As the Supreme Court long ago explained, "a State may act without offending the pre-emption principles of the [National Labor Relations Act] when it acts as a proprietor and its acts therefore are not 'tantamount to regulation' or policymaking." *Bldg. & Constr. Trades Council of Metro. Dist. v. Assoc. Builders & Contractors of Mass./R.I., Inc.*, 507 U.S. 218, 229-30 (1993). Where "a private purchaser may choose a contractor based upon that contractor's willingness to enter into" certain agreements with a union, "a public entity *as purchaser* should be permitted to do the same." *Id.* at 231. Here, DC 37 is prepared to augment

the record to demonstrate that private purchasers are legally permitted to enter into labor peace

agreements of the sort required by Local Law 87, and to provide examples where private entities

have entered into such agreement. Indeed, DC 37 has direct and pertinent experience to offer the

Court. *See* Proposed Answer § 1, ¶¶ 5-6. DC 37 will thus show that private employers pursue the

same proprietary objective of uninterrupted service that the City has chosen to pursue in enacting

Local Law 87. That showing will buttress the conclusion that Local Law 87 is not preempted

because it seeks to advance the City's interests as a participant in the market for human services

that it purchases for its constituents, not as a regulator of that market.[10]

## IV.   Although DC 37 shares the City's objective in defending the validity of the law, that parallel objective should not preclude permissive intervention, particularly in light of DC 37's distinct interest in Local Law 87.

DC 37 seeks to intervene for the purpose of defending the validity of Local Law 87. We

understand that the City shares that objective and acknowledge that it has not, to date, behaved in

a way that would "overcome the presumption of adequate representation that arises when [a

proposed intervenor] has the same ultimate objective as a party to the existing suit," at least in

the context of intervention as of right. *Brennan*, 579 F.2d at 191.

In the context of *permissive* intervention, however, the adequacy of a named party's

representation of the proposed intervenor is "'clearly a minor factor at most.'" *Pike Co. v.*

*Universal Concrete Prods., Inc.*, 284 F. Supp. 3d 376, 397 (W.D.N.Y. 2018) (quoting *Allco Fin.*

*Ltd. v. Etsy*, 300 F.R.D. 83, 88 (D. Conn. 2014)) (granting permissive intervention even where

intervenor and named party "share a similar objective" in the litigation); *accord, e.g.*, *Bldg. &*

---

[10] We add that, for the purposes of the preliminary injunction motion that the parties are
presently briefing, DC 37 is uniquely situated to offer evidence of "the balance of hardships
occasioned by" enjoining the operation of Local Law 87, including "the hardships occasioned by
the absence of" ordinance on parties, like DC 37's constituents, that would have been
affected by it. *HHS*, 2019 WL 3531960, at *6.

*Realty*, 2020 WL 5658703, at *13 (granting permissive intervention to tenants-rights organizations even where intervenors conceded "that they do not expressly challenge the adequacy of the State and the City's representation"). "'[W]hile existing adequate representation may militate against allowing permissive intervention, such intervention may still be appropriate if the addition of the intervenors will assist in the just and equitable adjudication of any of the issues between the parties.'" *HHS*, 2019 WL 3531960, at *6-7 (quoting *United States v. N.Y.C. Hous. Auth.*, 326 F.R.D. 411, 418 (S.D.N.Y. 2018)). For that reason, courts in this Circuit routinely exercise their discretion to grant permissive intervention even where they hold that the adequacy of representation by a named party precludes intervention as of right.[11]

That approach is particularly appropriate here in light of the distinctive interests of DC 37 and the City. Although both parties share the objective of preserving Local Law 87, they do so for different reasons. DC 37 seeks to protect the interest of the professionals it represents and seeks to represent in pursuing union activity without fear of workplace disruptions. The City, by contrast, seeks to advance its proprietary interest in securing uninterrupted service. Because the parties have distinct interests in a parallel objective, "[i]t is . . . possible that the government may

---

[11] *See, e.g., N.Y.C. Hous. Auth.*, 326 F.R.D. at 417-18 (granting permissive intervention even after denying intervention as of right for failure to show "that the Government cannot adequately represent the NYCHA tenants' interest in decent, safe, and sanitary housing"); *In re Reyes*, No. 19 Civ. 7219, 2019 WL 6170901, at *2 (S.D.N.Y. Nov. 20, 2019) (granting permissive intervention on unopposed motion even where intervenor failed to "demonstrate[] how [the named party] would not adequately protect" intervenor's interests); *Scalia*, 2020 WL 3498755, at *2 (granting permissive intervention in case challenging federal agency rulemaking, even after denying intervention as of right in light of adequacy of representation by government); *HHS*, 2019 WL 3531960, at *6-7 (granting permissive intervention in case challenging federal agency rulemaking even after denying intervention as of right for failure to "overcome the presumption of [the federal agency's] adequate representation"); *Commack Self-Serv.*, 170 F.R.D. at 105-06 (granting permissive intervention even after denying intervention as of right for failure "to establish that [intervenor's] interest in sustaining the constitutionality of the Kosher Laws will not be adequately represented by the Attorney-General").

not emphasize or vigorously defend all aspects of the challenged law that are critical to the movant's interest." *Garfield*, 241 F.R.D. at 103.[12] Indeed, even in the context of intervention as of right, the Second Circuit has concluded that representation by the government would be inadequate in a lawsuit challenging the validity of a regulation where the intervenor "will make a more vigorous presentation of the economic side of the argument" than would the government, where the challenged regulation affected the intervenor's economic interests. *New York Pub. Interest Rsch. Grp.*, 516 F.2d at 352.

The likelihood of such divergence increases where, as here, the City defends an ordinance enacted to advance its proprietary interests. *See United States v. State of N.Y.*, 820 F.2d 554, 558 (2d Cir. 1987) (where government "is a party to the lawsuit in its capacity as employer, not as sovereign," there is no presumption that it adequately represents would-be intervenors). Because the government defends its conduct as the purchaser of services, its interest in a vigorous defense may be overwhelmed by "an equally strong or stronger interest in bringing such litigation to an end by settlement[]." *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 133 (2d Cir. 2001) (case challenging government's alleged employment discrimination). DC 37's need to intervene to protect its members' interests is thus especially urgent.

## <u>CONCLUSION</u>

For the reasons described above, we ask that the Court grant DC 37's motion for permissive intervention.

Dated: February 23, 2022

/s/ Caitlin Kekacs
Caitlin Kekacs (Bar No. 4999926)

---

[12] *See also, e.g.*, *Bldg. & Realty Inst.*, 2020 WL 5658703, at *13 (permitting permissive intervention in light of the divergent interests that informed the parties' shared objective); *Pike*, 284 F. Supp. 3d at 397.

Richard F. Griffin, Jr.*
Leon Dayan*
Joshua A. Segal*
BREDHOFF & KAISER, P.L.L.C.
805 15th Street NW, Suite 1000
Washington, DC 20005
Phone: 202-842-2600
Fax: 202-842-1888
ckekacs@bredhoff.com
rgriffin@bredhoff.com
ldayan@bredhoff.com
jsegal@bredhoff.com

Robin I. Roach (RR 1809)
General Counsel
District Council 37, AFSCME, AFL-CIO
125 Barclay Street
New York, New York 10007
(212) 815-1450
rroach@dc37.net

*Counsel for Intervenor District Council 37,
AFSCME, AFL-CIO*

\*Application for *Pro Hac Vice* Admission Pending