UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

HUMAN SERVICES COUNCIL OF NEW YORK, BRONXWORKS, INC., CATHOLIC CHARITIES, DIOCESE OF BROOKLYN, THE CHILDREN'S AID SOCIETY, THE CHILDREN'S VILLAGE, THE FEDCAP GROUP INC., FORESTDALE INC., GREENWICH HOUSE, INC., MOSHOLU MONTEFIORE COMMUNITY CENTER, INC., PUBLIC HEALTH SOLUTIONS, and RISEBORO COMMUNITY PARTNERSHIP INC.,

                    Plaintiffs,

      - against -

THE CITY OF NEW YORK, ERIC ADAMS, in his official capacity as the Mayor of the City of New York, and BRAD LANDERS, in his official capacity as the Comptroller of the City of New York,

                    Defendants.

**ORDER**

21 Civ. 11149 (PGG)

---

PAUL G. GARDEPHE, U.S.D.J.:

      In this action, Plaintiff Human Services Council of New York ("HSC") and several of its members have sued the City of New York (the "City"), Mayor Eric Adams, and Comptroller Brad Landers, alleging that New York City Administrative Code § 6-145 – also known as N.Y.C. Local Law 87 of 2021 ("Local Law 87") – is unconstitutional and preempted by federal law. District Council 37 ("DC-37") has moved to intervene pursuant to Fed. R. Civ. P. 24(b)(1)(B). (Dkt. No. 19) Plaintiff HSC opposes the motion. (Dkt. No. 37)

      For the reasons stated below, DC-37's motion will be granted.

## BACKGROUND

**I.    FACTUAL BACKGROUND**

As of November 16, 2021, Local Law 87 requires human services contractors and subcontractors – including some of HSC's members – to either enter into labor peace agreements with labor organizations, or attest that no union has sought to represent their employees, as a condition to being awarded or renewing contracts with the City or its agencies. (Am. Cmplt. (Dkt. No. 76) ¶¶ 1, 4) The law provides as follows:

> (1) No later than 90 days after the award or renewal of a city service contract . . . , such covered employer, shall either:
>
> (A)   submit an attestation to the applicable contracting agency, signed by one or more labor organizations, as applicable, stating that the covered employer has entered into one or more labor peace agreements with such labor organizations . . . ; or
>
> (B)   submit an attestation to the applicable contracting agency stating that the covered employer's covered employees are not currently represented by a labor organization and that no labor organization has sought to represent such covered employees.

N.Y.C. Admin. Code § 6-145(b).

Under Local Law 87, the "labor peace agreement" must "require[] that the covered employer and the labor organization . . . agree to the uninterrupted delivery of services to be rendered pursuant to the city service contract and to refrain from actions intended to or having the effect of interrupting such services." N.Y.C. Admin. Code § 6-145(a). A failure to comply with Local Law 87 "may constitute a material breach" of a services contract with the City, thus permitting the City to "terminat[e] . . . the contract." N.Y.C. Admin. Code § 6-145 (e)(2)(C). "Interested parties" may submit "verified complaint[s]" of potential violations of the law to the Comptroller for investigation. See N.Y.C. Admin. Code § 6-145(f)(1).

The Amended Complaint asserts that Local Law 87 improperly inserts union leaders into the City's contracting procurement process, in violation of Federal law. (Id. ¶¶ 6-7, 133) Plaintiffs contend that Local Law 87 compromises New Yorkers' access to social services because it requires human services providers to obtain union leaders' signatures to maintain their City contracts, unless the providers can attest that no union has sought to represent the provider's employees. (Id. ¶ 3, 5, 140) Plaintiffs assert that the signature requirement gives union leaders de facto veto power over City contracts – power that could be misused and exercised in an arbitrary fashion to the detriment of all New Yorkers. (Id. ¶¶ 7, 38)

Plaintiffs further contend that Local Law 87 unreasonably interferes with workers' rights in violation of Section 7 of the National Labor Relations Act (the "NLRA"), and is thus preempted by the NLRA. (Id. ¶ 11, 161-62) According to Plaintiffs, Local Law 87 effectively forces unionization of all human services contractors because many providers – including HSC members – perform work on both City and non-City projects. (Id. ¶ 10, 147-48)

A.  **DC-37**

Proposed-Intervenor DC-37 – one of the largest labor unions in New York City – advocated for the passage of Local Law 87 and was "'deeply involved' in 'drafting' the [s]tatute." (Id. ¶ 6 (quoting Aug. 18, 2021 DC-37 Press Release); Kekacs Decl., Ex. A (Dkt. No. 21) § 1, ¶¶ 1, 7)

Since 2019, DC-37 has represented "roughly 25,000 employees who work in the private sector for non-profit organizations that provide human services." Many of those employees work for City contractors that provide human services to New York City residents. (Id. ¶ 2) For example, as of October 2021, DC-37 became the collective bargaining

3

representative for approximately 250 employees of an organization that provides services to the City's homeless population. (Id. ¶ 3)

DC-37 pursues and has executed agreements with non-profit human services employers that "prohibit strikes, lockouts, and other behavior that would disrupt the delivery of human services during a period in which [DC-37] is seeking to organize the employer's employees into a union," or "during the term of [an existing collective bargaining] agreement." (Id. ¶¶ 4-5) For example, on October 5, 2021 and February 14, 2022, DC-37 entered into labor peace agreements with human services providers in New York City. (See Lovaglio-Miller Decl., Exs. H, J (Dkt. No. 47-3) at 33-41)

DC-37 says that it believes that such agreements prevent "disruptive labor-relations tactics" and "largely serve the interests of the professionals [DC-37] represents or seeks to represent." (Kekacs Decl., Ex. A (Dkt. No. 21) § 1, ¶ 6) For those reasons, DC-37 plans to allocate additional resources towards pursuing the labor peace "agreements that Local Law 87 requires the City's human services contractors to attempt to negotiate with unions." (Id. ¶ 7)

## II. PROCEDURAL HISTORY

HSC filed this action on December 29, 2021. (Cmplt. (Dkt. No. 1)) On February 23, 2022, DC-37 moved to intervene pursuant to Federal Rule of Civil Procedure 24(b)(1)(B). (Dkt. No. 19) On April 8, 2022, Plaintiff HSC filed its opposition. (Dkt. No. 37) Defendants have not opposed the motion.

On April 8, 2022, HSC moved for a preliminary injunction to enjoin the City from enforcing Local Law 87 (Dkt. No. 39), and the City filed its opposition that same day. (Dkt. No. 43) On April 13, 2022, DC-37 moved for leave to file opposition to HSC's application, and attached its proposed opposition to the motion. (Dkt. No. 47)

On June 27, 2022, this Court held a hearing on HSC's motion for a preliminary injunction. Attorneys from the law firm Bredhoff & Kaiser appeared at the hearing on behalf of DC-37. (June 27, 2022 Tr. (Dkt. No. 73) at 2) On July 14, 2022, this Court denied HSC's motion for a preliminary injunction without prejudice. (Dkt. No. 72)

The Amended Complaint was filed on August 16, 2022, and adds several HSC members as Plaintiffs, and Mayor Adams and Comptroller Landers as Defendants. (Dkt. No. 76) On September 21, 2022, Defendants requested leave to file a motion to dismiss the Amended Complaint. (Dkt. No. 85) On September 26, 2022, this Court set a briefing schedule for the motion, which will be fully submitted by October 28, 2022. (Dkt. No. 86)

## DISCUSSION

### I.    LEGAL STANDARD

Fed. R. Civ. P. 24(b)(2)(B) authorizes a court to grant permissive intervention "on timely motion" where a non-party "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). A district court has "broad discretion" in deciding a motion for permissive intervention. Wash. Elec. Co-op., Inc. v. Mass. Mun. Wholesale Elec. Co., 922 F.2d 92, 98 (2d Cir. 1990); see also U. S. Postal Serv. v. Brennan, 579 F.2d 188, 191 (2d Cir. 1978) ("Permissive intervention is wholly discretionary with the trial court."). Courts in this District have held that "[R]ule [24(b)(2)] is 'to be liberally construed' in favor of intervention." Delaware Tr. Co. v. Wilmington Tr., N.A., 534 B.R. 500, 509 (S.D.N.Y. 2015) (quoting Degrafinreid v. Ricks, 417 F. Supp. 2d 403, 407 (S.D.N.Y. 2006)).

"In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). The Second Circuit has explained that this "timeliness requirement is flexible and the

5

decision is one entrusted to the district judge's sound discretion." United States v. Yonkers Bd. of Educ., 801 F.2d 593, 594-95 (2d Cir. 1986). "Factors to consider in determining timeliness include: '(a) the length of time the applicant knew or should have known of its interest before making the motion; (b) prejudice to existing parties resulting from the applicant's delay; (c) prejudice to the applicant if the motion is denied; and (d) the presence of unusual circumstances militating for or against a finding of timeliness.'" Floyd v. City of New York, 770 F.3d 1051, 1058 (2d Cir. 2014) (quoting MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc., 471 F.3d 377, 390 (2d Cir. 2006)).

> Other relevant factors in considering permissive intervention
>
> include the nature and extent of the intervenors' interests, the degree to which those interests are adequately represented by other parties, and whether parties seeking intervention will significantly contribute to [the] full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.

H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc., 797 F.2d 85, 89 (2d Cir. 1986) (citation and internal quotation marks omitted).

## II.   ANALYSIS

DC-37 contends that permissive intervention is appropriate because (1) its motion was timely filed to avoid any prejudice to HSC (Interv. Br. (Dkt. No. 20) at 14-15); (2) it has "a strong interest in [defending] the validity of Local Law 87" (id. at 17); and (3) its proposed "intervention will promote development of the factual record and fair adjudication of the underlying legal issues" in this matter.  (Id. at 20)

Plaintiff HSC counters that DC-37 should not be allowed to intervene because (1) DC-37 "does not have a legally cognizable interest in this lawsuit" (Pltf. Br. (Dkt. No. 37) at 14); (2) any interest on DC-37's part is already adequately represented by the City (id. at 23-28); and (3) the proposed intervention would prejudice HSC and delay the case.  (Id. at 28-29)

6

As an initial matter, DC-37's application to intervene qualifies as a "timely motion" under Rule 24(b)(1).  The Complaint was filed on December 29, 2021 (Dkt. No. 1), and DC-37 moved to intervene less than two months later, on February 23, 2022.  (Dkt. No. 19)  At that point, HSC had not filed its motion for a preliminary injunction and the only Defendant at the time had filed its answer less than two weeks earlier, on February 11, 2022.  (Dkt. No. 14)  Accordingly, this Court rejects HSC's contention that DC-37's motion is untimely.  See Yang v. Kellner, No. 20-CV-3325 (AT), 2020 WL 2115412, at *1 (S.D.N.Y. May 3, 2020) ("[Permissive] intervention would not delay or prejudice the adjudication of the parties' rights, considering that it was sought at the earliest stage of the litigation, and . . . . [causes] no[] need[] to extend any preexisting deadlines or reschedule any proceedings.").

Moreover, HSC does not dispute that DC-37 "has a claim or defense that shares with the main action a common question of law or fact."  See Fed. R. Civ. P. 24(b)(1)(B).  "It is well-established by district courts in the Second Circuit that '[t]he words 'claim or defense' are not read in a technical sense, but only require some interest on the part of the applicant."  Bldg. & Realty Inst. of Westchester & Putnam Ctys., Inc. v. State of New York, No. 19-CV-11285 (KMK), 2020 WL 5658703, at *9 (S.D.N.Y. Sept. 23, 2020) (quoting United States v. N.Y.C. Hous. Auth., 326 F.R.D. 411, 418 (S.D.N.Y. 2018)).  Here, DC-37 has satisfied this requirement, as it shares "the City's presumed defense – namely, whether Local Law [87] is constitutionally sound and whether it is preempted by federal labor law."  (Interv. Br. (Dkt. No. 20) at 19; see Def. Opp. to P.I. (Dkt. No. 43) at 19-34)

Moreover, as discussed above, DC-37 has an interest in negotiating labor peace agreements with human services employers who contract with the City.  (See Kekacs Decl., Ex. A (Dkt. No. 21) § 1, ¶¶ 4-7)  Local Law 87 furthers that interest by, inter alia, requiring that such

7

contractors negotiate with unions such as DC-37 through the law's signature requirement. Moreover, Local Law 87 provides for "interested parties," such as DC-37, to submit verified complaints to address a covered employer's non-compliance with the law.  See N.Y.C. Admin. Code § 6-145(f)(1).  Accordingly, this Court finds that DC-37 has demonstrated a direct and substantial interest in defending the validity of Local Law 87 and thus in the outcome of this action.[1]  See Bldg. & Realty Inst., 2020 WL 5658703, at *11 (finding that proposed intervenors had "demonstrated sufficiently direct and substantial interests" where they "played an active role in the formation and passage of the [challenged law]" and "represented that their members . . . could be affected by revocation of the [challenged law]").

HSC goes on to argue that the City adequately represents DC-37's purported interest in this action.  (Pltf. Opp. (Dkt. No. 37) at 23)  While DC-37 does not dispute this point (see Interv. Br. (Dkt. No. 36) at 12), "'Rule 24(b) does not list inadequacy of representation as one of the considerations for the court' in exercising its discretion under Rule 24(b)[,] and although a court may consider it, 'it is clearly a minor factor at most.'"  Allco Fin. Ltd. v. Etsy, 300 F.R.D. 83, 88 (D. Conn. 2014) (quoting United States v. Columbia Pictures Indus., Inc., 88 F.R.D. 186, 189 (S.D.N.Y. 1980)); see New York v. HHS, 19-CV 4676 (PAE), 2019 WL 3531960, at *6 (S.D.N.Y. Aug. 2, 2019) ("[T]o grant permissive intervention, Rule 24(b) does not require a finding that party representation be inadequate.").  Indeed, courts in this District routinely grant permissive intervention despite finding that an existing party adequately

---

[1] HSC disputes DC-37's ability to defend the validity of Local Law 37 based on the "market participant" exception to NLRA preemption.  (See Pltf. Opp. (Dkt. No. 37) at 15-19)  However, the merits of DC-37's expected arguments are irrelevant to the determination of whether it should be permitted to intervene.  See Brennan v. N.Y.C. Bd. of Educ., 260 F.3d 123, 129 (2d Cir. 2001) ("[A]n application to intervene cannot be resolved by reference to the ultimate merits of the claims which the intervenor wishes to assert following intervention.").

represents the proposed intervenor's interest.  See Bldg. & Realty Inst., 2020 WL 5658703, at *13; New York v. Scalia, 2020 WL 3498755, at *2 (S.D.N.Y. June 29, 2020); HHS, 2019 WL 3531960, at *6-7; United States v. N.Y.C. Hous. Auth., 326 F.R.D. 411, 417-18 (S.D.N.Y. 2018).

"Rather, 'while existing adequate representation may militate against allowing permissive intervention, such intervention may still be appropriate if the addition of the intervenors will assist in the just and equitable adjudication of any of the issues between the parties.'"  HHS, 2019 WL 3531960, at *6 (quoting N.Y.C. Housing Auth., 326 F.R.D. at 418).  Here, DC-37 contends that it is "uniquely situated to offer evidence of the balance of hardships occasioned by . . . the absence of [Local Law 87] on parties, like DC-37's constituents."  (Interv. Br. (Dkt. No. 20) at 22 n.10; see also Interv. Reply (Dkt. No. 36) at 13 ("DC-37 can . . . augment[] the record with examples of labor-peace agreements and evidence of the potential for labor strife in the human services sector in the City [if Local Law 37 were enjoined]."))

Acknowledging that DC-37 "share[s] the objective of preserving Local Law 87" with the City (Interv. Br. (Dkt. No. 20) at 23), the Court finds that DC-37's firsthand knowledge of labor peace negotiations and its constituents' experience may lead to a more complete factual record.  See HHS, 2019 WL 3531960, at *6 ("[T]he Court would benefit from concrete factual submissions from the Proposed Intervenors as to the hardships occasioned by the absence of the [challenged law].").

Accordingly, DC-37's motion to intervene will be granted.[2]

---

[2] HSC's argument that DC-37's opposition "will place a great burden" on Plaintiffs is unavailing.  (See Pltf. Opp. (Dkt. No. 37) at 28-29)  The prospect that a party might have to address briefing from a proposed intervenor "is a poor reason to deny intervention."  W.

## **CONCLUSION**

For the reasons stated above, DC-37's motion to intervene is granted. Given that this Court has denied Plaintiff HSC's motion for a preliminary injunction (see Dkt. No. 72), DC-37's motion for leave to file opposition to that motion is denied as moot. (Dkt. No. 47)

The Clerk of Court is directed to terminate the motions (Dkt. Nos. 19, 47).

Dated: New York, New York
September 29, 2022

SO ORDERED.

*/s/ Paul G. Gardephe*
Paul G. Gardephe
United States District Judge

---

Watersheds Project v. Haaland, 22 F.4th 828, 839 (9th Cir. 2022). Indeed, the possibility that an intervenor "might raise new, legitimate arguments is a reason to grant intervention, not deny it." Id.