21-CV-11149 (PGG)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HUMAN SERVICES COUNCIL OF NEW YORK,
BRONXWORKS, INC., CATHOLIC CHARITIES,
DIOCESE OF BROOKLYN, THE CHILDREN'S AID
SOCIETY, THE CHILDREN'S VILLAGE, THE
FEDCAP GROUP INC., FORESTDALE, INC.,
GREENWICH HOUSE, INC., MOSHOLU
MONTEFIORE COMMUNITY CENTER, INC.,
PUBLIC HEALTH SOLUTIONS, RISEBORO
COMMUNITY PARTNERSHIP, INC.,

Plaintiffs,

- against -

THE CITY OF NEW YORK, ERIC ADAMS in his
official capacity as the Mayor of the City of New York,
and BRAD LANDER in his official capacity as the
Comptroller of the City of New York,

Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

*HON. SYLVIA O. HINDS-RADIX*
*Corporation Counsel of the City of New York*
*Attorney for Defendants City of New York,*
*Eric Adams and Brad Lander*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:   Rachel B. Kane*
*Michael S. Adler*
*Tel:  (212) 356-2538*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................... iii

PRELIMINARY STATEMENT ................................................................................. 1

SUMMARY OF RELEVANT FACTS ...................................................................... 3

ARGUMENT ............................................................................................................... 8

POINT I: PLAINTIFFS' CONSTITUTIONAL CLAIMS
MUST BE REJECTED .......................................................................... 8

    A.  PLAINTIFFS FAIL TO STATE A CLAIM
FOR VIOLATION OF THE FIRST
AMENDMENT ............................................................................... 9

    B.  PLAINTIFFS FAIL TO STATE A CLAIM
FOR VIOLATION OF DUE PROCESS ..................................... ....13

      1. Procedural Due Process ..............................................................13

        a.  Plaintiffs Fail to Allege Deprivation of a
Protected Property Interest....................................................14

        b.  Plaintiffs Cannot Establish the Absence
of Due Process ......................................................................17

      2. Unconstitutional Vagueness.......................................................18

    C.  PLAINTIFFS FAIL TO STATE A CLAIM
FOR VIOLATION OF THE EQUAL
PROTECTION CLAUSE ............................................................... 19

    D.  PLAINTIFFS FAIL TO STATE A CLAIM
FOR VIOLATION OF THE CONTRACTS
CLAUSE .......................................................................................... 21

    E.  PLAINTIFFS FAIL TO STATE A CLAIM
FOR VIOLATION OF THE TAKINGS
CLAUSE .......................................................................................... 22

POINT II: PLAINTIFFS' PREEMPTION CLAIMS FAIL
AS A MATTER OF LAW ..................................................................... 23

    A.  NATIONAL LABOR RELATIONS ACT
("NLRA") PREEMPTION ............................................................. 23

**Page**

    1. Preemption Does Not Apply Because The City is Acting as a Market Participant ...........................23

    2. Plaintiffs' Allegations Concerning "Spill-Over" Effects Do Not Defeat the Market Participant Exception ...........................27

    3. Plaintiffs' Preemption Claims Are Based on Misunderstandings of the Local Law...........................29

        a. The Local Law Does Not "Strip" Anyone of Rights Protected by the NLRA...........................30

        b. The Local Law Does Not Afford Unions Additional Rights...........................31

        c. The Local Law Does Not Interfere With The NLRB's Jurisdiction ...........................32

  B. LABOR MANAGEMENT RELATIONS ACT ("LMRA") PREEMPTION ...........................34

POINT III: PLAINTIFFS FAIL TO STATE A CLAIM FOR VIOLATION OF STATE OR LOCAL LAW ...........................37

CONCLUSION...........................38

# TABLE OF AUTHORITIES

**Cases**                                                                     **Page**

*A. Grgas Contr. Co. v Mercklowitz,*
  168 A.D.2d 678 (2d Dep't 1990) ........................................................................33

*Adcock v. Freightliner LLC,*
  550 F.3d 369 (2008), *cert. denied,* 558 U.S. 932 (2009) ....................................36

*Airline Serv. Providers Ass'n v. Los Angeles World Airports,*
  873 F.3d 1074 (9th Cir. 2017) ......................................................... 3, 25, 26-27, 32

*Alaska Oil & Gas Assn. v. Jewell,*
  815 F.3d 544 (9th Cir. 2016) .................................................................................4

*Alliance of Auto. Mfrs., Inc. v. Currey,*
  984 F. Supp. 2d 32 (D. Conn. 2013).................................................................... 8-9

*Amalgamated Clothing & Textile Workers Union v. Facetglas, Inc.,*
  845 F.2d 1250 (4th Cir. 1988) ..............................................................................3

*Amato v. Elicker,*
  534 F. Supp. 3d 196 (D. Conn. 2021) ..................................................................12

*Ams. for Prosperity Found. v. Bonta,*
  ___U.S.___, 141 S. Ct. 2373 (2021)......................................................................9

*AMSAT Cable v. Cablevision Ltd. P'ship,*
  6 F.3d 867, 872 (2d Cir. 1993) .............................................................................8

*Associated Bldrs. & Contrs. v. Cmty. Coll.,*
  2022 U.S. Dist. LEXIS 54738 (W.D. Pa. Mar. 25, 2022) ....................................13

*Beatie v. City of N.Y.,*
  123 F.3d 707 (2d Cir. 1997)................................................................................20

*Bldg. & Constr. Trades Council v. Assoc'd Builders & Contractors,*
  507 U.S. 218 (1993) ("*Boston Harbor*") ........................................................23, 31

*Bldg. Indus. Elec. Contractors Ass'n v. City of New York,*
  678 F.3d 184 (2d Cir. 2012) *("BIECA")* ..........................................................23, 26, 28

*Board of Dirs. of Rotary Int'l v. Rotary Club of Duarte,*
  481 U.S. 537 (1987)............................................................................................11

**Page**

*Brooks v. Raemisch*,
    717 F. App'x 766 (10th Cir. 2017) ..........................................................................10

*Building & Realty Inst. of Westchester & Putnam Ctys., Inc. v. New York*,
    2021 U.S. Dist. LEXIS 174535 (Sep. 14, 2021)......................................................21

*Cardinal Towing & Auto Repair, Inc. v. Bedford*,
    180 F.3d 686 (5th Cir. 1999) ...........................................................................24, 25

*Carey v. Wolnitzek*,
    2012 U.S. Dist. LEXIS 142830 (E.D. Ky. Sep. 29, 2012)......................................10

*Charlotte v. Int'l Ass'n of Firefighters*,
    426 U.S. 283 (1976)..................................................................................................19

*City of Cleburne v. Cleburne Living Ctr.*,
    473 U.S. 432 (1985)............................................................................................19-20

*Cocca-Rau v. Standard Ins. Co.*,
    2020 U.S. Dist. LEXIS 131429 (S.D.N.Y. July 22, 2020) ......................................38

*Community Hous. Improvement Prog. v. City of New York*,
    492 F. Supp. 3d 33 (E.D.N.Y. 2020) .......................................................................21

*Concerned Home Care Providers, Inc. v. Cuomo*,
    783 F.3d 77 (2d Cir. 2015).......................................................................................14

*Consumer Fedn. of Am. v. United States HHS*,
    83 F.3d 1497 (D.C. Cir. 1996) ...............................................................................4-5

*Dejana Indus. v. Vil. of Manorhaven*,
    2015 U.S. Dist. LEXIS 34384 (E.D.N.Y. Mar. 18, 2015)........................................10

*Donegal Servs., LLC v. Int'l Union of Operating Engrs., Local 150*,
    2020 U.S Dist. LEXIS 187518 (N.D. Ill. Oct. 8, 2020)...........................................35

*Eastway Constr. Corp. v. New York*,
    762 F.2d 243 (2d Cir. 1985)................................................................................16, 18

*Energy Reserves Grp. v. Kan. Power & Light Co.*,
    459 U.S. 400 (1983)..................................................................................................21

*Engquist v. Oregon Dept. of Agric.*,
    553 U.S. 591 (2008)..................................................................................................10

**Page**

*F. T. B. Corp. v Goodman*,
    300 N.Y. 140 (1949) .................................................................................34

*F.C.C. v. Beach Commc'ns*,
    508 U.S. 307 (1999) ...........................................................................19, 20

*Fair Hous. Justice Ctr. Inc. v. Lighthouse Living LLC*,
    2021 U.S. Dist. LEXIS 181505 (S.D.N.Y. Sep. 20, 2021) .......................5

*Garelick v. Sullivan*,
    987 F.2d 913 (2d Cir. 1993)......................................................................23

*George v. Richter*,
    2014 U.S. Dist. LEXIS 58047 (S.D.N.Y. Apr. 25, 2014).........................29

*Healthcare Ass'n of N.Y. State v. Pataki*,
    471 F.3d 87 (2d Cir. 2006)........................................................................25

*Heller v. Doe*,
    509 U.S. 312 (1993) ..................................................................................19

*Hertz Corp. v. City of N.Y.*,
    1 F.3d 121 (2d Cir. 1993)....................................................................21, 22

*Higgins Elec., Inc. v. O'Fallon Fire Protection Dist.*,
    813 F.3d 1124 (8th Cir. 2016) ..................................................................13

*Hinesburg Sand & Gravel Co. v. Chittenden Solid Waste Dist.*,
    959 F. Supp. 652 (D. Vt. 1997)..................................................................16

*Hosp. Emps. Div. of Local 79 v. Mercy-Memorial Hosp. Corp.*,
    862 F.2d 606 (6th Cir. 1988),
    vacated on other grounds,
    492 U.S. 914 (1989).................................................................................34

*Hotel & Rest. Empls. Union Local 217 v. J.P. Morgan Hotel*,
    996 F.2d 561 (2d Cir. 1993)......................................................................10

*Hotel Emps. & Restaurant Emps. Union, Local 57 v. Sage Hospitality Res., LLC*,
    390 F.3d 206 (3d Cir. 2004),
    *cert. denied*, 544 U.S. 1010 (2005)..........................................................36

*Hughes Tool Co. v. TWA*,
    409 U.S. 363 (1973).................................................................................37

**Page**

*Image Carrier Corp. v. Beame,*
    567 F.2d 1197 (2d Cir. 1977)....................................................................30

*IMS Health Inc. v. Sorrell,*
    631 F. Supp. 2d 434 (D. Vt. 2009)............................................................10

*Int'l Longshoremen's Ass'n v. Seatrain Lines, Inc.,*
    326 F.2d 916 (2d Cir 1964).......................................................................35

*Int'l Union UAW v. Dana Corp.,*
    278 F.3d 548 (6th Cir 2002) .....................................................................31

*Interport Pilots Agency v. Sammis,*
    14 F.3d 133 (2d Cir. 1994)........................................................................17

*J&M Parking Mgmt. v. City of N.Y.,*
    1998 U.S. Dist. LEXIS 1881 (S.D.N.Y. Feb. 20, 1998)...................20, 22

*Janus v. AFSCME, Council 31,*
    ___U.S.___, 138 S. Ct. 2448 (2018)........................................................12

*Jarvis v. Cuomo,*
    660 F. App'x 72 (2d Cir. 2016) ................................................................12

*Johnson v. Rancho Santiago Cmty. Coll. Dist.,*
    623 F.3d 1011 (9th Cir. 2010) ............................................................20, 25

*Kaiser Steel Corp. v. Mullins,*
    455 U.S. 72 (1982)....................................................................................37

*Koulkina v. City of N.Y.,*
    559 F. Supp. 2d 300 (S.D.N.Y. 2008)......................................................15

*Kwong v. Bloomberg,*
    876 F. Supp. 2d 246 (S.D.N.Y. 2012),
    *aff'd,* 723 F.3d 160 (2d Cir. 2013)...........................................................20

*L&M Bus Corp. v. Bd. Of Educ. Of the City Sch. Dist. of N.Y.,*
    2018 U.S. Dist. LEXIS 88354 (E.D.N.Y. May 25, 2018) ......................26

*Legal Aid Soc'y v. City of N.Y.,*
    114 F.Supp.2d 204 (S.D.N.Y. 2000)...................................................26, 29

*Lucas v. S.C. Coastal Council,*
    505 U.S. 1003 (1992)................................................................................22

**Page**

*Lyng v. Int'l Union*,
    485 U.S. 360 (1988) .................................................................................................13

*Malarczyk v. Lovgren*,
    2022 U.S. Dist. LEXIS 22646 (N.D.N.Y. Feb. 8, 2022) .......................................11

*Maselli v. Tuckahoe Union Free Sch. Dist.*,
    2019 U.S. Dist. LEXIS 127901 (S.D.N.Y. July 30, 2019) .....................................11

*Master Bldrs. of Iowa v. Polk Cty.*,
    653 N.W.2d 382 (Iowa 2002) .................................................................................13

*Messick v. Ruskey*,
    2022 U.S. Dist. LEXIS 21382 (E.D. Tenn. Feb. 7, 2022) .....................................11

*Metro. Milwaukee Ass'n of Commerce v. Milwaukee Cty.*,
    431 F.3d 277 (7th Cir. 2005) .................................................................................27

*Mulhall v. Unite Here Local 355*,
    667 F.3d 1211 (11th Cir. 2012), *cert. dismissed*, 571 U.S. 83 (2013)........................34, 35, 36

*N. Ill. Chapter of Assoc'd Builders & Contractors, Inc. v. Lavin*,
    431 F.3d 1004 (7th Cir. 2005) ...............................................................................32

*N.Y. HHS Union v. NYU Hosp. Ctr.*,
    343 F.3d 117 (2d Cir. 2003).....................................................................................37

*National Shooting Sports Found., Inc. v. James*,
    2022 U.S. Dist. LEXIS 93541 (N.D.N.Y. 2022) ...................................................18

*Nesmith v. Mount Vernon City Sch. Dist.*,
    2013 U.S. Dist. LEXIS 92090 (S.D.N.Y. Jul. 1, 2013) .........................................19

*New York City C.L.A.S.H. v. City of N.Y.*,
    315 F. Supp. 2d 461 (S.D.N.Y. 2004).....................................................................19

*New York State Rifle & Pistol Ass'n v. Cuomo*,
    804 F.3d 242 (2d Cir. 2014).............................................................................8, 9, 18

*Nicosia v. Amazon.com, Inc.*,
    834 F.3d 220 (2d Cir. 2016)....................................................................................5-6

*Nordlinger v. Hahn*,
    505 U.S. 1 (1992)....................................................................................................20

**Page**

*NYTDA, Inc. v. City of New York*,
    2022 U.S. Dist. LEXIS 48715 (E.D.N.Y. Mar. 18, 2022) ......................................16

*Ohlendorf v. United Food & Com. Workers Int'l Union, Local 876*,
    883 F.3d 636 (6th Cir 2018) ...........................................................................35

*Pickus v. U.S. Board of Parole*,
    543 F.2d 240 (D.C. Cir. 1976) .........................................................................17

*Pinter v City of N.Y.*,
    976 F. Supp. 2d 539 (S.D.N.Y. 2013).......................................................11, 12

*Planned Parenthood Assn. of Utah v. Herbert*,
    828 F.3d 1245 (10th Cir. 2016) .......................................................................10

*Poindexter v. EMI Record Grp. Inc.*,
    2012 U.S. Dist. LEXIS 42174 (S.D.N.Y. Mar. 27, 2012) ...............................15

*Porrazzo v. Bumble Bee Foods, LLC*,
    822 F. Supp. 2d 406 (S.D.N.Y. 2011)................................................................5

*Preschools of Am. (USA), Inc. v. New York City Dep't of Educ.*,
    2018 U.S. Dist. LEXIS 151683 (S.D.N.Y. Sept. 6, 2018) ...............................16

*Prime Healthcare Servs. v. Servs. Emps. Int'l Union*,
    97 F. Supp. 3d 1169 (S.D. Cal. 2015)..............................................................36

*Progressive Credit Union v. City of N.Y.*,
    889 F.3d 40 (2d Cir. 2018).......................................................................14, 19

*Reich v. Valley Nat'l Bank*,
    837 F. Supp. 1259 (S.D.N.Y. 1993).................................................................17

*Retail Clerks Int'l Ass'n v. Lion Dry. Goods, Inc.*,
    369 U.S. 17 (1962)...........................................................................................37

*Richmond Boro Gun Club v. City of N.Y.*,
    97 F.3d 681 (2d Cir. 1996)...............................................................................17

*Ruiz v. Commissioner of Dep't of Transp.*,
    679 F. Supp. 341 (S.D.N.Y. 1988),
    *aff'd on other grounds*, 858 F.2d 898 (2d Cir. 1988) ..............................18

*Salmon v. Blesser*,
    802 F.3d 249 (2d Cir. 2015).............................................................................12

**Page**

*Sanitation & Recycling Indus. v. City of N.Y.*,
    928 F. Supp. 407 (S.D.N.Y. 1996),
    aff'd on other grounds, 107 F.3d 985 ............................................................... 22-23

*Sanitation & Recycling Indus. v. City of N.Y.*,
    107 F.3d 985 (2d Cir. 1997)........................................................................................11

*Scahill v. District of Columbia*,
    909 F.3d 1177 (D.C. Cir. 2018)............................................................................11, 12

*Service Emps. Int'l Union v. St. Vincent Med. Ctr.*,
    344 F.3d 977 (9th Cir. 2003) ......................................................................................3

*Sprint Spectrum L.P. v. Mills*,
    283 F.3d 404 (2d Cir. 2002)........................................................................................24

*Stadnick v. Lima*,
    861 F.3d 31 (2d Cir. 2017)...........................................................................................6

*Startzell v. City of Phila.*,
    533 F.3d 183 (3d Cir. 2008)........................................................................................13

*Sullivan-Knoff v. City of Chicago*,
    348 F. Supp. 3d 787 (N.D. Ill. 2018) .........................................................................10

*United States v. O'Brien*,
    391 U.S. 367 (1968)....................................................................................................20

*United States v. Thompson*,
    896 F.3d 155 (2d Cir. 2018)........................................................................................12

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
    455 U.S. 489 (1982)....................................................................................................18

*Volvo Group N. Am., LLC v. Int'l Union UAW*,
    451 F. Supp. 3d 570 (W.D. Va. 2020) ........................................................................35

*Washington State Grange v. State Republican Party*,
    552 U.S. 442 (2008)......................................................................................................9

*Wisconsin Dept. of Indus., Labor & Human Rels. v. Gould, Inc.*,
    475 U.S. 282 (1986)............................................................................................... 33-34

*Ziglar v. Abbasi*,
    137 S. Ct. 1843 (2017)................................................................................................35

**Page**

**Statutes**

9 RCNY § 2-08 ...................................................................................................32, 33

29 U.S.C. § 185(a) ....................................................................................................37

Local Law 87 of 2021 ...............................................................................................14

N.Y.C. Admin. Code § 1-105 ....................................................................................34

N.Y.C. Admin. Code § 6-116.2(b)........................................................................32, 33

N.Y.C. Admin. Code § 6-145 ..............................................................................*ibid.*

N.Y. C.P.L.R. Article 78 ...........................................................................................18

NY Penal Law § 210 *et seq.*...................................................................................30

Sᴀɴᴛᴀ Aɴɴᴀ Cᴀʟ. Code of Ordinances § 40-2. ..................................................9, 31

**Other Authorities**

U.S. Const. Amend. V ...............................................................................................22

U.S. Const., Art. I, § 10 ............................................................................................21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                 :

HUMAN SERVICES COUNCIL OF NEW YORK,
BRONXWORKS, INC., CATHOLIC CHARITIES,    :    No. 21-CV-11149 (PGG)
DIOCESE OF BROOKLYN, THE CHILDREN'S AID
SOCIETY, THE CHILDREN'S VILLAGE, THE    :
FEDCAP GROUP INC., FORESTDALE, INC.,
GREENWICH HOUSE, INC., MOSHOLU    :
MONTEFIORE COMMUNITY CENTER, INC.,
PUBLIC HEALTH SOLUTIONS, RISEBORO    :
COMMUNITY PARTNERSHIP, INC.,
    :
                                Plaintiffs,    :

        - against -    :

THE CITY OF NEW YORK, ERIC ADAMS in his    :
official capacity as the Mayor of the City of New York,
and BRAD LANDER in his official capacity as the    :
Comptroller of the City of New York,
    :
                            Defendants.    :

-----------------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
## TO DISMISS THE FIRST AMENDED COMPLAINT

### PRELIMINARY STATEMENT

Plaintiffs challenge Local Law 87 of 2021 (the "Local Law," codified at N.YC. Admin. Code § 6-145), which requires City human service contractors (and subcontractors) to negotiate towards a labor peace agreement ("LPA") with a union that seeks to represent the employees directly providing the City-funded services. The covered contractors provide essential services worth billions of dollars to New Yorkers each year, and the Local Law requires only that such contractors pursue an LPA providing for uninterrupted delivery of these services, and comply with minimal disclosure and reporting requirements.

The First Amended Complaint ("Complaint" or "FAC") asserts a hodgepodge of claims of constitutional violations and labor law preemption, each of which rests on a misunderstanding of the Local Law and a disregard of the City's guidance as to how the Local Law will be interpreted and applied. The Complaint is also rife with speculation as to how the Local Law could hypothetically be misused by labor unions. Crucially, the Complaint contains no allegation that any Plaintiff or any other covered contractor has been unable to comply with the Local Law or has been found to be in violation of the Local Law, let alone that any Plaintiff or contractor has suffered any negative consequence as a result of such a finding. Nor is there any allegation that any Plaintiff or any other covered contractor has been contacted by any union seeking to represent its covered employees, let alone that a union has acted improperly in connection with such a request. Thus, all of Plaintiffs' claims must be evaluated as facial challenges, which are evaluated according to a higher standard than as-applied claims.

Plaintiffs' constitutional claims are deficient and must be dismissed. Plaintiffs' First Amendment challenge fails because the Local Law does not impose any restrictions on speech or implicate any free association rights. Plaintiffs' due process claim fails because the Local Law does not apply to contracts that Plaintiffs entered into, or under which performance had begun, prior to the Local Law's effective date, and therefore the Local Law cannot result in any deprivation with respect to those contracts. To the extent Plaintiffs assert hypothetical deprivations with respect to future contracts, such claims fail because Plaintiffs do not have a protected property interest in future contracts. Further, even if Plaintiffs could establish such an interest, the Local Law provides for sufficient process before any contract could be terminated. Plaintiffs' void for vagueness claim fails because Plaintiffs do not and cannot allege that the Local Law is substantially incomprehensible. Plaintiffs' equal protection claim fails because the Local Law does not

distinguish based on suspect classifications or infringe on constitutional rights, and it is supported by a rational basis. Plaintiffs' claim for violation of the Contracts Clause fails because the Local Law is not retroactive, and therefore does not impair any preexisting contractual relationship. Plaintiffs' takings clause claim is defective because Plaintiffs cannot establish that the Local Law deprives any Plaintiff of all economically beneficial or productive use of any property.

As to Plaintiffs' preemption claims, Plaintiffs' National Labor Relations Act ("NLRA") preemption claim fails because, under the market participant exception, preemption does not apply to actions that governments take in their proprietary interest. The Local Law falls squarely within the exception because it furthers the City's interest in preventing interruption of important services provided pursuant to City contracts, and applies only to contractors that enter into certain types of contracts with the City (and certain of their subcontractors). Plaintiffs' Labor Management Relations Act ("LMRA") preemption claim fails because the Local Law does not require contractors to provide an impermissible "thing of value" to a union, or otherwise conflict with any provision of the LMRA.

## SUMMARY OF RELEVANT FACTS

Labor Peace Agreements (LPAs)

LPAs are common in the private sector. *See*, *e.g.*, *Service Emps. Int'l Union v. St. Vincent Med. Ctr.*, 344 F.3d 977, 984-85 (9th Cir. 2003); *Amalgamated Clothing & Textile Workers Union v. Facetglas, Inc.*, 845 F.2d 1250, 1253 (4th Cir. 1988). Numerous municipalities and states have passed laws requiring LPAs or similar agreements for specified sectors or types of government-funded projects or contracts, or otherwise imposed such requirements. *See, e.g., Airline Serv. Providers Ass'n v. Los Angeles World Airports*, 873 F.3d 1074 (9th Cir. 2017). While LPAs may **include** various terms, a term common among, and central to, an LPA is avoiding actions that would disrupt the provision of services.

<u>The Local Law and the City's Guidance to Contractors</u>

Local Law 87 of 2021, enacted on August 18, 2021, became effective on November 16, 2021. N.Y.C. Admin. Code § 6-145. It applies to City contractors (and some subcontractors) providing essential social services to New York clients, including but not limited to day care, foster care, home care, health or medical services, housing and shelter assistance, preventive services, youth services, senior centers, employment training and assistance, vocational and educational programs, legal services, and recreation programs. Admin. Code § 6-145(a); FAC ¶112.

The Local Law requires that (a) a contractor seeking award or renewal of a covered city contract submit a certification attesting to its intent to comply with the Local Law and disclosing violations of laws relating to labor relations, and update such certification annually during the contract term; (b) a contractor awarded a covered contract (or renewal) submit an attestation to the contracting agency within 90 days of award indicating either that it has entered into an LPA, that it is in the process of negotiating an LPA, or that no labor organization has sought to represent its covered employees; and (c) a contractor that receives notice from a labor organization seeking to represent its covered employees after such initial 90-day period submit an attestation within 90 days of receipt of such notice (Admin. Code § 6-145(b),(c)).

The Local Law defines an LPA as an agreement that (1) "requires that the covered employer and the labor organization and its members agree to the uninterrupted delivery of services to be rendered pursuant to the city service contract and to refrain from actions intended to or having the effect of interrupting such services;" and (2) "includes any other terms required by rules promulgated pursuant to paragraph 2 of subdivision d of this section."[1] *Id.* § 6-145(a).

---

[1] No such rules have been promulgated. Rules are not necessary to effectiveness of the Local Law, since Section 6-145 (d)(2) provides for such promulgation "as appropriate and consistent with this section," the phrase "as appropriate" vests discretion to determine whether to effect such promulgation (*Alaska Oil & Gas Assn. v. Jewell*, 815 F.3d 544, 565 (9th Cir. 2016); *Consumer*

The Local Law gives primary enforcement authority and discretion to the contracting agency, providing that covered contracts must include provisions indicating that a contractor's failure to comply with the Local Law, as determined by the contracting agency, "may constitute a material breach" of the contract, and that absent a timely cure of such a breach, the contracting agency "shall have the right to pursue" available remedies, "including termination of the contract." *Id.* § 6-145(e)(2)(c); Kane Decl. Ex. 1 § 2(a), (c). The Local Law also provides for investigation by the City Comptroller where the Comptroller receives a verified complaint, or otherwise has reason to believe that a covered entity has not complied with the Local Law's requirements. *Id.* § 6-145(f)(1). Any enforcement action resulting from such an investigation would be taken by the contracting agency. *Id.* The Local Law also provides a process through which a contractor may dispute any potential "order, determination or any other disposition" by the contracting agency, including through a hearing before the Office of Administrative Trials and Hearings ("OATH"). *Id.* § 6-145(f)(2).

Following the Local Law's enactment, the City issued a Rider for inclusion in covered City contracts, as well as two "FAQ" documents,[2] which provide clarification concerning

---

*Fedn. of Am. v. United States HHS*, 83 F.3d 1497, 1503 (D.C. Cir. 1996)), and the City has elected at least for now to circulate guidance in the form of Frequently Asked Question ("FAQ") documents, rather than issue rules.

[2] The Rider, the FAQ document dated February 4, 2022 (the "February FAQ"), and the FAQ document dated March 24, 2022 (the "March FAQ") are attached as Exhibits 1, 2 and 3, respectively, to the Declaration of Rachel B. Kane, dated September 30, 2022 ("Kane Decl."). An updated Certification form is attached as Exhibit 4. These documents are publicly available on the City's website, as attachments to contract solicitations (https://passport.cityofnewyork.us/page.aspx/en/rfp/request_browse_public, e.g. solicitation no. 06922P0022 "Master Leasing for Homeless and At-Risk Persons"); therefore the Court may take judicial notice of their contents for purposes of this motion to dismiss (s*ee Fair Hous. Justice Ctr. Inc. v. Lighthouse Living LLC*, 2021 U.S. Dist. LEXIS 181505, at *9-10 (S.D.N.Y. Sep. 20, 2021); *Porrazzo v. Bumble Bee Foods, LLC*, 822 F. Supp. 2d 406, 411-12 (S.D.N.Y. 2011)). The FAQs and the Certification form are properly considered for the additional reason that they are incorporated into the Complaint by reference. *See* FAC e.g., ¶30, ¶131; *Nicosia v. Amazon.com,*

the Local Law's implementation. These documents explain that the Local Law is not retroactive, but rather applies only to prospective contracts and renewals. Specifically, the FAQ explain that:

- "Local Law 87 does not apply to contracts for which performance of the services under the contract began prior to [the Law's effective date] or, in the case of a contract renewal, performance of the services covered by the renewal term began prior to [the effective date]." Kane Decl. Ex. 2 No. 3.

- With respect to renewals of preexisting contracts, the Local Law will not apply to a renewal term beginning after the Local Law's effective date unless the contractor agrees to amend the original contract to include the Rider that incorporates the terms of the Local Law. *Id.* No. 4.

- With respect to discretionary funding awards, "Local Law 87 does not apply to a contract for which a contractor has been notified in writing prior to [the Law's effective date] that such contractor will be receiving a contract." *Id.* No.2.

These documents also explain that a contractor's failure to comply with the Local Law's attestation requirement will not automatically be deemed a violation or breach. Specifically, in assessing a contractor's noncompliance, the City must take into account "the contractor's good faith efforts to comply," including its "documented efforts to negotiate with labor organizations," as well as "any relevant conduct of a labor organization." Kane Decl. Ex. 1 § 4(D)). A contracting agency will not find the contractor to be in breach for failure to submit a signed attestation if it determines that the contractor "exercised good faith efforts" to do so, and a determination as to whether a contractor acted in good faith will take into account "all relevant facts and circumstances." *Id.* Ex. 3 No. 13. For example, if a labor organization "fails to respond to . . . good faith attempts to initiate negotiations toward an LPA," the contractor would not be held in breach. *Id.*

---

*Inc.*, 834 F.3d 220, 230-31 (2d Cir. 2016). While the Complaint omits mention of the Rider and the February FAQ, Plaintiff Human Services Council of New York ("HSC") submitted these documents as exhibits in support of its motion for a preliminary injunction in this matter. ECF No. 41 ¶31, Ex. A (pp. 17-22); ECF No. 42 ¶6. Ex. 3 (pp. 37-38). The Court need not credit Plaintiffs' conclusory allegation that the FAQs are "not binding upon the City" (FAC ¶33), which ignores that the City has filed these documents with the Court (ECF No. 44 Exs. 2, 3), for purposes of this motion (*see Stadnick v. Lima*, 861 F.3d 31, 35 (2d Cir. 2017) (Court need not give effect to "legal conclusions couched as factual allegations")).

The Rider and FAQ documents also provide other clarifications, including that:

- A qualifying "notice" from a labor organization must be made "in writing" and directed to either the contractor's chief executive officer or the contractor's designated business or e-mail address. Kane Decl. Ex. 1 § 4(C)(i), Ex. 3 No. 8.

- A contractor (or subcontractor) that is already party to a collective bargaining agreement ("CBA") as to covered employees that provides for non-interruption of services need not enter into a separate LPA with respect to those employees, and need not submit an attestation in connection with a notice received by another union with respect to those employees. *Id.* Ex. 1 § 4(E), Ex. 3 Nos. 11-12.

- The required disclosures of labor law violations are largely duplicative of those already required as part of the City procurement process, and a contractor that has already made all relevant disclosures need only indicate on its certification that such disclosures are up to date. *Id.* Ex. 3 No. 7, Ex. 4.

Plaintiffs' Claims

Plaintiffs assert that the Local Law violates several provisions of the U.S. Constitution, including the First Amendment, the Due Process Clause, the Equal Protection Clause, the Takings Clause, and the Contracts Clause; that the Local Law is preempted by the National Labor Relations Act ("NLRA") and the Labor Management Relations Act ("LMRA"); and that the Local Law violates unspecified state and local laws. The Complaint does not allege that any Plaintiff or other human services provider has been contacted by a labor union seeking to represent its covered employees, that any provider has been unable to submit a certification or attestation required under the Local Law, that any provider has been found to be in violation of the Local Law or in breach of a contract based on failure to comply with the Law, or that any provider has had its contract terminated or otherwise or incurred any other penalty as a result of such a finding. Rather, the Complaint relies on speculative and untethered allegations that the Local Law could be abused by labor unions and could lead to unfair results for contractors as a result.

## ARGUMENT

The Complaint should be dismissed in its entirety pursuant to Fed. R. Civ. P. 12(b)(6) because each of Plaintiffs' claims fail to state a claim upon which relief could be granted.

### POINT I

### PLAINTIFFS' CONSTITUTIONAL CLAIMS MUST BE REJECTED

The Complaint makes reference to the City's conduct "[i]n applying Local law 87 to Plaintiff's members" (FAC ¶167) but it does not actually allege any instance in which the City has refused to award a covered contract to a Plaintiff, found a Plaintiff to be in breach of the Local Law's requirements, imposed a penalty on a Plaintiff in connection with the Local Law, or otherwise applied the Local Law to any Plaintiff in a manner that would cause the alleged harms that underly Plaintiffs' claims.[3] To the extent the Complaint relies on hypothetical future applications of the Local Law, such claims are not ripe for review. *AMSAT Cable v. Cablevision Ltd. P'ship*, 6 F.3d 867, 872 (2d Cir. 1993).

Therefore, the Complaint must be construed as asserting only facial, as opposed to as-applied, challenges. *See New York State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242, 265 (2d Cir. 2014) (treating a "pre-enforcement" claim as facial rather than as-applied); *Alliance of Auto. Mfrs., Inc. v. Currey*, 984 F. Supp. 2d 32, 46-47 (D. Conn. 2013) (holding no as-applied challenge

---

[3] Notably, while Plaintiffs allege harm resulting from delays in the registration of their contracts, they do not allege that this problem was caused by the passage or implementation of the Local Law. To the contrary, the Complaint alleges that delayed registration was a problem before the Law was passed. *See* FAC, e.g. ¶51 (alleging that "delayed 'registration' of human services contracts is a ubiquitous and well-known problem" and that "[n]umerous affiliate contracts with the City have been delayed over the years"), ¶66 (alleging that "[o]ver the years, BronxWorks contracts with the City have experienced 'registration' and other delays impacting funding").

was before court where complaint failed to plead facts supporting unconstitutional application of law apart from general applicability to all covered businesses).

Facial constitutional challenges are generally "disfavored" because they "often rest on speculation," run contrary to principles of judicial restraint and frustrate the democratic process. *Washington State Grange v. State Republican Party*, 552 U.S. 442, 450 (2008). To prevail on any of their constitutional claims, Plaintiffs must demonstrate that "no set of circumstances exists under which the . . . [Local Law] would be valid." *New York State Rifle*, 804 F.3d at 265 (describing "prohibitively high bar" applicable to plaintiff's facial vagueness challenge). Plaintiffs cannot meet this standard with respect to any of their claims.

A.   **PLAINTIFFS FAIL TO STATE A CLAIM FOR VIOLATION OF THE FIRST AMENDMENT**

The free speech prong of Plaintiff's First Amendment claim warrants dismissal. In a facial First Amendment challenge to legislation such as that lodged here, a plaintiff must show that no application of the legislation would be permissible or that a substantial number of applications would be unconstitutional when judged in relation to its legitimate sweep. *Ams. for Prosperity Found. v. Bonta*, ___U.S.___, 141 S. Ct. 2373, 2387 (2021). Plaintiffs can make no such showing here. Contrary to Plaintiffs' premise, the Local Law — unlike labor peace legislation in some other jurisdictions (e.g., Santa Anna Cal. Code of Ordinances § 40-2)— imposes no restrictions on a contractor's ability to express its views on unionization in general, the merits of a particular union, or on any other aspect of labor relations. Rather, it requires only a good faith effort to obtain an agreement for uninterrupted delivery of services and for avoidance of actions interrupting such services. Clearly, as to a local law that does not bar speech,[4] Plaintiffs cannot

---

[4] Nor has Plaintiff alleged that the City rendered any interpretation or determination to the effect that criticism of unionization would constitute an action interrupting or intended to interrupt

show that no application of this measure comports with Plaintiffs' First Amendment free speech rights or that its legitimate sweep is so narrow that a relatively large number of applications would violate such rights.[5]

Plaintiffs' claim that the Local Law "chill[s]" . . . protected speech regarding unions and unionization (FAC ¶154) similarly fails. In a facial challenge, a chilling effect will not be presumed, and a court must give emphasis to whether a challenged law could possibly be applied constitutionally. *IMS Health Inc. v. Sorrell*, 631 F. Supp. 2d 434, 456 (D. Vt. 2009). Further, a conclusion that a law has an impermissible chilling effect requires a finding not merely that some protected speech *might be* chilled but rather that there *will be* chilling of a substantial amount of protected speech. *Carey v. Wolnitzek*, 2012 U.S. Dist. LEXIS 142830, at *14-15 (E.D. Ky. Sep. 29, 2012)*; see Sullivan-Knoff v. City of Chicago*, 348 F. Supp. 3d 787, 795 (N.D. Ill. 2018). Additionally, the ready availability of legal steps or a legal remedy to avert adverse consequence weighs strongly against such a finding. *See Brooks v. Raemisch*, 717 F. App'x 766, 769 (10th Cir. 2017). Judged by these standards, Plaintiffs' facial claim that the Local Law will have a chilling effect cannot be sustained. As noted, the Local Law itself prescribes no limitation on speech, and Plaintiffs adduce no basis, whether through promulgated interpretations or otherwise, for inferring any such limitation. Further, even if a contracting agency were to find, in a particular case, that a

---

services. And, if such a situation somehow were to occur, the proper remedy would be a future as-applied challenge or an Article 78 proceeding.

[5] And, even if free speech rights were implicated on the present record, Plaintiffs' contractor statuses would mean that their rights are equivalent to those of public employees and can be outweighed by public interests in achieving efficient performance. *Engquist v. Oregon Dept. of Agric.*, 553 U.S. 591, 598-601 (2008); *Planned Parenthood Assn. of Utah v. Herbert*, 828 F.3d 1245, 1258-59 (10th Cir. 2016); *Dejana Indus. v. Vil. of Manorhaven*, 2015 U.S. Dist. LEXIS 34384, at *16-18 (E.D.N.Y. Mar. 18, 2015). Such interests are quite weighty here, given judicial recognition of employer-union "tensions inevitably flowing from a union organizing effort." *Hotel & Rest. Empls. Union Local 217 v. J.P. Morgan Hotel*, 996 F.2d 561, 566 (2d Cir. 1993).

contractor's protected speech had somehow caused it to violate the Local Law, the contractor would have the opportunity first to cure any potential breach before any adverse finding could be made, and then to challenge any adverse finding in an administrative hearing, and then in an Article 78 proceeding. Admin. Code § 6-145(e)(2)(c)(iii), (f)(2); Kane Decl. Ex. 3 No. 14.

The free association prong of Plaintiffs' First Amendment claim also warrants dismissal. Plaintiffs' free association claim is apparently predicated on the thesis that the requirement that contractors make a good faith effort to negotiate an LPA with a union seeking to represent workers implicates and violates a supposed free association right of the employers to refrain from any such dealings with unions. But the Local Law neither implicates nor violates any such free association right. Not all dealings with others implicate free association rights. *Sanitation & Recycling Indus. v. City of N.Y.*, 107 F.3d 985, 996 (2d Cir. 1997). Rather, coverage is limited to the two categories of associations: intimate associations and expressive associations. *Scahill v. District of Columbia*, 909 F.3d 1177, 1185 (D.C. Cir. 2018); *Malarczyk v. Lovgren*, 2022 U.S. Dist. LEXIS 22646, at *26 (N.D.N.Y. Feb. 8, 2022). Neither type exists here.

Intimate associations are limited to marriage, family, and similar relationships involving those with whom one shares a special community of thoughts, experiences, and beliefs and personal aspects of one's life. *Board of Dirs. of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 545 (1987). Excluded are other relationships, such as business or commercial relationships, customer-seller relationships, landlord-tenant relationships, and the like. *Sanitation & Recycling Indus.*, 107 F.3d at 996; *Maselli v. Tuckahoe Union Free Sch. Dist.*, 2019 U.S. Dist. LEXIS 127901, at *10-11 (S.D.N.Y. July 30, 2019); *Pinter v City of NY*, 976 F. Supp. 2d 539, 564 (S.D.N.Y. 2013); *see also Messick v. Ruskey*, 2022 U.S. Dist. LEXIS 21382, at *35-36 (E.D. Tenn. Feb. 7, 2022). Plainly, the Local Law does not implicate any intimate association.

Nor is an expressive association involved here. Expressive association involves association for the purpose of engaging in some form of expression or some activity protected by the First Amendment, such as speech, assembly, religion, or petitioning. *Salmon v. Blesser*, 802 F.3d 249, 256 (2d Cir. 2015); *Amato v. Elicker*, 534 F. Supp. 3d 196, 208-209 (D. Conn. 2021). Conduct that does not manifest an intent to convey a particularized message does not amount to expressive association. *United States v. Thompson*, 896 F.3d 155, 163-64 (2d Cir. 2018); *Amato v. Elicker*, 534 F. Supp. 3d 196, 208-09 (D. Conn. 2021). Likewise, business or commercial relationships generally do not qualify as expressive associations. *Scahill*, 909 F.3d at 1185 (D.C. Cir. 2018); *Pinter*, 976 F. Supp. 2d at 564; *Amato*, 534 F. Supp. 3d at 208-09. Here, the required interactions with unions do not mandate that the employers support unionization, support union goals, or convey any particular message. Rather, all that is required is a good faith effort to negotiate an agreement for the uninterrupted performance of work and avoidance of disruptive activities. The interaction called for is thus little different from what would be involved in a tenant negotiating an agreement with a prospective landlord as to a topic of mutual interest and is equally message-neutral.

Nor is it problematic that some interactions are called for when the employers may wish to avoid all interactions. Indeed, with particular reference to unions, courts in a variety of scenarios have rejected free association challenges to mandated interactions. For example, a requirement that a non-union-member employee permit a particular union to negotiate a collective bargaining agreement that binds the employee has been upheld. *Janus v. AFSCME, Council 31*, ___U.S.___, 138 S. Ct. 2448, 2485n.27, 2466 (2018); *Jarvis v. Cuomo*, 660 F. App'x 72, 74-75 (2d Cir. 2016). Similarly, a requirement that a non-union member seeking a job in connection with a government contract apply through the hiring hall of a particular union has been upheld against

a free association challenge. *Associated Bldrs. & Contrs. v. Cmty. Coll.*, 2022 U.S. Dist. LEXIS 54738, at \*35 (W.D. Pa. Mar. 25, 2022). Even restriction of participation in government contract work to those affiliated with a particular union has been upheld against free association challenges. E.g., *Higgins Elec., Inc. v. O'Fallon Fire Protection Dist.*, 813 F.3d 1124, 1130 (8th Cir. 2016); *Master Bldrs. of Iowa v. Polk Cty.*, 653 N.W.2d 382, 398-99 (Iowa 2002).

Additionally, in the area of freedom of association with unions and claims that objection to such association may result in denial of government contract work, courts have commonly invoked the principle that government is not required to provide funds to maximize exercise of free association even if the result is economic hardship. *Lyng v. Int'l Union*, 485 U.S. 360, 368 (1988); *Higgins Elec.*, 813 F.3d at 1130; *Master Bldrs. of Iowa*, 653 N.W.2d at 398-99.

Finally, Plaintiffs' other First Amendment claims also fail. Given that Plaintiffs do not demonstrate any constriction of constitutional rights, there is no unlawful penalization for, or conditioning of, the exercise of constitutional rights. And, because "[t]he right of free speech does not encompass the right to cause disruption," (*Startzell v. City of Phila.*, 533 F.3d 183, 198 (3d Cir. 2008)), a local law requiring that contractors make good-faith efforts to negotiate an agreement that they will "refrain from actions intended to or having the effect of interrupting such services" (Admin. Code § 6-145) does not interfere with protected speech.

## B.   PLAINTIFFS FAIL TO STATE A CLAIM FOR VIOLATION OF DUE PROCESS

### 1.   Procedural Due Process

"To succeed on a procedural due process claim [based on a deprivation of property rights], a plaintiff must first identify a property right, second show that the state has deprived him

[or her] of that right, and third show that the deprivation was effected without due process."[6] *Progressive Credit Union v. City of N.Y.*, 889 F.3d 40, 51 (2d Cir. 2018) (quoting *Local 342, Long Island Pub. Serv. Emps. v. Town Bd. of Huntington*, 31 F.3d 1191, 1194 (2d Cir. 1994), internal quotation marks omitted).

### a.   Plaintiffs Fail to Allege Deprivation of a Protected Property Interest

Plaintiffs' claim that the Local Law "depriv[es] certain City contractors of their private property rights without due process" (FAC ¶155) fails as a matter of law because Plaintiffs do not identify any constitutionally protected interest of which the unnamed contractors have been deprived (*Concerned Home Care Providers, Inc. v. Cuomo*, 783 F.3d 77, 91-92 (2d Cir. 2015) (affirming dismissal of due process claim where plaintiff failed to plead deprivation of a protected property interest)).

While an existing contract may constitute a property interest in some (limited) circumstances, the Local Law does not apply to contracts that were in place before its effective date. Specifically, the Local Law states that it "shall not apply to awards or renewals of city service contracts prior to [its effective date]." Local Law 87 of 2021 § 2(a). The Rider and the FAQ explain that this means the Local Law does not apply to any contracts (or contract renewals) that had been fully executed, or contracts under which performance had begun, prior to the Local Law's effective date. Kane Decl. Ex. 1 § 6; Ex. 2 Nos. 2-5. Therefore, no preexisting contracts are implicated.

Plaintiffs' various attempts to portray the Local Law as having a "retroactive" application cannot change this fact.[7] First, Plaintiffs allege that "Local Law 87 will, in effect, be

---

[6] A plaintiff may also assert a procedural due process claim based on deprivation of a protected liberty interest, but no such deprivation has been alleged here.

[7] The Court must reject Plaintiffs' allegations to the extent they are specifically contradicted by the Local Law, and/or the FAQs referred to and incorporated into the Complaint. FAC ¶30; *see*

retroactive" because registration of City contracts is often delayed and may not occur until after the contract start date. FAC ¶149. This argument fails because application of the Local Law does not turn on when a contract is registered.[8] The Local Law does not apply to any contract under which performance had begun prior to the Local Law's effective date, regardless of when the contract is registered. Kane Decl. Ex. 2, No. 3 ("Local Law 87 does not apply to contracts for which performance of the services under the contract began prior to November 16, 2021 . . ."). Next, Plaintiffs allege that the Local Law is retroactive because it "reaches 'renewals' of pre-existing contracts" and "[g]enerally, the renewal of a City contract is one-sided." FAC ¶149. But the FAQ specifically state that in these circumstances, renewal cannot be "one-sided." *See* Kane Decl. Ex. 2. No. 4. Rather, in an instance where an initial contract was not covered by the Local Law, but a renewal term would be covered, the City cannot renew the contract unless the contractor agrees to amend the contract to include the LPA Rider in the contract renewal. *Id.* (Q: "If my base contract was signed prior to November 16, 2021 . . . and a renewal term scheduled to begin on or after November 16, 2021 is authorized under such contract, will my contract be renewed if I do not agree to include the terms of the LPA Rider in the renewal contract?"; A: "No . . .")). Last, to the extent Plaintiffs allege that the Local Law applies retroactively to "contractors identified in the City budget as a recipient of 'discretionary funding'" (FAC ¶149) this allegation is also specifically refuted by the FAQ, which explain that the Local Law does not apply to discretionary funding awards where a contractor was notified of the award in writing prior to the Law's effective date (Kane Decl. Ex. 2 No. 2 ("Local Law 87 does not apply to a contract for which a contractor has

---

*Poindexter v. EMI Record Grp. Inc.*, 2012 U.S. Dist. LEXIS 42174, at *2 (S.D.N.Y. Mar. 27, 2012); *Koulkina v. City of N.Y.*, 559 F. Supp. 2d 300, 314 (S.D.N.Y. 2008).

[8] There is no reference to contract registration in the Local Law, the Rider or the FAQs.

been notified in writing prior to November 16, 2021 that such contractor will be receiving a contract")).[9]

To the extent Plaintiffs claim deprivation in connection with anticipated future contracts, such claims fail because a contractor does not have a protected property interest in an anticipated contract. *Eastway Constr. Corp. v. New York*, 762 F.2d 243, 250 (2d Cir. 1985), *superseded by rule on other grounds*; *Preschools of Am. (USA), Inc. v. New York City Dep't of Educ.*, 2018 U.S. Dist. LEXIS 151683, *9 (S.D.N.Y. Sept. 6, 2018).

Plaintiffs' claim that the Local Law "depriv[es] certain City contractors of their private property rights . . . by . . . applying the law to non-City workers" (FAC ¶155) also fails for several reasons. First, the Local Law's attestation requirements are plainly limited to "covered employees": employees that "directly render[s] human services in performance of a city service contract." Admin. Code § 6-145(a). Therefore, the Local Law does not apply to "non-City workers."[10] More fundamentally, since the Local Law applies only to contractors that elect to enter into covered contracts, any alleged deprivation is the result of a voluntary undertaking, and therefore cannot form the basis of a due process claim. *See NYTDA, Inc. v. City of New York*, 2022 U.S. Dist. LEXIS 48715, *27-*33 (E.D.N.Y. Mar. 18, 2022) (dismissing due process claim where alleged deprivations were result of plaintiff's voluntary participation in City program); *Hinesburg Sand & Gravel Co. v. Chittenden Solid Waste Dist.*, 959 F. Supp. 652, 659 (D. Vt. 1997) (dismissing due process claim where alleged deprivation was voluntary expenditure of money).

---

[9] The allegation in the Complaint that the City has made a contrary statement is conclusory and unsupported. FAC ¶149.

[10] The Local Law does not apply to municipal employees, therefore Defendants presume that the reference in the Complaint to "non-City workers" is intended to refer to a contractor's employees who do not perform services in connection with City contracts.

To the extent Plaintiffs claim that their due process rights have been violated because the "the Law is being implemented without the promulgation of rules contemplated in the Statute" (FAC ¶155), that claim also fails because the Local Law authorizes, but does not require, the issuance of Rules. *See Reich v. Valley Nat'l Bank*, 837 F. Supp. 1259, 1290-93 (S.D.N.Y. 1993) (rejecting due process claim based on U.S. Department of Labor's non-issuance of regulations concerning meaning of defined term in statute where statute indicated term should be interpreted ". . . in accordance with regulations promulgated by the Secretary"). Specifically the Local Law provides that "[t]he mayor or the mayor's designee shall promulgate implementing rules and regulations, *as appropriate* and consistent with this section . . .." Admin Code § 6-145(d)(2) (emphasis added). Therefore, Plaintiffs have no property interest in the issuance of such rules. *Reich*, 837 F. Supp. at 1290-93. As the Court explained in *Reich*, "[r]egulations can define the scope of a property interest, but no one can have a property interest in the regulation itself."[11] *Id.* at 1293.

### b.   *Plaintiffs Cannot Establish the Absence of Due Process*

Even if Plaintiffs could assert a deprivation of a protected property interest based on the hypothetical future events alleged in the Complaint—such as a circumstance in which a contractor is unable to comply with the Local Law's requirements as the result of unreasonable

---

[11] To the extent Plaintiffs allege a deprivation based on the allegation that the Local Law "was enacted without a lawful public hearing process" (FAC ¶155) this claim also fails because a legislative act cannot be challenged on procedural due process grounds. "[D]ue process does not require any hearing or participation in 'legislative' decisionmaking other than that afforded by judicial review after rule promulgation." *Interport Pilots Agency v. Sammis*, 14 F.3d 133, 142 (2d Cir. 1994) (quoting *Pickus v. U.S. Board of Parole*, 543 F.2d 240, 244 (D.C. Cir. 1976))); *see Richmond Boro Gun Club v. City of N.Y.*, 97 F.3d 681, 689 (2d Cir. 1996) (holding that "[w]hen the legislature passes a law which affects a general class of persons, those persons have all received procedural due process -- the legislative process" and that "[p]rocedural due process has not been violated in this case because plaintiffs can (and do) challenge the legislative ordinance . . . on the ground that it violates their substantive . . . rights").

conduct by a union — their claims would fail because the Local Law provides for sufficient process, both before and after any penalty could be imposed on a contractor. Specifically, the Local Law requires that "[b]efore issuing an order determination or any other disposition," the contracting agency provide the contractor with notice and an "opportunity to be heard" in an administrative hearing. Admin. Code § 6-145(f)(2). Any resulting order may then be appealed in a proceeding pursuant to N.Y. C.P.L.R. Article 78. Kane Decl. Ex. 3 No.14. These procedures are more than sufficient to satisfy due process. *See Eastway Constr. Corp.*, 762 F.2d at 250 (holding that, even if contractor had property interest in "fair and impartial review of its application," Article 78 proceeding would provide sufficient process to protect that interest).

## 2.  <u>Unconstitutional Vagueness</u>

Plaintiffs' claim that the Local Law is "void for vagueness" (FAC ¶155) also fails. Since the Local Law is not a criminal statute and does not govern constitutionally-protected rights, it is assessed according to a "relaxed vagueness test." *National Shooting Sports Found., Inc. v. James*, 2022 U.S. Dist. LEXIS 93541, *25 (N.D.N.Y. 2022) (quoting *VIP of Berlin, LLC v. Town of Berlin*, 593 F.3d 179, 186 (2d Cir. 2010)); s*ee Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498-99 (1982). Under this relaxed test, mere "uncertainty" is not sufficient to render a law unconstitutionally vague. *Ruiz v. Commissioner of Dep't of Transp.*, 679 F. Supp. 341, 351 (S.D.N.Y. 1988), *aff'd on other grounds*, 858 F.2d 898 (2d Cir. 1988). Rather, to establish unconstitutional vagueness, Plaintiffs must demonstrate that the Local Law is "substantially incomprehensible'" (*id.* (quoting *Exxon Corp. v. Busbee*, 644 F.2d 1030, 1033 (5th Cir. 1981))) and that "no set of circumstances exists under which the Act would be valid" (*N.Y. State Rifle*, 804 F.3d at 265). Plaintiffs' allegations that certain contractors are "confused" (FAC ¶42 (alleging HSC members are "confused and unclear" about the Local Law's effective date) do not meet this standard.

18

## C.     PLAINTIFFS FAIL TO STATE A CLAIM FOR VIOLATION OF THE EQUAL PROTECTION CLAUSE

Plaintiffs' equal protection claim fails because Plaintiffs have not alleged facts that would overcome the presumption of rationality applicable to government classifications that do not distinguish based on suspect classifications or infringe on constitutional rights. *See F.C.C. v. Beach Commc'ns*, 508 U.S. 307, 314-15 (1999); *Progressive Credit Union*, 889 F.3d at 49; *New York City C.L.A.S.H. v. City of N.Y.*, 315 F. Supp. 2d 461, 482 (S.D.N.Y. 2004) (fact that smoking ban "single[d] out" and placed additional burdens on smokers did not establish equal protection violation because no fundamental right or suspect class was implicated).

The distinction drawn by the Local Law—between human services providers that are willing to negotiate, and where possible, enter into an LPA with a labor organization that seeks to represent their covered employees, and human services providers that are not willing to do so— neither employs a suspect classification nor implicates constitutional rights. Distinctions based on union membership or affiliation are not suspect classifications. *Nesmith v. Mount Vernon City Sch. Dist.*, 2013 U.S. Dist. LEXIS 92090, *8 (S.D.N.Y. Jul. 1, 2013); s*ee Charlotte v. Int'l Ass'n of Firefighters*, 426 U.S. 283, 286 (1976) (holding that respondents' status as union members did not accord them special rights and City's differing policies with respect to withholding money from employee paychecks for union dues and for other purposes need only be supported by a rational basis). And, as set forth in Points I(A) and I(B), supra, the Local Law does not implicate constitutional rights.

Therefore, the Local Law is accorded "a strong presumption of validity" and "'must be upheld . . . if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Heller v. Doe*, 509 U.S. 312, 320 (1993) (quoting *Beach Commc'ns*, 508 U.S. at 313); *see City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 440 (1985) (The

"Equal Protection Clause allows . . . wide latitude . . . [w]hen social or economic legislation is at issue"). The legislature need not have "actually articulate[d] at any time the purpose or rationale supporting its classification" (*Nordlinger v. Hahn*, 505 U.S. 1, 15 (1992)) because "it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature" (*Beach Commc'ns*, 508 U.S. at 309).[12]  Likewise, the City need not prove the effectiveness or efficiency of the distinction employed because rational basis review "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *Id.* at 313; *see Beatie v. City of N.Y.*, 123 F.3d 707, 712 (2d Cir. 1997).

Here, the Local Law is supported by the City's interest in ensuring the uninterrupted delivery of social services. *See Johnson v. Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1031 (9th Cir. 2010) (denying equal protection challenge to project labor agreement by non-union apprentices because project labor agreement was "rationally related to the District's legitimate interest in preventing labor disruptions"). Plaintiffs' allegations that the Local Law will not prevent interruption of services or is not the most effective way to prevent interruption of services (FAC, e.g. ¶140) are not sufficient to defeat rational basis (*see J&M Parking Mgmt. v. City of N.Y.*, 1998 U.S. Dist. LEXIS 1881, *8 (S.D.N.Y. Feb. 20, 1998) ("[m]ere speculation that the law may fail to bring about the City's intended purpose or that the City's purpose could have been better addressed in some other way will not provide the Court with grounds to declare [the law] unconstitutional")).

---

[12] *See United States v. O'Brien*, 391 U.S. 367, 383 (1968) (". . . this Court will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive"); *Kwong v. Bloomberg*, 876 F. Supp. 2d 246, 262 (S.D.N.Y. 2012), *aff'd*, 723 F.3d 160 (2d Cir. 2013) (disregarding as irrelevant allegation that basis identified for challenged legislative classification "was not the actual objective").

**D.     PLAINTIFFS FAIL TO STATE A CLAIM FOR VIOLATION OF THE CONTRACTS CLAUSE**

The Contracts Clause provides that "[n]o State shall pass any . . . Law . . . impairing the Obligation of Contracts." U.S. Const., Art. I, § 10. The "threshold inquiry" with respect to a contracts clause claim is whether the challenged law substantially impairs an *existing* contractual relationship. *Energy Reserves Grp. v. Kan. Power & Light Co.*, 459 U.S. 400, 411 (1983) (quoting *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244 (1978)). "[A] contract . . . cannot be impaired by a law in effect at the time the contract was made" because "[l]aws and statutes in existence at the time a contract is executed are considered a part of the contract, as though they were expressly incorporated therein." *Community Hous. Improvement Prog. v. City of New York,* 492 F. Supp. 3d 33, 53 (E.D.N.Y. 2020) (quoting *Harmon v. Markus*, 412 F. App'x 420, 423 (2d Cir. Mar. 8, 2011) and *2 Tudor City Place Assocs. v. 2 Tudor City Tenants Corp*., 924 F.2d 1247, 1254 (2d Cir. 1991)). Therefore, "the Contracts Clause does not 'limit the ability of the government to regulate the terms of *future* contracts.'" *Building & Realty Inst. of Westchester & Putnam Ctys., Inc. v. New York*, 2021 U.S. Dist. LEXIS 174535, *112 (Sep. 14, 2021) (quoting *Traher v. Republic First Bancorp, Inc.*, 432 F. Supp. 3d 533, 539 (E.D.Pa. 2020) (emphasis in original)) (dismissing Contracts Clause challenge to rent regulation law as applied to future leases).

Since, as set forth in Point I(B)(1)(a), *supra*, the Local Law does not apply to contracts that were in place before its effective date, Plaintiffs' contracts clause claim fails, and must be dismissed. *See Hertz Corp. v. City of N.Y.*, 1 F.3d 121, 132 (2d Cir. 1993) (affirming dismissal of contracts clause claim where challenged law did not apply to preexisting contracts).

**E.     PLAINTIFFS FAIL TO STATE A CLAIM FOR VIOLATION OF THE TAKINGS CLAUSE**

The Takings Clause of the Fifth Amendment provides that "no private property [shall] be taken for public use, without just compensation." U.S. Const. Amend. V. To state a claim based on a regulatory (non-physical) taking, Plaintiffs must allege that the mere enactment of the challenged Local Law completely deprived them of "all economically beneficial or productive use" of specific property. *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015 (1992); *see Hertz Corp.*, 1 F.3d at 132 (affirming dismissal of takings claim based on regulation of rental cars because plaintiff could not establish that it had been deprived of all "economically viable" use of its property); *J&M Parking Mgmt.*, 1998 U.S. Dist. LEXIS 1881 at *10-11 (explaining that allegations a law will have negative impact on plaintiff's business prospects are generally not sufficient to establish a taking).

The Complaint sets forth no such allegations. Instead, Plaintiffs allege that the Local Law "violates the Takings Clause by creating a mechanism for the City to retain services provided by HSC members to the City without paying for those services." FAC ¶171. This claim must be rejected because it is wholly speculative, and depends on hypothetical future conduct by unions, as well as the City.[13] *See id.* (alleging that Local Law "permits" a union to "render a contractor in material breach of the contract if the union withholds a signed attestation"); *Sanitation & Recycling Indus. v. City of N.Y.*, 928 F. Supp. 407, 417 (S.D.N.Y. 1996), *aff'd on*

---

[13] Plaintiffs' claim also lacks any basis in the Local Law. The Local Law provides that covered contracts must give the contracting agency authority, in the event of a breach by a contractor, to "pursue any rights or remedies available under the terms of the city service contract or under applicable law, including termination of the contract." Admin. Code § 6-145(e)(2)(c)(iii). Nowhere does the Local Law state that a contractor whose contract is terminated as a result of such a breach will not be paid for any services it had already provided prior to the termination.

*other grounds*, 107 F.3d 985 (dismissing takings clause challenge to local law where allegations concerning economic impact of law were speculative and depended on actions by third parties).

More fundamentally, Plaintiffs' allegations cannot establish a taking because Plaintiffs are under no obligation to enter into a covered contract, and may avoid application of the Local Law entirely by declining to do so. *See Garelick v. Sullivan*, 987 F.2d 913, 916-17 (2d Cir. 1993) (rejecting doctors' takings challenge to Medicare price regulations because doctors were under no obligation to provide services covered by regulation).

**POINT II**

**PLAINTIFFS' PREEMPTION CLAIMS FAIL
AS A MATTER OF LAW**

A.   **NATIONAL LABOR RELATIONS ACT ("NLRA") PREEMPTION**

1.   **Preemption Does Not Apply Because The City is Acting as a Market Participant**

Plaintiff's NLRA preemption claim fails because the City acted as a market participant, and not as regulator, in adopting the Local Law. *See* ECF No. 43; *Bldg. & Constr. Trades Council v. Assoc'd Builders & Contractors*, 507 U.S. 218, 227-29 (1993) ("*Boston Harbor*") (NLRA preemption does not apply where government acts in a proprietary capacity, as a purchaser of services, or "market participant," rather than as a regulator); *Bldg. Indus. Elec. Contractors Ass'n v. City of New York*, 678 F.3d 184, 189n.2 (2d Cir. 2012) ("*BIECA*") (same).

The requirements the Local Law imposes are much less onerous than those upheld in cases such as *Boston Harbor* and *BIECA*.[14] A covered contractor need not enter into a PLA, a CBA, or any other agreement setting terms and conditions of employment, or comply with any

---

[14] PLAs, like those required in *Boston Harbor* and *BIECA*, typically impose onerous conditions, such as recognition of one party as the exclusive bargaining agent for all employees throughout the life of the contract, use of specified dispute resolution methods, and use of "hiring halls" to supply the labor force. *Boston Harbor*, 507 U.S. at 221-22; *BIECA*, 678 F.3d at 186.

preexisting such agreement, to secure (or maintain) a City contract. *See* Kane Decl. Ex. 3 No. 10. Rather, a contractor must merely make good faith efforts to negotiate an LPA with a union seeking to represent its covered employees. And the sole required LPA term is agreement to uninterrupted delivery of services (and refraining from actions that would lead to interruption). Admin. Code § 6-145(a); Kane Decl. Ex. 3 No. 3. As in *Boston Harbor*, any contractor not wishing to accept these terms may refrain from submitting a contract proposal and instead seek business from other purchasers. *See Sprint Spectrum L.P. v. Mills*, 283 F.3d 404, 421 (2d Cir. 2002) (rejecting Telecommunications Act preemption challenge to lease conditions imposed by school district where district acted in proprietary capacity and plaintiff company had the choice to either "agree to the requested condition" or "seek a lease elsewhere from a property owner who does not insist on such a condition").

A labor preemption challenge to a similar LPA requirement was rejected by the Ninth Circuit in *Airline Serv. Providers Ass'n*, 873 F.3d 1074 (9th Cir. 2017), *cert. denied*, 139 S. Ct. 2740 (2019). In that case, Los Angeles added a provision to the license agreement for service providers at its airport requiring providers to enter an LPA "with any employee organization that requests one." *Id.* at 1077. The provision stated that the LPA "must include 'binding and enforceable' provisions that prohibit picketing, boycotting, stopping work, or 'any other economic interference,'" and set forth a dispute resolution process that would be used to generate an LPA, if one was not agreed to within sixty days. *Id.* (quoting license agreement).

In considering whether the City of Los Angeles's actions in adding the provision to the licensing agreement were regulatory, and thus subject to preemption, or proprietary and thus not subject to preemption under the market participant exception, the Ninth Circuit applied the two-factor test first set forth by the Fifth Circuit in *Cardinal Towing & Auto Repair, Inc. v.*

*Bedford*, 180 F.3d 686, 693 (5th Cir. 1999). Under that test, courts consider two questions: (1) "does the challenged action essentially reflect the entity's own interest in its efficient procurement of needed goods and services, as measured by comparison with the typical behavior of private parties in similar circumstances?"; and (2) "does the narrow scope of the challenged action defeat an inference that its primary goal was to encourage a general policy rather than address a specific proprietary problem?" *Healthcare Ass'n of N.Y. State v. Pataki*, 471 F.3d 87, 109 (2d Cir. 2006) (quoting *Cardinal Towing*, 180 F.3d at 693). The Court explained that the provision satisfied the first prong of this test because it reflected the City's effort to "avoid disruption of its business." *Airline Serv. Providers Ass'n*, 873 F.3d at 1080. As the Court explained: "If a private entity operated [the airport], that entity would have a pressing interest in avoiding strikes, picket lines, boycotts, and work stoppages. Those interests are not any less pressing simply because the City rather than a private business operates the airport, and labor peace agreements are one way to protect those interests." *Id.* As to the second prong, the Court explained that this too was satisfied because the provision was directed toward the "specific proprietary problem" of "service disruptions" at the airport, and applied only to services performed at the airport. *Id.* at 1082 (quoting *Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d at 1024).

   Similarly, in this case, the Local Law satisfies the *Cardinal Towing* test because (1) the Local Law, in seeking to avoid interruption in the delivery of contracted services, reflects New York City's "quintessentially proprietary concern" in "getting what it paid for" (*Healthcare Ass'n*, 471 F.3d at 109) and (2) the Local Law has a narrow scope that matches this proprietary interest; it applies only to contractors providing crucial human services pursuant to City contracts (and

certain subcontractors) and its LPA provisions apply only to employees that directly provide those services. [15]

The fact that the Local Law applies to City human services contracts, as opposed to a construction project or commercial, revenue-generating operation, does not place it outside the scope of proprietary action. *See, e.g., Legal Aid Soc'y v. City of N.Y.*, 114 F. Supp. 2d 204, 237-38 (S.D.N.Y. 2000) (holding City's actions with respect to contracts for legal services for indigent criminal defendants were proprietary in nature). Nor does the fact that the Local Law applies to a group of City contracts, rather than to contracts governing a single project or location. *See BIECA*, 678 F.3d at 189 n.2 (rejecting argument that challenged PLA was not sufficiently "narrow" because it covered "many projects spanning several years" and explaining that "'narrow' refers to the range and type of covered conduct, not to the number of covered projects"); *L&M Bus Corp. v. Bd. Of Educ. Of the City Sch. Dist. of N.Y.*, 2018 U.S. Dist. LEXIS 88354, *33 (E.D.N.Y. May 25, 2018).

In *L&M Bus Corp.*, the Court considered an NLRA preemption challenge to terms included in a bid solicitation for school bus contracts. The plaintiff bus contractors argued that the market participant exception did not apply because the solicitation terms would apply to multiple school bus contracts, rather than to one particular job or project. The Court rejected this argument, explaining that the requirement that proprietary action have a "'narrow' scope . . . does not mean that . . . [it] must only relate to one discrete project." *Id.; see also Airline Serv. Providers Ass'n*,

---

[15] Plaintiffs' allegations that the Local Law was politically motivated and that the City's proprietary interests are a pretext (FAC, e.g. ¶¶ 124-129) are not relevant to the preemption analysis. ECF No. 73, 17:10-14 ("the subjective motivation of a state actor is irrelevant to preemption analysis, which, instead, is guided by the objective effects of state action in relation to the federal scheme"; quoting *Legal Aid Soc'y v. City of N.Y.*, 114 F.Supp.2d 204, 237 (S.D.N.Y. 2000)).

873 F.3d at 1084 n.11 (rejecting argument that contract provision was too broad to qualify for market participant exception because it applied to all service providers at airport).

### 2.  Plaintiffs' Allegations Concerning "Spill-Over" Effects Do Not Defeat the Market Participant Exception

Plaintiffs allege that the Local Law should be deemed regulatory, rather than proprietary, because it will have "spill-over effects on non-City contracts." FAC ¶147. These allegations are speculative and based on a misunderstanding of the Local Law's requirements. Specifically, Plaintiffs allege that "the City is leveraging its partial funding of human services projects to force unionization of . . . all of a City contractor's employees". *Id.* But the Local Law plainly does not require unionization of any employees, let alone unionization of employees that are not "covered" by its terms. *See* Kane Decl. Ex. 3 No. 10.

Plaintiffs also allege that the Local Law will have spill-over effects because the contractor-Plaintiffs do not "segregate" all of their employees by contract, and "some," "all," "many" or "most" of their employees who work on City contracts also work on non-City contracts. FAC, e.g. ¶¶ 67, 74, 77, 81, 85, 88. "As a result," the Complaint alleges, the Local Law "requires [these plaintiff contractors] to enter into [LPAs] that cover work that is not funded by the City." *Id.*, e.g, ¶88. This is inaccurate because the Local Law defines the scope of an LPA by reference to the services provided, and not the employees who provide those services. The LPA need only "require[] that the covered employer and the labor organization and its members agree to the uninterrupted delivery of *services to be rendered pursuant to the city service contract* and to refrain from actions intended to or having the effect of interrupting *such services*."[16] Admin. Code § 6-

---

[16] For this reason, the Local Law at issue here is fundamentally different from the ordinance held to be preempted in *Metro. Milwaukee Ass'n of Commerce v. Milwaukee Cty.*, 431 F.3d 277 (7th Cir. 2005). In that case, the ordinance required that LPAs include provisions that were not limited to work performed under county contracts. *Id.* at 279. For example, the ordinance mandated that an LPA include a contractor's agreement not to require *any* of its employees—whether or not such

145(a) (emphasis added). Thus, there is no requirement that any contractor enter into an LPA covering "work that is not funded by the City."[17]

Even assuming that, as Plaintiff-contractors currently operate, there would be no way for them to agree to non-interruption of City-contracted services without compromising their ability to interrupt non-City-contracted services, that circumstance would not be sufficient to establish the type of "profound" external effects that the Second Circuit indicated, in its decision in *BIECA*, 678 F.3d at 189, could be sufficient to establish preemption.[18] In fact, in that case, the Court rejected a very similar claim. In *BIECA*, the plaintiff argued that the challenged project labor agreements were preempted because a union contractor that wanted to work on a covered City project would have to "alter the CBA that governs all of its projects" in order to comply with the requirements of the PLA. 678 F.3d at 189. The Court rejected this argument, holding that this alleged "extracontractual effect" did not trigger preemption because the contractor remained "free to decline work on City PLA projects." *Id.* Thus, any consequence flowing from a contractor's decision to seek work on a PLA project was "entirely self-inflicted." *Id.* Similarly, in this case, a human services provider that is unwilling to agree to non-interruption of City-contracted services because such agreement might impair its ability to interrupt non-City-contracted services, is free to (a) change its staffing models or otherwise reorganize its operations in order to facilitate

---

employees performed work under county contracts—to attend a meeting "intended to influence his or her decision in selecting or not selecting a bargaining representative." *Id.* at 280. Here, a covered contractor need not agree to any such limitation as part of an LPA.

[17] Plaintiffs' speculative claims that spill-over effects could result from a union's attempt to misuse the Local Law (FAC ¶148) are addressed in Point II(A)(3)(b), *infra*.

[18] Notably, the Complaint does not allege that the Law has had such "profound effects," but only that Plaintiffs fear this hypothetical outcome.

separation of City-contracted services and non-City contracted services, or (b) decline to enter into covered City contracts.

*Legal Aid Society*, 114 F. Supp. 2d 204, is also instructive. In that case, the Court considered a claim by the Legal Aid Society and several unions that the City's exclusion of Legal Aid from participating in a request for proposals for legal services after a strike by its employees, and awarding of contracts to other providers, was preempted by the NLRA. The unions argued that the City's actions did not fall within the scope of the market participant exception because the City's actions "affect the entire market for the provision of legal services to indigent criminal defendants." 114 F. Supp. 2d at 238-39. The Court rejected this argument, holding that "the fact that the City's proprietary actions in this case may have incidental effects on labor in the legal services market" was not sufficient to defeat application of the market participant exception. *Id.* at 239; *see George v. Richter*, 2014 U.S. Dist. LEXIS 58047, *36 (S.D.N.Y. Apr. 25, 2014) (holding that City's actions with respect to child-care contracts were covered by market participant exception and stating that incidental impacts on labor in child care market "does not, by itself, alter this outcome") (quoting *Legal Aid Soc'y* at 239).

### 3.  Plaintiffs' Preemption Claims Are Based on Misunderstandings of the Local Law

Plaintiffs' allegations in support of preemption reflect a number of misunderstandings concerning both the nature of an LPA and the requirements of the Local Law.[19]

---

[19] For example: (1) a contractor that is already party to a qualifying CBA with respect to covered employees need not submit an attestation in connection with a notice received from another union or negotiate an LPA with such other union as to the same employees (Kane Decl. Ex. 1 § 4(E), Ex. 3 Nos. 11, 12), therefore an existing bargaining relationship would not interfere with the contractor's ability to submit an attestation (*see* FAC ¶143); (2) for purposes of the attestation requirement, notice to a contractor by a union must be made in writing to the contractor's CEO or to its designated business or email address (Kane Decl. Ex. 1 § 4(C)), therefore a union's approach to employees without the contractor's knowledge would not trigger the requirement (*see* FAC ¶143); and (3) the Local Law does not require that an LPA be approved by the contractor's employees or require the certification of a union as bargaining representative of such employees

####     a.   *The Local Law Does Not "Strip" Anyone of Rights Protected by the NLRA*

Contrary to Plaintiffs' contention (FAC ¶146), the Local Law does not undermine the rights of Plaintiffs' employees because it does not require any employees to join a union or to become parties to an LPA or any other agreement. The Local Law provides that an LPA must "require[] that the covered employer and the labor organization and its members agree to the uninterrupted delivery of services . . .." Admin. Code § 6-145(a). It does not purport to require an employer to enter into an agreement on behalf of its employees or otherwise "require[] contracting employers to interfere with their employees' potential labor actions." FAC ¶161. Nor does it give a union authority to bind non-member employees to an LPA or other agreement. By definition, a union seeking to represent covered employees does not yet represent them, and therefore does not have the authority to enter an agreement on their behalf, let alone to waive any of their rights. *See Image Carrier Corp. v. Beame*, 567 F.2d 1197, 1202 (2d Cir. 1977) (resolution requiring that City use unionized printing shops did not infringe on employees' rights to not join a union and was not preempted).

As to Plaintiffs, the Local Law does not "strip[]" them of any rights they hold as employers under the NLRA (FAC ¶161) because any surrender of rights resulting from an employer's entry into an LPA is voluntary. The only required term of an LPA under the Local Law is non-interruption of services. Admin. Code § 6-145(a). Therefore a contractor need not agree to maintain neutrality towards unionization, or accept any other limitations on speech or other activities that are sometimes features of LPAs in order to comply with the Local Law (*see e.g.*,

---

(*see* Kane Decl. Ex. 3 No. 10), therefore an employee vote against unionization would not prevent a contractor from entering into an LPA (*see* FAC ¶143). To the extent Plaintiffs fear that a union leader would "instigate . . . a mandatory City Comptroller investigation" under the Local Law by submitting a false "verified complaint in writing" (FAC ¶142), such individual would be subject to penalty as they would for any false sworn statement (*see* NY Penal Law § 210 *et seq.*).

SANTA ANNA, CAL. Code of Ordinances sec. 40-2).[20] More importantly, since the Local Law applies only to providers that enter into certain types of contracts with the City (and certain of their subcontractors), any contractor that wishes to unconditionally retain all weapons available to it as an employer to oppose unionization of its employees (including actions intended to or having the effect of interrupting the provision of the services it is contracted to provide) may do so by declining to seek covered City contracts or subcontracts. *See Boston Harbor*, 507 U.S. at 231.

### b.   *The Local Law Does Not Afford Unions Additional Rights*

Plaintiffs' allegations that the Local Law "gives certain powers to unions that they do not possess under the NLRA" (FAC ¶161) appears to turn on the claim that the Local Law gives unions "effective veto power over City contracts" (*id.* ¶141). This claim is based on a misunderstanding of the Local Law. Plaintiffs speculatively allege, for example, that "a union leader" could "withhold the union's signature on an attestation as leverage to force an employer to allow the union to begin organizing" a contractor's non-City workforce. *Id.* Notably, the FAC does not allege that anything like this has actually occurred. Moreover, this speculative allegation is controverted by the Local Law and related guidance, which explain that if a contractor does not submit a required attestation, the contracting agency must take into account a contractor's good faith efforts to comply before imposing any negative consequence for noncompliance. Kane Decl. Ex. 1 § 4(D), Ex. 3 No. 13. Further, any determination of breach by a contractor based on such noncompliance would be subject to administrative review. Admin. Code § 6-145(f). Therefore, if despite good faith efforts, a contractor cannot submit an attestation because a union attempted to "misuse" the Local Law (FAC ¶141) or because a union failed to negotiate in good faith towards

---

[20] To the extent a contractor does agree to include a neutrality provision in an LPA, such a provision would not run afoul of the NLRA. *Int'l Union UAW v. Dana Corp.*, 278 F.3d 548, 558 (6th Cir 2002).

an LPA, including by not responding to communications (*id.* ¶143), such contractor would not suffer negative consequences. Thus, the alleged "veto power" is illusory.[21]

### c.  The Local Law Does Not Interfere With The NLRB's Jurisdiction

Contrary to Plaintiffs' assertion, the Local Law does not "deprive the NLRB of its exclusive jurisdiction" to determine whether, when, and how union organizing will take place. FAC ¶141. The Local Law does not purport to regulate any aspect of union organizing. As set forth above, it does not regulate at all, but merely imposes requirements on certain City contractors. But even as to those contractors, the Local Law does not dictate any aspect of labor relations. It merely requires that contractors seek to enter into LPAs providing for non-interruption of City-contracted services.

Plaintiffs' allegations that the Local Law "require[s] the creation of a database of NLRA violations" (FAC ¶131) is also inconsistent with the Local Law's actual terms. First, the disclosure requirement set forth under the Local Law is not targeted to NLRA violations, but rather encompasses violations of any law "regulating labor relations," whether federal, state or local. Admin. Code § 6-145(c)(1)(c). Second, the Local Law does not require the creation of a new database. Under preexisting law, prospective contractors must disclose information about their business history, including contract sanctions, criminal investigations and administrative findings. Admin. Code § 6-116.2(b)(i)(11-20), (v); 9 RCNY § 2-08(e). The City maintains an internal

---

[21] Even if the Local Law served to give unions an additional "bargaining chip" as to covered contractors, that fact would not be sufficient to establish preemption. *Airline Service Providers Ass'n*, 873 F.3d at 1082 (rejecting preemption challenge to LPA requirement despite employer association's argument that it gave unions a "powerful bargaining chip" to obtain benefits from employers in exchange for an LPA); *see also N. Ill. Chapter of Assoc'd Builders & Contractors, Inc. v. Lavin*, 431 F.3d 1004, 1007 (7th Cir. 2005) (explaining, in rejecting preemption challenge to grant conditioning funding on entry into project labor agreement, that fact that "lure of a subsidy may lead firms at the margin to reach labor agreements that they would not otherwise have signed" did not transform requirement into regulation).

database that contains information about vendor history, and City agencies are required to consider any such history before determining that a contractor is sufficiently "responsible" to receive a contract. *See* Admin. Code § 6-116.2(b); 9 RCNY § 2-08(g)(1) (contracting officer must consider contractor history, including " determinations of violations of employment-related federal, state, or local law or executive order . . .").

The Local Law merely builds on this existing process by (a) requiring that covered contractors that have already made disclosures certify that their disclosures are up to date as of the beginning of each new contract (or renewal), (b) extending the disclosure requirements to certain contractors who do not meet the monetary threshold for the general disclosure requirements, and (c) providing for inclusion of any additional information disclosed as a result to be included in the existing database. *See* Kane Decl. Ex. 3 No. 7. These requirements are consistent with, and not preempted by, the NLRA.[22] *See Wisconsin Dept. of Indus., Labor & Human Rels. v. Gould, Inc.,*

---

[22] These requirements are fundamentally different from those held preempted in *Wisconsin Dept. of Indus., Labor & Human Rels. v. Gould, Inc.*, 475 U.S. 282, 286 (1986). *Gould* involved a sanction mechanism under which "firms adjudged to have violated the NLRA three times are automatically deprived of the opportunity to compete for the State's business" — whether or not those violations had any connection to work performed under state contracts. Here, the Local Law does not impose any penalty, let alone an automatic penalty, based on past violations disclosed. Even if a disclosure of a previous NLRA violation might make a prospective contractor less likely to receive a contract award in a particular situation, that hardly means that NLRA punishment or deterrence was at work, since a particular disclosed violation may well bear on competence to perform a contract. *Cf. A. Grgas Contr. Co. v Mercklowitz*, 168 A.D.2d 678, 679 (2d Dep't 1990) (where president of contractor previously pled guilty to paying gratuity to EPA inspector, Board of Education could reasonably doubt contractor's ability to safely handle project relating to schoolchildren).

The only remedies provided for under the Local Law would result from violation of the Local Law itself, and these remedies are flexible and discretionary rather than automatic. Kane Decl. Ex. 1 § 4(D) (in assessing contractor's compliance, contracting agency must take into account "the contractor's good faith efforts to comply," including its "documented efforts to negotiate with labor organizations," as well as "any relevant conduct of a labor organization"); Admin. Code § 6-145 ("In assessing an appropriate remedy" for violation of the Local Law, contracting agency must consider circumstances, including contractor's good faith and "gravity of the violation"). The Local Law's provisions regarding investigation are also limited to noncompliance with the Local

475 U.S. 282, 291 (1986) ("We do not say that state purchasing decisions may never be influenced

by labor considerations, any more than the NLRA prevents state regulatory power from ever

touching on matters of industrial relations").

**B.**     **LABOR MANAGEMENT RELATIONS ACT ("LMRA") PREEMPTION**

          Plaintiffs contend that the Local Law "conflicts with the LMRA" because an LPA

is a "thing of value," and the LMRA prohibits employers from providing things of value to unions

seeking to represent their employees. FAC ¶162 (quoting 29 U.S.C. § 186(a)). This claim fails for

several reasons.

          First, Plaintiffs cannot invoke a preemption doctrine with respect to this theory.

*Hosp. Emps. Div. of Local 79 v. Mercy-Memorial Hosp. Corp.*, 862 F.2d 606, 608 (6th Cir. 1988),

*vacated on other grounds*, 492 U.S. 914 (1989) (preemption theories cannot be invoked as to

Section 302 with respect to contentions such as those raised here). Hence, Plaintiffs are relegated

to a private cause of action only. But no such private cause of action is available under the cited

provision. Following Justice Breyer's expression of doubt about a Section 186 private cause of

action in light of recent Supreme Court jurisprudence greatly tightening standards for finding

private causes of action (*Unite Here Local 355 v. Mulhall*, 571 U.S. 83, 85-86 (2013)) (Breyer, J.,

dissenting)), many courts have undertaken precisely such an analysis and have held that no private

---

Law itself, and do not result in any automatic penalties or other consequences. Admin. Code § 6-145(f)(1) (providing that comptroller "shall conduct an investigation" in response to suspicion or complaint of noncompliance with Law and "report the results of such investigation to the contracting agency," and that "contracting agency may, where appropriate, issue an order, determination or other disposition," such as corrective disclosure, agreement to cure violation or termination of contract).

Even if the disclosure requirement were preempted, that would not be a basis for invalidating the entire Law. The disclosure requirement could easily be severed from the remainder of the Local Law (*see* Admin. Code § 1-105), and there is a clear implication that the City Council would want the remainder of the Law to persist (*F. T. B. Corp. v Goodman*, 300 N.Y. 140, 148 (1949)).

cause of action lies under contemporary standards. As the Supreme Court has explained, in the past, "the Court assumed it to be a proper judicial function to 'provide such remedies as are necessary to make effective' a statute's purpose ... [and] ... as a routine matter ... would imply causes of action not explicit in the statutory text itself." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017) (citation omitted). Under the Court's contemporary and "far more cautious course," "the 'determinative' question is one of statutory intent" and "[i]f the statute itself does not 'displa[y] an intent to create 'a private remedy,' then 'a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.'" *Id.* at 1855-56 (citations omitted). Courts rejecting a private right of action under a modern analysis include the Sixth Circuit Court of Appeals as well as courts in other Circuits.[23]  E.g., *Ohlendorf v. United Food & Com. Workers Int'l Union, Local 876*, 883 F.3d 636, 641 (6th Cir 2018); *Donegal Servs., LLC v. Int'l Union of Operating Engrs., Local 150*, 2020 U.S Dist. LEXIS 187518, at *10-11 (N.D. Ill. Oct. 8, 2020); *Volvo Group N. Am., LLC v. Int'l Union UAW*, 451 F. Supp. 3d 570, 576 (W.D. Va. 2020). Harvard Law School Professor Jack Goldsmith agrees. http://onlabor.org/2013/12/11/further-thoughts-on-the-implications-of-the-mulhall-dismissal/.

Second, assuming a private right of action, contrary to Plaintiffs' prior assertion in briefing (ECF No. 40 pp.14-15), the 2-to-1 holding in *Mulhall v. Unite Here Local 355*, 667 F.3d 1211, 1214-16 (11th Cir. 2012), *cert. dismissed*, 571 U.S. 83 (2013), if accepted, would not invalidate the Local Law. *Mulhall* dealt with an agreement in which the employer agreed, inter alia, to union workplace access, provision of employee information, and neutrality as to

---

[23] It appears that the Second Circuit has not undertaken any modern-era analysis of whether a private right of action lies under this provision, though a decision from the prior era acknowledged such a right of action. *Int'l Longshoremen's Ass'n v. Seatrain Lines, Inc.*, 326 F.2d 916, 919 (2d Cir 1964).

unionization, and the union agreed to spend money on a casino ballot initiative benefitting the employer. *Id.* at 1213. Noting that the primary purposes of the LMRA are (1) to prevent employers from tampering with the loyalty of union officials to the union members and (2) to prevent union officials from extorting tribute from employers, the Court held that agreements between employers and unions providing for neutrality or cooperation, or setting ground rules for organizing, are not unlawful as such, and cross a red line only if part of a scheme to corrupt a union or extort a benefit from an employer. *Id.* at 1214-15. As discussed above, the Local Law at issue here does not require that an LPA include any particular terms beyond non-interruption of services; therefore, it does not even approach the red line alluded to in *Mulhall*.[24]

Third, in any event, even *Mulhall*'s limited recognition of the possibility that an LPA could constitute a "thing of value" under the LMRA is dubious. Significantly, both the Third and Fourth Circuits have rendered contrary rulings. *Adcock v. Freightliner LLC*, 550 F.3d 369 (2008), *cert. denied*, 558 U.S. 932 (2009); *Hotel Emps. & Restaurant Emps. Union, Local 57 v. Sage Hospitality Res., LLC*, 390 F.3d 206, 218-19 (3d Cir. 2004), *cert. denied*, 544 U.S. 1010 (2005). Further, Plaintiffs' prior assertion that the Supreme Court's post-oral argument dismissal of certiorari in *Mulhall* — based on mootness and standing concerns — shows endorsement of the Circuit majority opinion (ECF No. 40 p.15) is no more valid than an argument that denial of certiorari in *Adcock* and *Sage Hospitality* shows endorsement of those two Circuit decisions. A

---

[24] *Mulhall* sustained a cause of action only because of the egregious facts suggesting bribery and union disloyalty, where the union spent $100,000 to promote a gambling initiative favorable to the employer in return for organizing concessions. Significantly, in *Prime Healthcare Servs. v. Servs. Emps. Int'l Union*, 97 F. Supp. 3d 1169, 1188-89 (S.D. Cal. 2015), the Court held that, even if *Mulhall* controls, a less flagrant LPA, in which the employer agrees to such terms as employee access and positive statements about the union and the union agrees to such terms as not disparaging the employer or pursuing anti-hospital legislation, would not violate Section 302.

dismissal of certiorari carries no precedential value. *See Hughes Tool Co. v. TWA*, 409 U.S. 363, 365n.1 (1973).

Finally, caselaw under LMRA Section 301(a), adopted simultaneously with Section 302, strongly suggests that common LPA terms — such as terms relating to neutrality or employee information — do not violate Section 302 and, a fortiori, that the present Local Law requiring merely non-interruption effects no such violation. Section 301(a) gives federal courts jurisdiction over "suits for violation of contract between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a). "Contracts" enforceable under it are not limited to CBAs with incumbent unions and include agreements "between employers and labor organizations significant to the maintenance of labor peace *between* them" — even where the contracting union is not the employees' current bargaining representative. *Retail Clerks Int'l Ass'n v. Lion Dry Goods, Inc.*, 369 U.S. 17, 28 (1962). The contract enforced there granted unions access to employer premises, reinstated strikers, established employment terms, and limited the parties' right to demand an NLRB election. *Id.* at 20n.4. But, if any agreement between an employer and a union that does not represent the employees that provides for union access to premises or the like is an impermissible "thing of value," then the *Retail Clerks* case and many cases like it (e.g., *N.Y. HHS Union v. NYU Hosp. Ctr.*, 343 F.3d 117, 119 (2d Cir. 2003)) enforce illegal labor agreements — something a court cannot do (e.g., *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 77 (1982)).

### POINT III

### PLAINTIFFS FAIL TO STATE A CLAIM FOR VIOLATION OF STATE OR LOCAL LAW

Plaintiffs' fifth claim, which consists only of the statement that "Plaintiff also invokes New York State and City law with respect to the infirmities, described above, which also

render Local Law 87 unlawful" (FAC ¶175) must be dismissed as it fails to even specify the state

and/or local laws allegedly violated by the Local Law. *See*, e.g., *Cocca-Rau v. Standard Ins. Co.*,

2020 U.S. Dist. LEXIS 131429, at \*24 (S.D.N.Y. July 22, 2020) (holding plaintiff's claim "runs

afoul of federal pleading rules" where it "does not identify with specificity any state law allegedly

violated by Defendant").

<u>**CONCLUSION**</u>

For the reasons set forth above, Defendants' motion to dismiss the Amended

Complaint should be granted in its entirety.

Dated:     New York, New York
           September 30, 2022

                                    HON. SYLVIA O. HINDS-RADIX
                                    Corporation Counsel
                                      of the City of New York
                                    *Attorney for Defendants City of New York,*
                                      *Eric Adams and Brad Lander*
                                      100 Church Street
                                      New York, New York 10007
                                      (212) 356-2538
                                      rakane@law.nyc.gov
                                      madler@law.nyc.gov


                                      <u>*/s Rachel B. Kane*</u>
                                    By:  Rachel B. Kane
                                        Michael S. Adler
                                      Assistant Corporation Counsel