UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HUMAN SERVICES COUNCIL OF NEW YORK, BRONXWORKS, INC., CATHOLIC CHARITIES, DIOCESE OF BROOKLYN, THE CHILDREN'S AID SOCIETY, THE CHILDREN'S VILLAGE, THE FEDCAP GROUP INC., FORESTDALE INC., GREENWICH HOUSE, INC., MOSHOLU MONTEFIORE COMMUNITY CENTER, INC., PUBLIC HEALTH SOLUTIONS, and RISEBORO COMMUNITY PARTNERSHIP INC., <br><br> Plaintiffs, <br><br> v. <br><br> THE CITY OF NEW YORK, ERIC ADAMS in his official capacity as the Mayor of the City of New York, and BRAD LANDER in his official capacity as the Comptroller of the City of New York, <br><br> Defendants, <br><br> and <br><br> DISTRICT COUNCIL 37, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO, <br><br> Intervenor-Defendant. | Case No. 1:21-cv-11149-PGG <br><br> Judge Paul G. Gardephe <br><br> **DEFENDANT-INTERVENOR'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

    I.      Plaintiffs cannot rely on policymakers' subjective motivations
           or a mischaracterization of the City's implementation of the law
           to save their claims. ............................................................................................ 1

         A.     The subjective motivations of City policymakers are irrelevant. ..................... 1

         B.     Plaintiffs misrepresent the effects and contents of the City's
                binding interpretations of the contractual language
                implementing Local Law 87. .......................................................................... 3

    II.     Neither Plaintiffs' idiosyncratic business structure nor their
           altruism permit them to evade the City's proprietary interest
           in the continuity of the services it purchases. ............................................... 4

    III.    Local Law 87 is narrowly tailored to the City's proprietary interest. ............................ 8

    IV.    Plaintiffs have forfeited many of their claims by failing to defend them. .................... 9

CONCLUSION .................................................................................................................. 10

CERTIFICATE OF SERVICE ......................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Airline Serv. Providers Ass'n v. L.A. World Airports*,
   873 F.3d 1074 (9th Cir. 2017) ...........................................................................7

*Amable v. New Sch.*,
   551 F. Supp. 3d 299 (S.D.N.Y. 2021)..................................................................3

*Bldg. & Constr. Trades Council v. Assoc. Builders & Contractors*,
   507 U.S. 218 (1993)..........................................................................................2, 6

*Bldg. & Constr. Trades Dep't, AFL-CIO v. Allbaugh*,
   295 F.3d 28 (D.C. Cir. 2002)...............................................................................8

*Bldg. Indus. Elec. Contractors Ass'n v. City of New York*,
   678 F.3d 184 (2d Cir. 2012)........................................................................ passim

*Chamber of Com. v. Brown*,
   554 U.S. 60 (2008).................................................................................................2

*Entergy Nuclear Vermont Yankee, LLC v. Shumlin*,
   733 F.3d 393 (2d Cir. 2013)..................................................................................2

*Healthcare Ass'n of New York State, Inc. v. Pataki*,
   471 F.3d 87 (2d Cir. 2006)................................................................................7, 9

*Ill. Chapter of Associated Builders & Contractors, Inc. v. Lavin*,
   431 F.3d 1004 (7th Cir. 2005) ..............................................................................5

*Johnson v. Rancho Santiago Cmty. Coll. Dist.*,
   623 F.3d 1011 (9th Cir. 2010) ..............................................................................9

*Legal Aid Soc'y v. City of New York*,
   114 F. Supp. 2d 204 (S.D.N.Y. 2000)................................................................7, 8

*Metro. Milwaukee Ass'n of Com. v. Milwaukee Cnty.*,
   431 F.3d 277 (7th Cir. 2005) ............................................................................4, 5

*Mich. Bldg. & Constr. Trades Council v. Snyder*,
   729 F.3d 572 (6th Cir. 2013) .......................................................................5, 8, 9

*Mulhall v. Unite HERE Local 355*,
   667 F.3d 1211 (11th Cir. 2012) .......................................................................9, 10

*N.Y. Bankers Ass'n v. City of New York*,
   119 F. Supp. 3d 158 (S.D.N.Y. 2015)...................................................................2

*In re N.Y. Corr. Officers & Police Benevolent Ass'n, Inc.*,
 70 A.D.3d 240 (N.Y. App. Div. 2009) ...................................................................10

*Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*,
 461 U.S. 190 (1983) ..................................................................................................2

*Se. La. Bldg. & Constr. Trades Council AFL-CIO v. Louisiana*,
 107 F. Supp. 3d 584 (E.D. La. 2015) ........................................................................9

*Va. Uranium, Inc. v. Warren*,
 139 S. Ct. 1894 (2019) ..............................................................................................2

*Wis. Dep't of Indus., Lab. & Hum. Rels. v. Gould*,
 475 U.S. 282 (1986) ..................................................................................................2

**Statutes**

N.Y.C. Admin. Code § 6-145 ............................................................................................5

N.Y. Fin. Law § 160 ........................................................................................................10

N.Y. Fin. Law § 163 ........................................................................................................10

N.Y. Gen. Mun. Law § 103 .............................................................................................10

**Other Authorities**

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal
 Texts* 112 (2012) .......................................................................................................4

Defendant-Intervenor District Council 37, American Federation of State, County and Municipal Employees, AFL-CIO ("DC 37") files this reply in support of its motion to dismiss Plaintiffs' amended complaint. In its initial memorandum supporting that motion ("MTD"), DC 37 supplemented the City of New York's ("City") thorough memorandum ("City MTD") by explaining that Plaintiffs failed to state a claim that federal labor law preempted Local Law 87 of 2021 ("Local Law 87"), among other defects. Plaintiffs respond to few of those points in their 55-page opposition ("Opp."). Instead, their filing is riddled with mischaracterizations of the City's implementation of the law and wrongly emphasizes policymakers' subjective motivations. Correcting those errors rebuts much of Plaintiffs' opposition, as we show in Part I. We then focus on other missteps that doom the rest of their submission.

I.  **Plaintiffs cannot rely on policymakers' subjective motivations or a mischaracterization of the City's implementation of the law to save their claims.**

Plaintiffs' opposition rests on a pair of errors repeated like a chorus over and over. Once those errors are corrected, most of Plaintiffs' concerns fall away.

A. **The subjective motivations of City policymakers are irrelevant.**

Our prior submissions emphasized that "[t]he subjective motivations of City officials do not bear on" the lawfulness of Local Law 87. MTD 18; *see also* DC 37's Reply Supp. Mot. Intervene 3-5 (ECF No. 36). As this Court explained, under binding precedent, "'federal preemption doctrine evaluates what legislation does, not why legislators voted for it or what political coalition led to its enactment.'" Hrg. Tr. 17:16-18 (quoting *Bldg. Indus. Elec. Contractors Ass'n v. City of New York* ("*BIECA*"), 678 F.3d 184, 191 (2d Cir. 2012)).

Plaintiffs ignore this Court's instructions, repeatedly asserting that extrinsic evidence— especially a stray shard of legislative history—demonstrates the unlawful motivations supposedly animating Local Law 87. Opp. 7-8, 24, 28-30, 34-36, 39, 41-42. But they fail to

1

mention, let alone distinguish, the precedent that this Court—and our prior submissions—emphasized. Instead, they rely on a case concluding that, under the Court's binding interpretation of the Atomic Energy Act ("AEA") in *Pacific Gas & Electric Co. v. State Energy Resources Conservation & Development Commission*, 461 U.S. 190 (1983), preemption under that specific Act sometimes turns on the legislative history of challenged state statutes. *Entergy Nuclear Vermont Yankee, LLC v. Shumlin*, 733 F.3d 393, 418-19 (2d Cir. 2013), *cited in* Opp. 30.

A plurality of the Supreme Court, however, has recently cast doubt on *Pacific Gas* as "hav[ing] made more of state legislative purposes than the terms of the AEA allow," criticizing that "questionable judicial gloss" for inviting courts to "undertak[e] potential misadventures into hidden state legislative intentions." *Va. Uranium, Inc. v. Warren*, 139 S. Ct. 1894, 1904-06 (2019) (lead plurality op. of Gorsuch, J.); *see also id*. at 1914 n.2 (Ginsburg, J., concurring). Recourse to legislative history violates generally applicable preemption principles, which ordinarily "depend[s] on *what* the State did, not *why* it did it. Indeed, th[e Supreme] Court has analyzed most every other modern field preemption doctrine dispute in this way." *Id.* at 1905 (emphases original). That ordinarily applicable analysis is precisely how the Courts of Appeals, including the Second Circuit, apply the market-participant doctrine under federal labor law. Plaintiffs' invitation to stray from that precedent should—again—be rejected.[1]

---

[1] Plaintiffs' remaining authorities are even further afield. *N.Y. Bankers Ass'n v. City of New York*, 119 F. Supp. 3d 158, 190 (S.D.N.Y. 2015), applied *Entergy* beyond the AEA without recognizing the limited scope of that decision, let alone justifying its extension. As we previously explained, *Wisconsin Department of Industry, Labor and Human Relations v. Gould*, 475 U.S. 282 (1986), predates the Court's recognition of the market-participant doctrine under federal labor law in *Boston Harbor* and, in any case, turned on a penalty provision with no parallel in Local Law 87, MTD 4-5, 15-16, notwithstanding Plaintiffs' continued mischaracterization of it, Opp. 27. In *Chamber of Commerce v. Brown*, the Court did not evaluate legislative history or other extrinsic evidence to apply the market-participant doctrine; it held application of that doctrine "beyond dispute" because "the statute's preamble candidly acknowledges" that it was enacted in "the furtherance of a labor policy." 554 U.S. 60, 70 (2008).

### B. Plaintiffs misrepresent the effects and contents of the City's binding interpretations of the contractual language implementing Local Law 87.

**i.** We previously explained that Plaintiffs were wrong to claim, in their Complaint, that the City's published interpretations of the contractual rider it uses to implement Local Law 87 was "not binding upon the City." Am. Compl. ¶ 33. "[W]hen the government publishes its interpretation of the provision of an agreement before executing the contract," we pointed out with reference to substantial authority, "it will be bound by that interpretation." MTD 14.

Plaintiffs offer no response. They simply repeat, without support, that the City's interpretations lack "the force of law." Opp. 11, 25, 49 n.13. That *ipse dixit* does not respond to our prior submission that, even if the City's interpretations were not generally applicable, they would nonetheless bind the City in its dealings with contractors, like Plaintiffs, who sign the rider, thereby "safeguard[ing] [Plaintiffs] from the speculative mischief that they" use to attack Local Law 87. MTD 14. Plaintiffs fail to acknowledge that point, let alone rebut it. And by failing to defend their Complaint's claim that the City's interpretations are not binding upon it, Plaintiffs have abandoned it. *See, e.g.*, *Amable v. New Sch.*, 551 F. Supp. 3d 299, 317 (S.D.N.Y. 2021) (holding factual theories supporting breach-of-contract claim abandoned for failure to respond to arguments attacking those theories).

**ii.** Elsewhere, Plaintiffs claim first that the City's interpretations have no legal effect, but then use those interpretations to show Local Law 87's supposedly unlawful effect. This Court need not linger over the inconsistences in Plaintiffs' arguments because their characterizations bear no resemblance to what the City has said. On Plaintiffs' account, the City has stated that contractors' failure "to accede to a union leader's demands for" access to the workplace, employee contact information, or alternative recognition procedures "will be found in breach of [their] contracts." Opp. 14; *see also id.* at 18, 20, 25-26, 34, 35, 36, 39.

In fact, the City has taken the very opposite position. We quote in full the text that Plaintiffs purport to paraphrase:

> LPAs *may* also include other terms agreed upon by the parties, such as terms relating to: (i) alternate procedures related to recognizing the labor organization for bargaining purposes, (ii) public statements, (iii) workplace access, (iv) the provision of employee contact information; and (v) a process for the productive resolution of disputes. *These topics are illustrative and are not intended to specify or limit the terms that may be included in an LPA* in order to achieve the goals of ensuring the uninterrupted delivery of services and avoidance of actions intended to or having the effect of interrupting such services.

Kane Decl. Ex. 3 (FAQ No. B(3)) (emphases added). According to Plaintiffs, that paragraph enumerates provisions that *must* be included in an LPA, even though the City has said merely that they "may" be included. "The traditional, commonly repeated rule is that . . . *may* is permissive." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 112 (2012). If there were any further doubt—and there is none—it is vanquished by the express statement that the enumerated provisions "are *not* intended to specify . . . the terms that *may* be included in an LPA." FAQ No. B(3) (emphases added).

II. **Neither Plaintiffs' idiosyncratic business structure nor their altruism permit them to evade the City's proprietary interest in the continuity of the services it purchases.**

**A.** Plaintiffs insist that Labor Law 87 is preempted because they happen to "have many employees who devote a portion of their time to projects that are partially funded by the City, while devoting the rest of their time to projects that are not funded by the City at all." Opp. 16. That is the sort of "spillover effect," they claim, that the Seventh Circuit condemned in *Metro. Milwaukee Association of Commerce v. Milwaukee County*, 431 F.3d 277 (7th Cir. 2005).

As we showed, however, *Metro. Milwaukee* turned on the "*language* of the ordinance" it invalidated, not the idiosyncratic business structure of the contractors subject to it. MTD 10 (quoting *Metro. Milwaukee*, 431 F.3d at 279). That language mandated working conditions of

4

employees "who may never work on a County contract," even though the ordinance expressly distinguished employees who work on public projects from those who did not. *Id.* By its express terms, then, the law required agreements that were "not limited to the provision of services to the County." *Metro. Milwaukee*, 431 F.3d at 280. The Seventh Circuit has thus interpreted *Metro. Milwaukee* as holding "that a purchasing rule *prescribing* how employers must handle labor relations in all aspects of their business is preempted by federal labor law." *Ill. Chap. of Assoc. Bldrs. & Contr., Inc. v. Lavin*, 431 F.3d 1004, 1007 (7th Cir. 2005) (emphasis added). Local Law 87, by contrast, prescribes *nothing* about how an employer may discharge work unrelated to the City's contracts. Instead, it merely requires an agreement—or negotiations toward an agreement—"safeguarding 'the uninterrupted delivery of services *to be rendered pursuant to the city service contract*,' not any other work that those employees may perform." MTD 10 (quoting N.Y.C. Admin. Code § 6-145(a) (emphasis added)). Plaintiffs offer no response to that point.[2]

Indeed, the market-participant doctrine does not turn on the idiosyncratic internal organization of the government's trading partners, as the City previously explained. City MTD 28. In *BIECA*, the Second Circuit considered a claim that the City's contracting requirements would require an employer group to "alter the CBA that governs all of its projects," which allegedly constituted an unlawful "extracontractual effect . . . tantamount to regulation," 678 F.3d at 188-89, much like the "spillover effect" that Plaintiffs assert here, Opp. 17. The Second Circuit rejected that argument, reasoning that the supposedly unlawful effect was "entirely self-

---

[2] Even if Local Law 87 extended to work partially funded by other public or private entities—which it does not, for the reasons stated in text—that would not be enough to preempt it. As the Sixth Circuit explained in the context of a Michigan statute that limited the use of project labor agreements even for construction partially financed by private or federal sources, the state has a proprietary interest in ensuring that even those funds are used "efficiently," thereby "allow[ing] for more to be done with limited funding and increas[ing] the likelihood that more projects will be funded." *Mich. Bldg. & Constr. Trades Council v. Snyder*, 729 F.3d 572, 578 (6th Cir. 2013).

5

inflicted" by the employer's internal organization rather than a regulatory mandate. 678 F.3d at 189. Any other rule would encourage the government's trading partners to adopt idiosyncratic business practices to evade the government's efforts to safeguard its proprietary interests, distorting the market for government services. That distortion would disserve the market-participant doctrine, which permits the government to "exemplif[y]" the "market forces" structured by federal labor law, rather than altering them through regulation. *Bldg. & Constr. Trades Council v. Assoc. Builders & Contractors* ("*Boston Harbor*"), 507 U.S. 218, 233 (1993).

Plaintiffs purport to distinguish *BIECA*—and, for that matter, *Boston Harbor*—on the ground that those cases "involved a construction industry Project Labor Agreement . . . , which is expressly protected by the NLRA." Opp. 20; *see also id.* at 31. But restricting the market-participant doctrine to that narrow context would depart from the uniform holdings of the federal appellate courts and this Court's past decisions, as both we and the City pointed out. MTD 8 & n.4 (collecting appellate authority); City MTD 26 (collecting further authority). Nor do Plaintiffs rebut our showing that the *reasoning* of *Boston Harbor* indicates that the market-participant doctrine applies beyond the construction context. MTD 7-8. *Boston Harbor* and *BIECA* referenced the NLRA's authorization of project labor agreements merely to explain that the particular and far-reaching requirements of those agreements are consistent with "the incentives . . . that operate elsewhere in the construction industry" by force of the NLRA. *Boston Harbor*, 507 U.S. at 231-32; *see also BIECA*, 678 F.3d at 190.

Here, there is no need for such a robust inquiry to credit the incentives that animate the far more modest requirement of Local Law 87. As this Court has explained, "common sense alone suggests that potentially disruptive labor disputes would prompt private customers" to ensure continuity of the services they purchase, *Legal Aid Soc'y v. City of New York*, 114 F.

Supp. 2d 204, 236, 238 (S.D.N.Y. 2000), just as the City has here. Put differently, "the City is attempting to avoid disruption of its business" by pursuing its "pressing interest in avoiding strikes, picket lines, boycotts, and work stoppages," an interest that is "not any less pressing simply because the City rather than a private business" has purchased Plaintiffs' services. *Airline Serv. Providers Ass'n v. L.A. World Airports*, 873 F.3d 1074, 1080 (9th Cir. 2017).[3]

**B.** Plaintiffs seek to sidestep that commonsense conclusion by devoting pages of their opposition to celebrating their own altruism. Because Plaintiffs claim indifference to the market, they suggest that the market-participant doctrine has no application to their "noncapitalistic arrangement" with the City, which they characterize as "quite different from ordinary commercial arrangements." Opp. 6-7, 22-23.

Nonetheless, Plaintiffs *sell* their services to the City, which *purchases* those services on behalf of its neediest residents. Plaintiffs may be motivated by altruism, but that hardly lessens the City's interest in "getting what it paid for, [which] is a quintessentially proprietary concern and one that any private party would care about as well." *Healthcare Ass'n of New York State, Inc. v. Pataki*, 471 F.3d 87, 109 (2d Cir. 2006). If anything, the importance of those purchased services to needy City residents heightens the City's interest in avoiding disruptions.

In *Legal Aid Society*, for example, this Court applied the market-participant doctrine to the City's decision to purchase indigent legal services from organizations less likely to suffer from labor-related disruptions than its longtime provider. 114 F. Supp. 2d at 236, 238. Although the City had a "constitutional duty . . . to provide such services" to the indigent—who, by

---

[3] Plaintiffs are likewise wrong that this Court cannot, on a motion to dismiss, reject their "spillover" argument. Opp. 20. In *BIECA*, the Second Circuit rejected a parallel argument in that procedural posture. 678 F.3d at 187, 193. And courts routinely conclude that the government is acting like private parties on such a motion. *See, e.g.*, *id.* at 190; *Airline Serv.*, 873 F.3d at 1080.

7

definition, could not pay for those services—this Court held that the City was acting as a proprietor. *Id.* at 239. The market-participant doctrine, it explained, turns neither on "the nature of the market in which the state participates, nor [on] the reasons for the state's participation, but rather [on] the nature of the relevant activities undertaken by the state within that market." *Id.* Here, as in *Legal Aid*, the City is purchasing services on behalf of its neediest residents. And here, as in *Legal Aid*, the City may seek to avoid labor-related service disruptions when it purchases those services, even if its trading partners do not seek a profit.

**III.  Local Law 87 is narrowly tailored to the City's proprietary interest.**

Plaintiffs emphasize features of Local Law 87 that they believe establish its regulatory character. Opp. 24-28. They are mistaken.

Plaintiffs first claim that, because Local Law 87 applies citywide to all human services contracts, it must be regulatory. Opp. 26, 32. That claim disregards the Second Circuit's admonition that requiring a government contract requirement to be "'narrow' or 'tailored' in this context" merely means that it cannot focus "on unrelated matters to which the state might not even be a party. . . . Thus, 'narrow' refers to the range and type of covered conduct, not to the number of covered projects. A contract does not become preempted simply because it covers a number of projects rather than a single one." *BIECA*, 678 F.3d at 189 n.2.[4]

Plaintiffs next nitpick Local Law 87 as being at once too strict and too permissive in ways that, they claim, are bad business. On their account, the ordinance's bureaucratic and enforcement procedures are overly onerous, Opp. 25, 26-27, even as they criticize the City for refraining from pursuing its interests by contractually imposing severe financial penalties for

---

[4] *Accord, e.g., Snyder*, 729 F.3d at 578-81; *Bldg. & Constr. Trades Dep't, AFL-CIO v. Allbaugh*, 295 F.3d 28, 35 (D.C. Cir. 2002).

nonprofits whose services are interrupted by labor disruptions, Opp. 28. Perhaps the City might have pursued its proprietary interest via different mechanisms. But that criticism "bears only on whether the [City] made a good business decision, not on whether it was pursuing regulatory, as opposed to proprietary, goals." *Johnson v. Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1025 (9th Cir. 2010). Indeed, both the Second Circuit and the Ninth Circuit have rejected the view, implicit in Plaintiffs' argument, that Congress sought "to use [federal labor law] preemption to impose economic rationality on state contracting decisions."[5]

Finally, Plaintiffs are wrong that the market-participant doctrine applies only to "contract negotiations" and never to "legislation," which they characterize as necessarily regulatory. Opp. 23-24, 31. But legislators, no less than administrators, may pursue the government's proprietary interests when they establish public-contracting rules. Indeed, federal courts, including the Second Circuit, have applied the market-participant doctrine to such legislation.[6]

**IV.   Plaintiffs have forfeited many of their claims by failing to defend them.**

As noted, Plaintiffs abandon allegations that they fail to defend from attack on a motion to dismiss. *See supra* p. 3. Here, Plaintiffs fail to defend fully their allegation that the Labor Management Relations Act preempts Local Law 87 under the Eleventh Circuit's decision *Mulhall v. Unite HERE Local 355*, 667 F.3d 1211 (11th Cir. 2012). Plaintiffs do not acknowledge, let alone rebut, either (1) the City's argument that adopting *Mulhall* would not only bring this Court into conflict with the law of the Third and Fourth Circuits, but also into tension with the Supreme Court's and Second Circuit's prior enforcement of labor peace

---

[5] *Id.* at 1027; *BIECA*, 678 F.3d at 191-92 ("It cannot be correct that to qualify for the [market-participant] exception, the City must show that its contracts are maximally efficient.").

[6] *See, e.g.*, *Snyder*, 729 F.3d at 574, 582; *Healthcare Ass'n*, 471 F.3d at 109; *Se. La. Bldg. & Constr. Trades Council AFL-CIO v. Louisiana*, 107 F. Supp. 3d 584, 609 (E.D. La. 2015).

9

agreements, or (2) our argument that, even if *Mulhall* were applicable, it would bar only employer bribes, not government-mandated agreements. City MTD 37; MTD 3-4.

Likewise, Plaintiffs' lengthy opposition offers no defense of its claims that Local Law 87 violates the Due Process Clause, the Equal Protection Clause, or the Takings Clause—notwithstanding the City's persuasive attack on those claims, to say nothing of our adoption and extension of those attacks. City MTD 13-20, 22-23; MTD 19-21.

As to Plaintiffs' state-law claim, we question whether a party may wait until their opponent moves to dismiss to articulate the basis of a claim. *Compare* Am. Compl. ¶ 175 (invoking unspecified "New York State and City law"), *with* Opp. 55 (citing a specific case and unspecified "State procurement laws"). In any event, Plaintiffs' state-law claim is baseless. *In re New York State Correctional Officers & Police Benevolent Association, Inc.*, on which Plaintiffs rely, merely held unenforceable a contractual provision conditioning modification of workers' insurance coverage on *approval* of a joint labor-management committee, reasoning it granted that committee "veto power" inconsistent with a specific state procurement provision. 70 A.D.3d 240, 243-45 (N.Y. App. Div. 2009). Here, Local Law 87 grants unions no such veto power over City contracting, as we have explained at length. *See* MTD 11-15.[7]

## CONCLUSION

The Amended Complaint should be dismissed in its entirety.

Dated: December 6, 2022

/s/ Richard F. Griffin, Jr.
Caitlin Kekacs (Bar No. 4999926)

---

[7] In any event, the pertinent state procurement statute, N.Y. Fin. Law § 163, applies only to state agencies, not the City. *See also* N.Y. Fin. Law § 160(9) (defining "state agency"). The City's procurement, by contrast, is governed by a separate provision, N.Y. Gen. Mun. Law § 103, which incorporates by reference only select portions of N.Y. Fin. Law § 163. That oversight highlights the inadequacy of Plaintiffs' belated presentation of their state-law claim.

Richard F. Griffin, Jr.*
Leon Dayan*
Joshua A. Segal*
BREDHOFF & KAISER, P.L.L.C.
805 15th Street NW, Suite 1000
Washington, DC 20005
Phone: (202) 842-2600
Fax: (202) 842-1888
ckekacs@bredhoff.com
rgriffin@bredhoff.com
ldayan@bredhoff.com
jsegal@bredhoff.com

Robin I. Roach (RR 1809)
General Counsel
District Council 37, AFSCME, AFL-CIO
125 Barclay Street
New York, NY 10007
(212) 815-1450
rroach@dc37.net

*Counsel for Intervenor District Council 37, AFCSME, AFL-CIO*


*Admitted *Pro Hac Vice*

# **CERTIFICATE OF SERVICE**

I certify that on December 6, 2022, I served via CM/ECF a copy of Defendant-Intervenor's Memorandum of Law in Support of Its Motion to Dismiss the First Amended Complaint on the following counsel of record:

Claude M. Millman
Caroline Rule
Usman Mohammad
Seven World Trade Center, 34th Floor
New York, NY 10007
cmillman@kflaw.com
umohammad@kflaw.com
crule@kflaw.com
*Attorneys for Plaintiff Human Services*
*Council of New York*

Rachel B. Kane
Michael S. Adler
100 Church Street
New York, NY 10007
rakane@law.nyc.gov
madler@law.nyc.gov
*Attorneys for Defendants the City of New York,*
*Mayor Eric Adams, and Comptroller Brad Lander*

Dated: December 6, 2022 /s/ Richard F. Griffin, Jr.
Richard F. Griffin, Jr.