UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HUMAN SERVICES COUNCIL OF NEW YORK,
BRONXWORKS, INC., CATHOLIC CHARITIES, DIOCESE
OF BROOKLYN, THE CHILDREN'S AID SOCIETY, THE
CHILDREN'S VILLAGE, THE FEDCAP GROUP INC.,
FORESTDALE, INC., GREENWICH HOUSE, INC.,
MOSHOLU MONTEFIORE COMMUNITY CENTER, INC.,
PUBLIC HEALTH SOLUTIONS, RISEBORO COMMUNITY
PARTNERSHIP, INC.,

                                                    Plaintiffs,

                            - against -

THE CITY OF NEW YORK, ERIC ADAMS in his official
capacity as the Mayor of the City of New York, and BRAD
LANDER in his official capacity as the Comptroller of the City
of New York,

                                                    Defendants

                               and

DISTRICT COUNCIL 37, AMERICAN FEDERATION OF
STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-
CIO,

                                    Intervenor-Defendant.

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

*HON. SYLVIA O. HINDS-RADIX*
*Corporation Counsel of the City of New York*
*Attorney for Defendants City of New York, Eric*
*Adams and Brad Lander*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel:    Rachel B. Kane*
*                     Michael S. Adler*
*                     Tel: (212) 356-2538*

## TABLE OF CONTENTS

                                                                                    **Page**

TABLE OF AUTHORITIES ....................................................................................... iii

I.     PLAINTIFFS FAIL TO STATE A CLAIM OF
       NLRA PREEMPTION ...................................................................................1

       A.    The City is Acting as a Market Participant ......................................... 1

             1.    The Local Law Reflects the City's
                   Proprietary Interest in Getting the Human
                   Services it Pays For .....................................................1

             2.    The Scope of the Local Law Matches the
                   City's Proprietary Interest ............................................4

       B.    Plaintiffs' Various Attempts to Defeat
             Application of the Market Participant Exception
             Fail as a Matter of Law ...................................................................... 5

             1.    The Law Does Not Limit Employer
                   Expression or Employee Rights, Or
                   Interfere with the NLRB's Jurisdiction ......................5

             2.    The Local Law Is Not Regulatory ...............................7

             3.    The Local Law Does Not Have the Type
                   of Profound Spillover Effects That Defeat
                   Application of the Market Participant
                   Exception ....................................................................8

             4.    The Market Participant Exception
                   Applies to Legislative Acts ......................................10

             5.    Application of the Market Participant
                   Exception Turns on the Objective Effects
                   of the Challenged Conduct .......................................11

II.    PLAINTIFFS FAIL TO STATE A CLAIM OF
       LMRA PREEMPTION ............................................................................ 12

III.   PLAINTIFFS FAIL TO STATE A CLAIM FOR
       VIOLATION OF THE FIRST AMENDMENT ...................................... 13

IV.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER
       THE CONTRACTS CLAUSE ............................................................... 17

V.     PLAINTIFFS FAIL TO STATE A CLAIM FOR
VIOLATION OF NEW YORK STATE LAW ........................................ 19

CONCLUSION ........................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Pages**

*Airline Services Providers Ass'n v. Los Angeles World Airports*,
    873 F.3d 1074 (9th Cir. 2017) ................................................................................3, 4

*Airlines for Am. v. Cnty. of San Francisco*,
    2022 U.S. Dist. LEXIS 63466 (N.D. Cal. Apr. 5, 2022) .........................................8

*Allied Constr. Indus. v. City of Cincinnati*,
    879 F.3d 215 (6th Cir. 2018) ....................................................................................10

*Barnhart v. Sigmon Coal Co., Inc.*,
    534 U.S. 438 (2002) ...................................................................................................6

*Bldg. & Const. Trades Council of Metro. Dist. v. Associated Builders &*
    *Contractors of Massachusetts/Rhode Island, Inc.*,
    507 U.S. 218 (1993) ("*Boston Harbor*") .................................................................2

*Bldg. Indus. Elec. Contractors Ass'n v. City of New York*,
    678 F.3d 184 (2d Cir. 2012) ("*BIECA*") ...............................................2, 4, 5, 9, 11

*Brooks v. Raemisch*,
    717 F. App'x 766 (10th Cir. 2017) ..........................................................................16

*Camps Newfound/Owatonna v. Town of Harrison*,
    520 U.S. 564 (1997)....................................................................................................3

*Cardinal Towing & Auto Repair, Inc. v. City of Bedford*,
    180 F.3d 686 (5th Cir.1999) ..............................................................................3, 4, 10

*Carey v. Wolnitzek*,
    2012 U.S. Dist. LEXIS 142830 (E.D. Ky. Sep. 29, 2012)......................................14

*CF & I Steel v. Bay Area Rapid Transit District*,
    2000 WL 1375277 (N.D. Cal. 2000) .........................................................................8

*Chamber of Com. of U.S. v. Brown*,
    554 U.S. 60 (2008)....................................................................................................11

*Chamber of Com. of U.S. v. Reich*,
    74 F.3d 1322 (D.C. Cir. 1996) ...................................................................................7

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002)................................................................................ 17-18

**Cases**                                                                                           **Pages**

*Community Hous. Improvement Prog. v. City of New York,*
    492 F. Supp. 3d 33 (E.D.N.Y. 2020) ...................................................................19

*Donohue v. Mangano,*
    886 F. Supp. 2d 126 (E.D.N.Y. 2012) ................................................................18

*Donohue v. Paterson,*
    715 F. Supp. 2d 306 (N.D.N.Y. 2010) ...............................................................18

*Entergy Nuclear Vermont Yankee, LLC v. Shumlin,*
    733 F.3d 393 (2d Cir. 2013) ..............................................................................11

*George v. Richter,*
    2014 U.S. Dist. LEXIS 58047 (S.D.N.Y. Apr. 25, 2014) ...................................2, 4

*Healthcare Ass'n of New York State, Inc. v. Pataki,*
    471 F.3d 87 (2d Cir. 2006) ............................................................................3, 4, 9

*Hotel Emps. & Restaurant Emps. Union, Local 57 v. Sage Hospitality Res., LLC,*
    390 F.3d 206 (3d Cir. 2004) ..............................................................................10

*IMS Health Inc. v. Sorrell,*
    631 F. Supp. 2d 434 (D. Vt. 2009), *rev'd,* 630 F.3d 263 (2d Cir. 2010) ...............15

*Janus v. AFSCME, Council 31,*
    138 S. Ct. 2448 (2018) ......................................................................................17

*Johnson v. Rancho Santiago Cmty. Coll. Dist.,*
    623 F.3d 1011 (9th Cir. 2010) ...........................................................................11

*L&M Bus Corp. v. Bd. of Educ. of the City Sch. Dist. of N.Y.,*
    2018 U.S. Dist. LEXIS 88354 (E.D.N.Y. May 25, 2018) .....................................2

*Legal Aid Soc'y v. City of N.Y.,*
    114 F. Supp. 2d 204 (S.D.N.Y. 2000) .................................................................2

*Linden Lumber Div., Summer & Co. v. N.L.R.B.,*
    419 U.S. 301 (1974) ...........................................................................................7

*Metro. Milwaukee Ass'n of Com. v. Milwaukee County,*
    431 F.3d 277 (7th Cir. 2005) ..............................................................................9

*Metropolitan Taxicab Bd. of Trade v. City of New York,*
    2008 WL 4866021 (S.D.N.Y. Oct. 31, 2008) .....................................................10

**Cases**                                                                                                          **Pages**

*Mitchell v. Annucci,*
    2022 U.S. Dist. LEXIS 155124 (N.D.N.Y. Aug. 29, 2022)...................................................16

*New Energy Co. of Indiana v. Limbach,*
    486 U.S. 269 (1988).........................................................................................................3

*New York Bankers Ass'n v. City of New York,*
    19 F. Supp. 3d 158 (S.D.N.Y. 2015)..............................................................................10, 11

*In re New York State Corr. Officers & Police Benev. Ass'n, Inc.,*
    70 A.D.3d 240 (3d Dept. 2009) ....................................................................................19, 20

*Ratzlaf v. United States,*
    510 U.S. 135 (1994) ...........................................................................................................6

*Sullivan v. Nassau Cty. Interim Finance Authority,*
    959 F.3d 54 (2d Cir. 2020).................................................................................................18

*Van–Go Transp. Co., Inc. v. New York City Bd. of Educ.,*
    53 F. Supp. 2d 278 (E.D.N.Y. 1999) ..................................................................................11

*Wash. State Grange v. Wash. State Repub. Party,*
    552 U.S. 442 (2008)...................................................................................................... 15-16

*White v. Massachusetts Council of Const. Emps., Inc.,*
    460 U.S. 204 (1983)........................................................................................................ 8-9

*Wisconsin Dep't of Indus., Lab. & Hum. Rels. v. Gould Inc.,*
    475 U.S. 282 (1986)................................................................................................... 8, 11-12

*United States v. Tabacca,*
    924 F.2d 906 (9th Cir. 1991) ..............................................................................................6

**Statutes**

N.Y.C. Admin. Code § 6-145 .................................................................................*ibid*.

The arguments presented in Plaintiffs' opposition papers depend to a large degree on mischaracterizations of the Local Law and its contents. Plaintiffs turn time and time again to their own views of the Law's purpose and their own speculation as to how the Law could be misused or misapplied, disregarding the City's guidance as to how the Law will be applied. And Plaintiffs incorrectly rely on characterizations of the Law, such as in the legislative history, as a basis to read into the Law requirements that it does not contain. These machinations cannot save Plaintiffs' claims, which remain deficient as a matter of law.

## I.    PLAINTIFFS FAIL TO STATE A CLAIM OF NLRA PREEMPTION

### A.    The City is Acting as a Market Participant

As more fully set forth in the City Defendants' moving brief, the Local Law is not preempted because it falls within the market participant exception to preemption. City Defendants' Moving Brief pp. 23-34 ("City Mem."). Plaintiffs' various attempts to defeat the application of this exception are based on a misunderstanding of the case law and the contents of the Local Law, and must be rejected.

#### 1.    The Local Law Reflects the City's Proprietary Interest in Getting the Human Services it Pays For

Plaintiffs' various arguments as to why the City's use of contracts to purchase human services from contractors does not constitute participation in a market for purposes of the market participant exception reflect a misunderstanding of the Law.[1] Contrary to Plaintiffs'

---

[1] In an effort to avoid application of the market participant exception, Plaintiffs now go so far as to question whether their relationships with the City are contractual at all. P. Mem. p.3 (describing City contracts for human services as "partial financial support of social services"). But the facts that many Plaintiffs provided human services before receiving City contracts and continue to provide such services outside the context of City contracts (P. Mem. p.4) does not alter the contractual nature of their relationships with the City (Compl., ECF No. 1, ¶12 ("HSC's member employers include contractors who provide care or treatment services under contracts with New York City")).

assertions (P. Mem. p.31), application of the market participant exception is not limited to the construction industry. *L&M Bus Corp. v. Bd. of Educ. of the City Sch. Dist. of N.Y.*, 2018 U.S. Dist. LEXIS 88354, *37-*38 (E.D.N.Y. May 25, 2018) (noting that neither *Bldg. & Const. Trades Council of Metro. Dist. v. Associated Builders & Contractors of Massachusetts/Rhode Island, Inc.*, 507 U.S. 218 (1993) ("*Boston Harbor*") nor *Bldg. Indus. Elec. Contractors Ass'n v. City of New York*, 678 F.3d 184 (2d Cir. 2012) ("*BIECA*") indicates it is limited to project labor agreements in the construction industry).

Nor is it limited to participation in profit-motivated sectors, or to situations in which a government contract includes only commercial terms that are common in private agreements.[2] In fact, courts in the Second Circuit have previously applied the market participant exception to action taken by New York City with respect to City human service contracts like those covered by the Local Law, such as contracts for child care and legal services for indigent New Yorkers.[3] *George v. Richter*, 2014 U.S. Dist. LEXIS 58047 (S.D.N.Y. Apr. 25, 2014) (applying market participant exception to actions taken in connection with City contracts with not-for-profit social service agencies for day care and early childhood eductation services); *Legal Aid Soc'y v. City of N.Y.*, 114 F. Supp. 2d 204 (S.D.N.Y. 2000) (applying exception to actions taken in connection with City contracts with Legal Society for legal services for indigent New Yorkers); N.Y.C. Admin. Code § 6-145(a) (listing City contracts for day care and legal services as among types of covered

---

[2] Indeed, market participant cases typically arise in the context of non-negotiable bid specifications or contracts that presumably impose terms favorable to the government. E.g., *Boston Harbor*, 507 U.S. 218; *L&M Bus Corp.*, 2018 U.S. Dist. LEXIS 88354.

[3] To the extent Plaintiffs contend that the City is acting outside the scope of the exception because it is purchasing services on behalf of City residents, and not the City itself (P. Mem. pp. 27-28 (arguing that City is only "at most an indirect beneficiary" of labor peace in performance of its contracts), this argument fails for the same reasons. The City has the same proprietary interest in getting what it pays for no matter who is the recipient of the services purchased.

contracts). Therefore, neither the fact that the human services contractors subject to the Law are primarily not-for-profit providers with altruistic missions (P. Mem. pp. 4, 22)[4] nor the fact that the City's human services contracts contain terms that are "different from ordinary commercial contracts" (*id.* p.23) defeats application of the exception.

The caselaw does not support Plaintiffs' interpretation of the first prong of the *Cardinal Towing* test, which asks whether "the challenged action essentially reflect[s] the entity's own interest in its efficient procurement of needed goods and services, as measured by comparison with the typical behavior of private parties in similar circumstances" (*Cardinal Towing & Auto Repair, Inc. v. City of Bedford,* 180 F.3d 686, 693 (5th Cir.1999)), as requiring identification of specific analogues[5] (*cf. Healthcare Ass'n of New York State, Inc. v. Pataki*, 471 F.3d 87, 109 (2d Cir. 2006) (explaining that State's articulated proprietary concern was "one that *any* private party *would* care about"; emphasis added); *see Airline Services Providers Ass'n v. Los Angeles World Airports*, 873 F.3d 1074, 1080 (9th Cir. 2017) (stating test as whether government is acting "as one might expect of a private business in the same situation")). Therefore, application of this test to this case does not require fact finding. Indeed, application of the market participant exception

---

[4] The cases Plaintiffs rely on for this proposition do not support their argument. Indeed, in *Camps Newfound/Owatonna v. Town of Harrison*, 520 U.S. 564, 573, n.18 (1997), the Supreme Court specifically rejected the argument that the operation of a summer camp should be treated as non-commercial because the camp did not operate for profit, noting among other facts, the existence of a "$5 billion nonprofit market in child day care services [that] competes with an $11 billion for-profit industry." And the holding in *New Energy Co. of Indiana v. Limbach*, 486 U.S. 269 (1988)—that "assessment and computation of taxes" is "a primeval government activity" that is not covered by the market participant exception—is irrelevant since the Local Law has nothing to do with taxes.

[5] Notably, Plaintiffs do not offer any support for the proposition that private entities do not typically contract for services like those covered here (P. Mem. pp.22)—such as child care, medical services, employment training, legal services or recreation programs (N.Y.C. Admin. Code § 6-145(a)).

is routinely determined as a matter of law.[6] *See, e.g., BIECA*, 678 F.3d 184 (affirming dismissal of NLRA preemption claim under Fed. R. Civ. P. 12(b)(6) based on application of market participant exception); *George v. Richter*, 2014 U.S. Dist. LEXIS 58047 (S.D.N.Y. Apr. 25, 2014) (granting motion to dismiss claim of NLRA preemption based on application of market participant exception).

The relevant question here is: *If* the human services being purchased by the City *were* being purchased by a private entity, *would* that entity have a pressing interest in avoiding interruption of those services? *See Airline Serv. Providers Ass'n*, 873 F.3d at 1080 (concluding that "[i]f a private entity operated [the airport], that entity would have a pressing interest in avoiding strikes, picket lines, boycotts, and work stoppages"). The answer is yes. *See Healthcare Ass'n*, 471 F.3d at 109 (2d Cir. 2006) (describing State's interest in "getting what it paid for" as "quintessentially proprietary concern and one that any party would care about as well").

## 2. The Scope of the Local Law Matches the City's Proprietary Interest

Plaintiffs' arguments that the Local Law does not satisfy the second prong of the *Cardinal Towing* test because the substantive requirements of the Law are not "narrowly tailored" to the City's proprietary interest (P. Mem. p.24) also reflect a misunderstanding of the test. The second prong of the test, which asks whether "the narrow scope of the challenged action defeat[s] an inference that its primary goal was to encourage a general policy rather than address a specific proprietary problem" (*Cardinal Towing,* 180 F.3d at 693), is focused on the scope of the Law's application, and not its contents (*BIECA*, 678 F.3d at n.2 (explaining that "narrow" in this context

---

[6] The factual issues that precluded full resolution of the claims as a matter of law in *Healthcare Ass'n*, 471 F.3d at 109, related to the source and ownership of the monies subject to the challenged use restriction. There is no analogous factual issue presented here as the Local Law does not restrict the use of funds from any source.

"refers to the range and type of covered conduct")). Specifically, when the scope of the government's conduct is broader than its own participation in the market, the exception does not apply. But when, as here, the scope is limited to the government's own proprietary transactions, the second prong of the test is satisfied. *See id.* And contrary to Plaintiffs' assertions, action taken as a market participant need not be limited to a single project or contract. *Id.* (rejecting argument that challenged PLA was not sufficiently "narrow" because it covered "many projects spanning several years").[7]

**B.** **Plaintiffs' Various Attempts to Defeat Application of the Market Participant Exception Fail as a Matter of Law**

      1.    The Law Does Not Limit Employer Expression or Employee Rights, Or Interfere with the NLRB's Jurisdiction

Despite Plaintiffs' efforts to read an employer neutrality requirement and other "pro-unionization provisions" into the Local Law (P. Mem., e.g. p.34 (stating, incorrectly, that the Local Law "requires employers to remain neutral during union organizing drives")), the Local Law

---

[7] *BIECA* also makes clear that a court evaluating a preemption challenge should not second-guess the wisdom of the government's selected method for achieving its proprietary purpose. 678 F.3d at 191-192. But, even if there was a need to demonstrate that the contents of the Law were "narrowly tailored" to achieve the City's proprietary goals, the Local Law would satisfy this test because, contrary to Plaintiffs' assertions, it does not impose any requirements that have "nothing to do with ensuring uninterrupted services to the City." P. Mem. p.24. The requirements that covered contractors submit attestations documenting their compliance with the Law's requirements and that the Comptroller investigate claims of noncompliance are plainly part of an integrated system of encouraging compliance with the Law's primary requirement that covered contractors seek to negotiate LPAs with unions that request them. Specifically, the contractors' submission of an attestation of compliance, signed by a union where applicable, gives the contracting agency affirmative assurance that the contractor is in compliance. And the directive for the Comptroller to investigate complaints of noncompliance gives the contracting agency assurance that any violations will be addressed. The requirement that contractors disclose information about past labor law violations, which as explained in the City Defendants' moving papers, merely supplements an existing requirement (City Mem. p.7), is also related to the City's proprietary interest. This is so because it ensures that contracting agencies have up-to-date information that could be relevant in assessing whether a contractor's services to the City are likely to be interrupted by labor disputes in the future.

contains no such requirements (N.Y.C. Admin. Code § 6-145). To the extent that the legislative history reflects a misunderstanding or misstatement of the contents of the Law by one or more legislators (P. Mem. pp. 29, 35, 41 (quoting legislative history)), such a statement does not alter the contents of the actual Law, which plainly requires only that an LPA "require[e] that the covered employer and the labor organization and its members agree to the uninterrupted delivery of services to be rendered pursuant to the city service contract and to refrain from actions intended to or having the effect of interrupting such services" (N.Y.C. Admin. Code § 6-145(a)). *See Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 456-57 (2002) (explaining that "[f]loor statements" from a bill's sponsors "cannot amend the clear and unambiguous language of a statute"); *Ratzlaf v. United States*, 510 U.S. 135, 147-48 (1994) (disregarding legislative history inconsistent with text of statute and explaining that "we do not resort to legislative history to cloud a statutory text that is clear"); *United States v. Tabacca*, 924 F.2d 906, 911 (9th Cir. 1991) ("remarks of a legislator, even those of the sponsoring legislator, will not override the plain meaning of a statute"). Here, the language of the Local Law is quite clear.

And contrary to Plaintiffs' claims (P. Mem. pp. 34, 35, 36), the FAQs do not reflect an "expectation" on the part of the City (let alone a requirement) that LPAs will include particular other provisions, let alone "indicate that nonprofits are expected to capitulate" to demands for such provisions.[8] The FAQs merely state that LPAs "may also include other terms agreed upon by the parties," and provide a few non-exclusive examples of topics that could be addressed in any

---

[8] Plaintiffs' treatment of the FAQs is inconsistent as they rely on them to support some arguments (P. Mem., e.g., pp. 14, 20, 34), but dismiss them as irrelevant to others (*id.*, e.g., p.11, n.13, p.25).

additional, optional provisions.[9] Kane Decl. Ex. 3 No. 3 ("These topics are illustrative and are not intended to specify or limit the terms that may be included in an LPA . . .").

## 2. The Local Law Is Not Regulatory

Plaintiffs' claim that the Local Law is regulatory because it "announces a blanket labor relations policy preventing a broad category of human services providers from exercising their rights under the NLRA" (P. Mem. p.26) is unfounded. The requirements imposed by the Local Law apply only to City contractors that elect to enter into certain types of City contracts, and only impose requirements related to those contracts. Therefore, the Law does not enact the type of broad policy found to be preempted in cases on which Plaintiffs rely. For example, the executive order held preempted in *Chamber of Com. of U.S. v. Reich*, 74 F.3d 1322 (D.C. Cir. 1996), applied to all federal government contracts, of any type, in excess of $100,000.

Plaintiffs next claim that the Local Law is regulatory because it contains an enforcement mechanism. P. Mem. pp. 26-27. This argument fails because the remedies provided for under the Local Law apply only to violations of the Local Law itself—by contractors who have (1) elected to enter into covered contracts with the City that include a Rider explicitly incorporating the Law's requirements into the contract, and (2) submitted certifications, as part of the award process, stating that they agree to comply with the Law's requirements. N.Y.C. Admin. Code § 6-145 (c)(1)(b)); Kane Decl. Ex. 1 (Rider) § 2(A) ("contractor shall comply with all applicable requirements" of Local Law and "[s]uch requirements constitute a material term of this contract"); *see* Compl., ECF. No. 1 ¶46. Therefore, they are "functionally equivalent to ordinary commercial

---

[9] For this reason, *Linden Lumber Div., Summer & Co. v. N.L.R.B.*, 419 U.S. 301, 302 (1974), which involved the question of whether an employer can be required to recognize a union selected through means other than an election, is inapposite.

contract terms wherein contract parties may agree to certain consequences for breach."[10] *Airlines*

*for Am. v. Cnty. of San Francisco*, 2022 U.S. Dist. LEXIS 63466, *28 (N.D. Cal. Apr. 5, 2022)

(applying market participant exception to ordinance that provided for remedies including

collection of penalties, cancelation of contract and debarment).

<blockquote>

3. <u>The Local Law Does Not Have the Type of Profound Spillover Effects That Defeat Application of the Market Participant Exception</u>

</blockquote>

Plaintiffs argue that the Local Law has impermissible spillover effects because it

"reaches employees" who work on both City-contracted work and non-City contracted work and

whose salaries are therefore not fully "funded" by the City. P. Mem. pp. 15-17. But, the Law does

not purport to impose any obligations or limitations on *any employees* of a contractor, whether

they work on City contracts or not. Therefore, no employee is "fully subject to the Law." *Id.* p.17.

Nor does the Law require a contractor to recognize a union as the representative of any employee,

bargain with any union, or enter into a collective bargaining agreement. Therefore, it does not

"regulate labor relations" with any employee. *Id.* p.16. And it does not require a contractor to take

any action (or refrain from taking any action) with respect to its non-City work. Therefore, the

Local Law does not "apply to labor relations unrelated to City projects." *Id.* p.18 (emphasis

omitted). It requires only that covered contractors agree (if asked) to enter into an agreement *not*

*to interrupt services performed under City contracts.*[11]

---

[10] The remedies included in the Local Law are wholly distinguishable from the debarment provisions held preempted in *Wisconsin Dep't of Indus., Lab. & Hum. Rels. v. Gould Inc.*, 475 U.S. 282, 287 (1986) and *CF & I Steel v. Bay Area Rapid Transit District*, 2000 WL 1375277 (N.D. Cal. 2000). There, the debarment provisions could be, and were required to be, invoked in response to NLRA violations by prospective contractors regardless of whether such violations had any connection to the purchasing government's own contracts, therefore they functioned as supplemental sanctions for NLRA violations and interfered with the jurisdiction of the NLRB.

[11] The other cases on which Plaintiffs rely are inapplicable because they do not involve requirements that are limited to the services provided to the government under a contract. In *White v. Massachusetts Council of Const. Emps., Inc.*, 460 U.S. 204 (1983), the scope of the requirements

The ordinance at issue in *Metro. Milwaukee Ass'n of Com. v. Milwaukee County*, 431 F.3d 277 (7th Cir. 2005) is distinguishable because it imposed obligations and limitations directly on contractors' interactions with their employees, rather than on contractors' actions in relation to their contract obligations. Most strikingly, the ordinance prohibited employers from requiring any of their employees, whether they worked on city contracts or not, to attend a meeting intended to influence the employee's decisions regarding unionization. *Id.* at 280. Here, by contrast, the Local Law does not impose any limitations on contractors' interactions with any of their employees, except that contractors must agree (assuming they have been approached by a union seeking an LPA) not to act (or refrain from acting) in a manner intended to or having the effect of interrupting the delivery of services under their covered City contracts.

As more fully set forth in City Defendants' moving brief, even crediting speculative assertions that covered contractors' compliance with the Local Law will have some inescapable impact on their relations with their employees beyond the scope of their covered contracts, that circumstance would not be sufficient to establish the type of "profound" external effects that the Second Circuit indicated, in its decision in *BIECA*, 678 F.3d at 189, could be sufficient to establish preemption. *See* City Mem. pp. 28-29.

---

concerning workforce composition was based on projects, and applied to all projects that received city funding, even if they were not entirely City-funded. In *Healthcare Ass'n*, 471 F.3d 87, the scope was based on the source of a provider's funds, and extended to all operations receiving such funds, regardless of the services provided. Here, by contrast, the scope of the Law is defined by, and limited to, the services the contractor is providing to the City under contract. That contractors may provide similar services to other entities, receive funding from other sources, and/or use the same employees to provide services under both City and non-City contracts do not alter or expand this scope.

4. <u>The Market Participant Exception Applies to Legislative Acts</u>

Plaintiffs also argue that the Local Law does not qualify for the market participant exception because it "was established through legislation, rather than through contract negotiations." P. Mem. p.23. But, "[f]or the purposes of the market-participant doctrine, this is a distinction without a difference." *Allied Constr. Indus. v. City of Cincinnati,* 879 F.3d 215, 223 (6th Cir. 2018) (dismissing ERISA preemption challenge to ordinance setting bid specifications based on application of market participant exception and rejecting argument that exception did not apply to action taken by ordinance, rather than by contract action).[12] Contrary to Plaintiffs' arguments, the market participant can and does apply to proprietary action taken through legislation.[13] *Id.*; *Hotel Emps. & Restaurant Emps. Union, Local 57 v. Sage Hospitality Res., LLC*, 390 F.3d 206 (3d Cir. 2004) (rejecting NLRA preemption challenge to ordinance requiring contractors on certain City-financed projects to enter into LPAs with unions seeking to represent their employees based on market participant exception); *Cardinal Towing*, 180 F.3d at 689 (ordinance directing that City's non-consensual police tows be handled by recipient of City contract not preempted by federal law because City was acting in proprietary capacity).

---

[12] The cases cited by Plaintiffs are irrelevant as the scope of the requirements challenged in those cases was explicitly broader than city contracts. *New York Bankers Ass'n v. City of New York*, 19 F. Supp. 3d 158, 186 (S.D.N.Y. 2015) (explaining that "critical distinction" in analysis of whether challenged law was regulatory was that conditions it imposed were not limited to City's banking transactions but rather applied to "transactions taking place among other private participants . . ."); *Metropolitan Taxicab Bd. of Trade v. City of New York*, 2008 WL 4866021, *11 (S.D.N.Y. Oct. 31, 2008) (explaining that challenged rules were not covered by market participant exception because they "apply to all privately owned, licensed yellow taxicabs in New York City," not just to vehicles procured by the City for its own use).

[13] Plaintiffs' argument that the Local Law constitutes regulatory action because it was "the product of public hearings and rulemaking" (P. Mem. p.23) is curious given their (since abandoned) allegations that the Law is unconstitutional because it "was enacted without a lawful public hearing process, and is being implemented without the promulgation of rules" (FAC ¶155).

5. Application of the Market Participant Exception Turns on the Objective Effects of the Challenged Conduct

As this Court has already ruled, Plaintiffs' allegations that the Local Law was politically motivated and that the City's proprietary interests are a pretext (FAC, e.g. ¶¶ 124-129) are not relevant to the preemption analysis because courts evaluating claims of NLRA preemption are "guided by the objective effects of state action in relation to the federal scheme" and "the subjective motivation of a state actor is irrelevant to preemption analysis." ECF No. 73, 17:10-14 (quoting *Legal Aid Soc'y*, 114 F.Supp.2d at 237).

While legislative history and other evidence of subjective motivation may be relevant to the analysis of other types of federal preemption claims, such evidence is not relevant to the analysis of NLRA preemption claims.[14] *BIECA,* 678 F.3d at 191, 192. As the Second Circuit held in *BIECA*, with respect to a claim of NLRA preemption, "'[f]ederal preemption doctrine evaluates what legislation does, not why legislators voted for it or what political coalition led to its enactment.'" *Id.* at 191 (quoting *N. Ill. Chapter of Assoc'd Builders & Contractors, Inc. v. Lavin*, 431 F.3d 1004, 1007 (7th Cir. 2005)); *see Johnson v. Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1026 (9th Cir. 2010) (declining to consider alleged "ulterior motives" to "reward . . . unions" in deciding whether challenged agreement was preempted by NLRA).[15]

---

[14] *Entergy Nuclear Vermont Yankee, LLC v. Shumlin*, 733 F.3d 393 (2d Cir. 2013) and *New York Bankers Ass'n*, 119 F. Supp. 3d 158, which involved claims of preemption under the Atomic Energy Act and federal and state banking law, respectively, have no application to the analysis of NLRA preemption.

[15] The other cases on which Plaintiffs rely do not support their arguments either. *Van–Go Transp. Co., Inc. v. New York City Bd. of Educ.*, 53 F. Supp. 2d 278, 289 (E.D.N.Y. 1999), was decided before the Second Circuit's decision in *BIECA*, and thus does not reflect the current law of the Circuit. *Chamber of Com. of U.S. v. Brown*, 554 U.S. 60, 63 (2008) did not involve consideration of legislative history but rather the statement of purpose incorporated into the text of the challenged statute. In *Gould*, 475 U.S. at 287, the Court mentioned that Wisconsin had conceded that the intent of its statute was to deter labor law violations, but made clear that its analysis was based on the objective impact of the statute. *Id.* at 287 ("on its face the debarment statute serves plainly as a

## II. PLAINTIFFS FAIL TO STATE A CLAIM OF LMRA PREEMPTION

Contrary to Plaintiffs' assertion (P. Mem. p.37), the City Defendants' arguments for dismissal of their LMRA claim are based on four separate critiques, any single one of which would defeat that claim, and are not based solely on the no-private-right-of action point. City Mem. pp. 34-37. Detailed repetition of those four valid points is unnecessary here.

Even assuming arguendo that Plaintiffs can invoke a preemption theory here, their LMRA claim fails. As we have noted, the claim that the "thing of value" element might be satisfied here relies solely on the divided-panel 11th Circuit *Mulhall* majority opinion -- an opinion contrary to those of two other Circuits. City Mem. pp. 36-37. Further, as we have also explained, even acceptance of the *Mulhall* statutory construction would not validate Plaintiffs' claim here given the specific factual setting that the opinion addressed and the care taken by that court to make clear the limits of that holding. *Id.* pp. 35-36, 36n.4. Additionally, as we also noted, construing "thing of value" in Section 302 in the manner urged by Plaintiffs would eviscerate decades of Supreme Court and Circuit caselaw under parallel Section 301 upholding union-employer agreements of the type Plaintiffs now claim to be unlawful. *Id.* p.37.

Finally, as discussed above, Plaintiffs' attempt to invoke legislative history to alter the language of the Local Law fails, as does their contention that the mere fact that the FAQs list additional topics that could be covered in an LPA demonstrates that particular employer concessions as to those topics are expected. *See* pp. 6-7, *supra*.

---

means of enforcing the NLRA"), 288 ("Because Wisconsin's debarment law functions unambiguously as supplemental sanction for violations of the NLRA, it conflicts with [the NLRA] . . .").

III.  **PLAINTIFFS FAIL TO STATE A CLAIM FOR VIOLATION OF THE FIRST AMENDMENT**

Plaintiffs' efforts to defend their various First Amendment claims fail. As to the claim of imposed surrender of free speech rights, Plaintiffs fail to identify any portion of the Local Law that limits what they can say about unionization in general, the merits of any particular union, or any other aspect of labor relations. They offer no sound reason why required efforts to negotiate an agreement barring work disruption or to obtain a union official's attestation that such an agreement has been achieved necessarily entail employer surrender of free speech rights. And, while they perfunctorily assert that they satisfy the relevant facial attack standard because the Local Law has no legitimate sweep and unconstitutional applications abound (P. Mem. pp. 40-42), both assertions are fruitless. Plaintiffs cannot seriously maintain that a goal of avoiding disruption of contracted-for services is illegitimate, and Plaintiffs do not show a substantial number of unconstitutional applications.

Shifting focus from the legislative text, which is not helpful to them, Plaintiffs seek instead to hang their hats on legislative history and sponsor remarks. But, as set forth above, legislative history cannot serve to amend the contents of a law. *See* p.6, *supra*.

Plaintiffs also advance a number of other meritless theories for supposed facial constriction of free speech. The mere requirement of seeking to negotiate a nondisruption agreement with a labor union, submitting an attestation about that effort, submitting an attestation about whether a union has sought representation, and the like no more implicates free speech than would any commercial negotiation or commercial agreement. As to the possibility that, in practice, a union may pressure an employer to curb its speech to obtain union agreement to an LPA, the Local Law imposes no absolute obligation on an employer to produce a signed attestation or signed LPA. Rather, the Law requires the contractor to make good faith efforts, and provides that an

agency's consideration of whether a contractor that has failed to submit an attestation should nevertheless be deemed in compliance with the Law will take into account all relevant circumstances. N.Y.C. Admin Code § 6-145(f)(1); Kane Decl. Ex. 3 No.13. Further, if a future situation did arise in which a contracting agency concluded that contractor was not in compliance, the contractor would have an opportunity to cure any potential breach before any adverse finding could be made, as well as the opportunity to challenge any adverse finding, first in an administrative hearing, and then in an Article 78 proceeding. N.Y.C. Admin Code § 6-145(e)(2),(f)(2); Kane Decl. Ex. 3 No.14. Such speculative, hypothetical events are not a proper subject of this facial challenge.

Plaintiffs' efforts to minimize the relevance of the cases the City Defendants rely upon rely largely on cavilling or pressing out-of-context points, are unpersuasive, and in many cases actually underscore the pertinence of such cases. While we do not have space to address all of Plaintiffs' quibbles, a few examples will be illustrative. For instance, as to the City's citation of *Carey v. Wolnitzek*, 2012 U.S. Dist. LEXIS 142830, at *14-15 (E.D. Ky. Sep. 29, 2012), Plaintiffs fault the City Defendants for characterizing the case as supporting the proposition that a conclusion of impermissible chilling cannot rest on a finding that some protected speech might be chilled, but rather requires a finding that there will be chilling of a substantial amount of protected speech. P. Mem. p.44. Plaintiffs note that the actual text reads that a showing that some amount of legitimate speech will be chilled is insufficient and that the required showing is that a substantial amount of legitimate speech will be chilled. *Id.* Apparently unperceived by Plaintiffs is (1) that the City's characterization fully follows logically from the quoted text and (2) that the text they quote actually expresses an even harsher proposition for a plaintiff than the one that we correctly derived from the case. Thus, we said that a finding that some protected speech might be chilled is insufficient.

What the Court said is that even a finding that some protected speech will be chilled is insufficient. If a finding that some protected will be chilled is insufficient, a weaker finding that some protected speech might be chilled is, *a fortiori*, insufficient. Likewise, the other segment of case text -- that the necessary showing is that a substantial amount of protected speech will be chilled -- is equivalent in both our presentation and the text that Plaintiffs quote. So, what Plaintiffs accomplish in their attempted critique is to actually highlight that they fall even further short of the necessary showing. Not only can Plaintiffs not succeed, as the City Defendants stated, if one infers here that some protected speech might be chilled, but they can still not succeed even if one more generously construes their presentation as achieving a stronger showing that some protected speech will be chilled.

A second example of Plaintiffs' misrepresentation relates to *IMS Health Inc. v. Sorrell*, 631 F. Supp. 2d 434, 456 (D. Vt. 2009), *rev'd*, 630 F.3d 263 (2d Cir. 2010). While Plaintiffs note the reversal by the Second Circuit of the judgment (P. Mem. p.43), we did not cite the case for the judgment but rather for the discrete proposition that, as to a facial challenge chilling claim, a court must consider whether a challenged law could possibly be applied constitutionally. That is a proposition for which the *IMS* District Court cited U.S. Supreme Court precedent -- "the Court will not presume the law will create a chilling effect. *See Wash. State Grange v. Wash. State Repub. Party*, 552 U.S. 442, 128 S. Ct. 1184, 1194, 170 L. Ed. 2d 151 (2008) (explaining deference requires a court to determine whether the challenged law could possibly be implemented constitutionally)." 631 F. Supp. 2d at 456. That precedent is indeed supportive. *Washington State Grange*, 552 U.S. at 455-456 ("As long as we are speculating about the form of the ballot--and we can do no more than speculate in this facial challenge--we must, in fairness to the voters of the State of Washington who enacted I-872 and in deference to the executive and judicial officials

who are charged with implementing it, ask whether the ballot could conceivably be printed in such a way as to eliminate the possibility of widespread voter confusion and with it the perceived threat to the First Amendment.") Further, while Plaintiffs stress a sidelight of the Circuit decision noting what they describe as the need in a First Amendment challenge for the state to show that the measure is narrowly tailored to serve substantial state interests (P. Mem. p.43), Plaintiffs fail to reveal that the Circuit framed this test as applicable not broadly to First Amendment challenges but only to challenges to measures that restrict free speech -- an element lacking here.

Finally, the last example we will discuss is *Brooks v. Raemisch*, 717 F. App'x 766, 769 (10th Cir. 2017). While Plaintiffs dispute its validation of the proposition that availability of legal steps or a legal remedy to avert adverse consequence weighs against a finding of chilling (P. Mem. p.44), the fact is that the Court rejected chilling despite an improper prison disciplinary conviction because the prisoner had a remedy to vacate the conviction through litigation even though he was required to absorb court costs and fees, and the court felt that availability of that remedy was sufficient to avert chilling.

As to the freedom of association prong of Plaintiffs' argument, Plaintiffs fail even nominally to rebut the accepted proposition that business or commercial interactions generally do not implicate expressive association. *See, e.g., Mitchell v. Annucci*, 2022 U.S. Dist. LEXIS 155124, *3-4 (N.D.N.Y. Aug. 29, 2022). While Plaintiffs offer precedent that picketing implicates expressive association, the analogy is inapt. Picketing necessarily proclaims a message of substantive opposition. Dealing with another party in an effort to agree that neither side will disrupt work conveys no positive or negative viewpoint. Indeed, Plaintiffs' insistence that the required employer dealings here necessarily communicate positive views of the union seems little different from an argument that a matrimonial judge directive that a husband engaged in a bitter divorce

litigation with his wife attempt mediation with her as to child custody would be conveying positive views of the wife if he complies. And, as we previously noted (City Mem. p.12), cases such as *Janus v. AFSCME, Council 31*, 138 S. Ct. 2448 (2018) -- in which the Supreme Court upheld a requirement that a non-union-member employee permit a particular union to negotiate a collective bargaining agreement that binds the employee -- defeat any argument as to a wholesale free association right to avoid involuntary interaction with a union.[16]

IV. **PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE CONTRACTS CLAUSE**

Plaintiffs attempt to obfuscate the fact the Local Law does not apply to—and thus could not impair—contracts that existed prior to the Law's effective date by portraying the issue as complex. P. Mem. pp. 48-50. It is not.

As more fully set forth in the City Defendants' moving papers (City Mem. pp. 14-16), the Local Law does not apply to any contract that had been fully executed, or under which performance had begun, prior to the Local Law's effective date. Kane Decl. Ex. 1 § 6; Ex. 2 Nos. 2-5.[17] This is true regardless of when a contract is registered. And regardless of whether the

---

[16] Omitted from Plaintiffs' discussion of *Janus* (P. Mem. n.11), is that the referenced inquiry as to possible alternate means to advance labor peace was deemed proper only because the requirement in that case that employees pay monies to subsidize unions disagreeable to them was regarded as a very substantial intrusion on freedom of association rights (*Janus*, 138 S. Ct. at 2464). In contrast, no negation of freedom of association rights is present here.

[17] Plaintiffs, in their attempt to dismiss the Rider, along with the FAQs, as "litigation-driven," mistakenly lump the three documents together. P. Mem. n.13. The Rider, which serves to incorporate the terms of the Local Law into covered contracts by reference, was issued prior to the commencement of this litigation. *See* Compl., ECF No. 1 ¶46 (alleging that "Local Law 87's requirements have been incorporated by reference into the City's most recent contract offers"). And the inclusion of the Rider in the contracts means it is binding on the City as a matter of contract law. As to the FAQs, while they are not explicitly incorporated into the Complaint, they are appropriate for consideration on this motion because Plaintiffs refer to and reply upon them in the Complaint (FAC, ECF No. 75, ¶¶ 30-33), as well as in their arguments in defense of the Complaint (P. Mem. e.g., pp. 14, 20, 34). *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (where complaint "relies heavily upon . . . terms and effect" of document, document is

contract is a renewal of a prior contract. *Id.* As to pre-existing contracts that provided for renewals at the City's option, the contract cannot be renewed after the Local Law's effective date if the contractor does not agree to incorporate the terms of the Rider into the renewal contract.[18] Kane Decl. Ex. 2. No. 4.

And as also set forth in Defendants' moving papers, a contract cannot be impaired by a Law that was in effect before the contract was entered into. City Mem. p.21. *Sullivan v. Nassau Cty. Interim Finance Authority*, 959 F.3d 54 (2d Cir. 2020), does not call this principle into question.[19] To the contrary, in that decision, the Court restated "the well-established idea that contracts necessarily incorporate the law as it stands at the time of contract formation," as well as the basic premise that a law that predates a contract cannot be deemed to impair that contract. *Id.* at 62, 63 (explaining that the challenged statute "authorized the impairment, but it did not actually impair any of the plaintiffs' contracts. Indeed, the [statute] . . . predates each of the contracts at issue").

Plaintiffs' argument that the Local Law applies retroactively because it authorizes the Mayor or the Mayor's designee to promulgate implementing rules or regulations concerning

---

"integral" to the complaint and may be considered on motion to dismiss) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).

[18] *Donohue v. Mangano*, 886 F. Supp. 2d 126 (E.D.N.Y. 2012) and *Donohue v. Paterson*, 715 F. Supp. 2d 306 (N.D.N.Y. 2010) are inapposite because there was no dispute, in either case, that the challenged laws altered the terms of pre-existing collective bargaining agreements (contracts).

[19] The *Sullivan* Court's cautionary note that a distinction that "would seem to create a bright line" was actually more "complicated" did not relate to whether a contract may be impaired by a pre-existing law. 959 F.3d at 62. It related to the distinction between legislative acts, which are subject to challenge under the Contracts Clause, and administrative acts, which are not; and whether an action taken to implement a law that predated a contract should automatically be deemed administrative. *Id.* Here, there is no dispute that the Local Law is legislative, rather than administrative, therefore this cautionary note, and Plaintiffs' ensuing discussion (P. Mem. pp. 51-52) is a red herring.

the Law also misses the mark. P. Mem. p.52. Since the authorization provision is part of the Local Law, that provision, like all other provisions of the Local Law, forms part of the legal "backdrop" that is deemed incorporated into contracts entered into after its effective date—and therefore cannot be deemed to impair those contracts. *Sullivan*, 959 F.3d at 62; *Community Hous. Improvement Prog. v. City of New York,* 492 F. Supp. 3d 33, 53 (E.D.N.Y. 2020). Any human services provider that determines that the prospect of future implementing rules would prevent it from appropriately "order[ing]" its affairs (P. Mem. p.52) may decline to enter into a covered contract.[20] Plaintiffs' argument that the Local Law has "interfere[d]" with existing contracts held by Plaintiff Mosholu Montefiore Community Center ("MMCC") by increasing the paperwork associated with City contracts (P. Mem. p.53) also fails. Since the paperwork complained of would only be required in connection with contracts entered into (at earliest) after the Local Law's effective date, the paperwork requirement cannot interfere with, or impair, any pre-existing contract held by MMCC.[21]

## V.    PLAINTIFFS FAIL TO STATE A CLAIM FOR VIOLATION OF NEW YORK STATE LAW

Plaintiffs' contention that the Local Law violates unspecified "State procurement laws" by "delegat[ing] . . . procurement power to labor union leaders" (P. Mem. p.55) is again based on a misreading of the Law because the Law does no such thing. *In re New York State Corr. Officers & Police Benev. Ass'n, Inc.*, 70 A.D.3d 240 (3d Dept. 2009), involved a claim by a union that its approval was required before the State could enter into an insurance contract covering the

---

[20] The suggestion that Plaintiffs could establish contractual impairment because they have "ordered [their] affairs" according to their City contracts (P. Mem. p.52) would seem to conflict with their suggestion that they would provide the same services in the same manner with or without City contracts (*id.*, e.g., pp.4-6).

[21] Since Plaintiffs cannot establish an impairment, let alone a substantial impairment, of an existing contract, there is no need for the Court to reach the other factors in the Contracts Clause analysis.

union's members. The Court found that such a requirement would constitute impermissible delegation because it would potentially prevent the State from contracting with the winning bidder the State had selected through the State-Law mandated competitive bidding process. *Id.* at 244. Here, by contrast, the City retains full control over all aspects of the procurement process for human services contracts, from setting solicitation specifications, to selecting and contracting with awardees. Most notably, in the event that a contractor is unable to submit an attestation required under the Law, it is the City's contracting agency that determines whether the contractor made a good faith attempt to do so, and should thereby be exempted from any negative consequences of such failure. NYC Admin. Code § 6-145(f)(1); Kane Decl. Ex. 1 § 2(A), Ex. 3 No. 13.[22]

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss the Amended Complaint should be granted in its entirety.

Dated:     New York, New York
           December 6, 2022

                                    HON. SYLVIA O. HINDS-RADIX
                                    Corporation Counsel
                                      of the City of New York
                                    *Attorney for Defendants City of New York,*
                                    *Eric Adams and Brad Lander*
                                    100 Church Street
                                    New York, New York 10007
                                    (212) 356-2538
                                    rakane@law.nyc.gov
                                    madler@law.nyc.gov

                                    */s Rachel B. Kane*
                                    By: Rachel B. Kane
                                         Michael S. Adler
                                    Assistant Corporation Counsel

---

[22] Since Plaintiffs do not respond to Defendants' arguments for dismissal of their due process clause and equal protection claims, City Defendants presume those claims have been abandoned.